1  PATRICK J. EVANS - State Bar No. 110535
   pevans@pevanslawoffice.com
2  LAW OFFICE OF PATRICK J. EVANS
   16897 Algonquin Street, Suite F
3  Huntington Beach, CA 92649
   Tel.: (714) 594-5722; Fax: (714) 840-6861
4  Counsel to all Plaintiffs,
   Sue Eicherly, et al.

5

6

7

8                IN THE UNITED STATES DISTRICT COURT

9           FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10   SUE EICHERLY, MYRLE MOORE FLOYD CHODOSH, OLE HAUGEN, TODD PETERSON, KATHLEEN SCHOWALTER and RODGER KANE, individuals,<br><br>              Plaintiffs,<br><br>vs.<br><br>ROBERT J. MOSS, individually and in his capacity as Judge of the Orange County Superior Court,  CHARLES MARGINES, individually and in his capacity as Presiding Judge of the Orange County Superior Court; KATHLEEN O'LEARY, individually and in her capacity as Presiding Justice of the California Court of Appeal, Fourth District, Div. 3 ("Div. 3");  WILLIAM L. RYLAARSDAM, individually and in his capacity as a former justice of Div. 3; WILLIAM W. BEDSWORTH, individually and in his capacity as a justice of Div. 3; PALM BEACH PARK ASSOCIATION, a California non-profit mutual benefit corporation, ICC 35902 LLC, and 3187 REDHILL LLC, both Delaware limited liability companies; JEFFERIES LOANCORE, LLC, a Delaware limited liability company; FIDELITY NATIONAL TITLE COMPANY, a California corporation; and JOHN SAUNDERS, ROBERT COLDREN; LISA SALISBURY, PHILIP ANSHUTZ, DIANA MANTELLI; GEORGE FIORI, and DAN SMITH, individuals.<br><br>              Defendants. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>1.   **Violations of 42 U.S.C. §1983; Intentional Denial of Due Process; U.S. Const. 5th and 14th Amendments;**<br><br>2.   **Denial of Due Process by Extreme Facts that Indicate Intolerable Probability of Lack of Judicial Impartiality;**<br><br>3.   **Violations of 15 U.S.C. §1601 et seq., "Truth in Lending"; Intentional Failure and Refusal to Follow and Enforce the "TILA" Federal Law;**<br><br>4.   **Breach of Fiduciary Duty;**<br><br>5.   **Aiding and Abetting Breach of Fiduciary Duty; and**<br><br>6.   **Declaratory Relief, 28 U.S.C. sec. 2201 et seq.** |

# COMPLAINT

Plaintiffs SUE EICHERLY, MYRLE MOORE, FLOYD CHODOSH, OLE HAUGEN, TODD PETERSON, KATHLEEN SCHOWALTER, and RODGER KANE, individuals and United States citizens, hereby allege and claim:

## JURISDICTION AND VENUE

1.     This is a civil action under 42 U.S.C sec. 1983 seeking declaratory relief against all Defendants and damages from only the non-judicial officer defendants, for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the United States; retaliating against Plaintiffs for their exercise of such constitutionally protected rights; and for refusing to enforce the United States Constitution and federal law for their benefit, all with the intent, aim and goal of taking Plaintiffs' homes and property by denying them due process and other rights, all in transgression of 42 U.S.C. sec. 1983.

2.     This case arises under the United States Constitution and 42 U.S.C. Sections 1983 and 1988, as amended. This Court has jurisdiction in this matter pursuant to 28 U.S.C. Sections 1331 and 1343. The declaratory relief sought is authorized by 28 U.S.C. Sections 2201 and 2202, 42 U.S.C. sec. 1983 and Rule 57 of the Federal Rules of Civil Procedure

3.     This action is also brought under the federal Truth In Lending Act ("TILA") 15 U.S.C. sec.1601 et seq., to enforce such federal law for Plaintiffs' benefit, which law, Plaintiffs are informed and believe, the judicial officer defendants

have intentionally and purposefully not enforced in favor of Plaintiffs and against their opponent, their HOA, that made the mortgage loans that violated TILA.

4.      This case is also brought under California statutes and common law doctrines.  Because claims brought under California law are related to Plaintiffs' federal claims, over which the Court has original jurisdiction, and that the state claims and controversies form part of the same case or controversy under Article III of the United States Constitution, the Court also has jurisdiction over Plaintiffs' claims under California common law and statutory claims pursuant to 28 U.S.C. §1367.

5.      A substantial part of the events and omissions giving rise to the claims stated herein occurred in this District and all defendants are subject to the personal jurisdiction of this judicial district. Venue is proper in this District and Division pursuant to 28 U.S.C. §§ 1391 and to 18 U.S.C. § 1965(b).

## **THE PARTIES**

6.      Plaintiffs  SUE EICHERLY, MYRLE MOORE, FLOYD CHODOSH, OLE HAUGEN, TODD PETERSON, KATHLEEN SCHOWALTER, and RODGER KANE and each of them are individuals and United States citizens whom at all relevant times have been residents or owners or both of property in the Palm Beach Mobilehome Park ("Park") located in the City of San Clemente, County of Orange, California, and except for Plaintiff PETERSON, all Plaintiffs been and are elder citizens and members of defendant, Palm Beach Park Association, a California non-profit mutual benefit corporation ("PBPA").

7.      PBPA is a California non-profit mutual benefit corporation formed to hold and manage the Park as a "resident-owned" mobilehome park (Cal. Civ. Code sec. 799(c)).  (See Exh. A)  Homeowners association and fiduciary PBPA has held and continues to holds ownership title to the Park as fiduciary and for the benefit of Plaintiffs and other PBPA members, notwithstanding the purported conveyance by deed in a fiduciary breaching and self-dealing unlawful transaction, to supposed tenants in common and defendants herein ICC 35902 LLC and 3187 Redhill LLC, both Delaware corporations. (See Exhibit "C", pg. 131 hereto for copy of the deed.)

8.      Hon. ROBERT J. MOSS is a Judge of the Orange County Superior Court for the State of California located in Santa Ana, Orange County, California.  Plaintiffs are informed and believe, and thereon allege, that Judge Moss resides in Orange County.   Plaintiffs sue Judge MOSS individually and in his official capacity as Judge of the Superior Court.

9.      Hon. CHARLES MARGINES is the Presiding Judge of the Orange County Superior Court for the State of California, with his office in Orange County. Plaintiffs are informed and believe, and thereon allege, that Judge MARGINES resides in Orange County.   Plaintiffs sue Judge MARGINES individually and in his official capacity as Presiding Judge of the Orange County Superior Court.

10.      Hon. KATHLEEN O'LEARY is the Presiding Justice of the California Fourth District Court of Appeals, Division 3, with chambers in Santa Ana, Orange County.   Plaintiffs are informed and believe, and thereon allege, that Justice

O'LEARY resides in Orange County.   Plaintiffs sue Justice O'LEARY individually and in her capacity as Presiding Justice of the California Court of Appeal, Fourth District, Division 3.

11.    Hon. WILLIAM L. RYLAARSDAM was the senior Associate Justice of the California Fourth District Court of Appeals, Division 3, until he retired in or about July 2016.   Plaintiffs are informed and believe, and thereon allege, that Justice Rylaarsdam is a member of the California Bar and resides in Orange County. Plaintiffs sue Justice RYLAARSDAM individually and in his former official capacity as Senior Associate and at relevant times the Acting Presiding Justice of the California Court of Appeal, Fourth District, Division 3.

12.    Hon. WILLIAM W. BEDSWORTH, is an Associate Justice of the Fourth District Court of Appeals, Division 3, in Santa Ana. Plaintiffs are informed and believe, and thereon allege, that Justice Bedsworth resides in Orange County. Plaintiffs sue Justice BEDSWORTH individually and in his capacity as Associate Justice of the California Court of Appeal, Fourth District, Division 3.

13.    ICC 35902 LLC and 3187 REDHILL LLC, Delaware limited liability companies, have an office and do business in Orange County.   Plaintiff is informed and believes and thereon alleges that they claim to be owners as tenants in common of the Park under Grant Deed recorded Dec. 22, 2015, as Instrument #2015000644197 (See Exhibit C, pg. 131).   ICC 35902 LLC and 3187 REDHILL LLC are collectively referred to herein as the "LLCs".

14.   JEFFERIES LOANCORE LLC, a Delaware limited liability company ("JEFFERIES") made a loan to Defendants LLCs which JEFFERIES contends is secured by a Deed of Trust recorded Dec. 22, 2015 as Inst. #2015000644199. JEFFERIES office is located in Greenwich Connecticut. (Exh. N)  Plaintiffs are informed and believe, and allege, that JEFFERIES does business in California.

15.   FIDELITY NATIONAL TITLE COMPANY, a California corporation, has its headquarters and primary place of business in Los Angeles, California.   Plaintiffs are informed and believe, and thereon allege, that FIDELITY title insured the fee and lien of the deed of trust for the putative owners the LLCs and their lender JEFFERIES.  It could be that FIDELITY affiliated company Chicago Title Company insured the deed and deed of trust instead of defendant FIDELITY.  If so, Plaintiffs will amend to reflect the title company that insured the fee and Jefferies' loan.

16.   JOHN SAUNDERS is manager of the LLCs.  Plaintiffs are informed and believe, and thereon allege, that he resides in Orange County, California, and that he does business in Newport Beach, Orange County.  During the transactions at issue SAUNDERS acted under what he calls "Saunders Property Company", which Plaintiffs allege, on information and belief, is not a corporation or other legal entity of record, not a DBA, but a name SAUNDERS uses to conduct business for himself individually not subject to "DBA" perhaps because it uses SAUNDERS' name.

17.   ROBERT COLDREN is an attorney and member of the California State Bar, with a law office in Santa Ana, Orange County.  Plaintiffs are informed and

believes COLDREN is a resident of Orange County and that he is a principal or manager of the LLCs, having authority over and for them either as manager or through another entity, possibly Pacific Current Partners, a California limited liability company.  (Exhibit J, pgs. 202-203)

18.   LISA SALISBURY is an attorney and member of the California State Bar with an office in Orange County.  Plaintiffs are informed and believe, a residence in Orange County.  Plaintiffs are informed and believe that at relevant times SALISBURY was and still is legal counsel for COLDREN and that she aided and abetted breach of fiduciary duty by purporting to act as legal counsel for opposing side PBPA in the transactions at issue concerning wrongful sale of the Park. (Exh. J)

19.   PHILIP ANSHUTZ is a resident of Orange County.  Plaintiffs are informed and believe and thereon allege that ANSHUTZ is the owner of Hensley Realty Corporation through which he conducts a real estate brokerage business.  Plaintiffs are informed and believe that Hensley Realty Corp. is an alter ego for ANSHUTZ who operates it as a real estate brokerage out of a shack in a mobilehome park in Laguna Canyon.   PBPA paid Henley a $700,000 brokerage fee, which "fee" Plaintiffs allege on information and belief, was wrongful product of fiduciary fraud. (Exh. M, pg. 216)

20.   At all relevant times DIANA MANTELLI was and is a resident of Orange County, a licensed real estate broker, and a Director and President of PBPA. Plaintiffs are informed and believe that MANTELLI is the principal architect of the unlawful agreements and conspiracies to commit and carry out transactions that were

breaches of fiduciary duty and self-dealing described herein.   Plaintiffs are informed and believe, and thereon allege, that she benefitted financially and personally from the breach of fiduciary duty and wrongful sale of the Park and that she engaged in self-dealing on the Park sale.

21.   GEORGE FIORI is a resident of Orange County.  At all relevant times FIORI was a Director and the Treasure of PBPA.   Plaintiffs are informed and believe and thereon allege that FIORI engaged in self-dealing and fiduciary breach with regard to sale of the Park and that he benefitted personally from the sale of the Park.

22.   DAN SMITH was a resident of the Park.   Plaintiffs are informed and believe and thereon allege that SMITH is now a resident of the State of Indiana.  At all relevant times SMITH was a Director and officer of PBPA and a resident in the Park. Plaintiffs are informed and believe and thereon allege that SMITH engaged in self-dealing and fiduciary breach with regard to sale of the Park.

23.   Plaintiffs are informed and believe that there are other culpable parties that could and should be defendants in this action, but Plaintiffs are unaware at this time of the identities of such other Defendants or are not certain that an identified entity has culpability such that it should be a defendant herein.   Plaintiffs will amend this Complaint to set forth the true names and capacities of additional Defendants along with appropriate charging allegations if and when such Defendants' identities are ascertained.

24.     This court has the jurisdiction and power to grant Plaintiffs the declaratory relief they seek against the judicial officer defendants herein and the damages they seek against the other defendants, to award damages in this action against the non-judicial defendants, which damages exceed the jurisdictional minimum of this court.

## PRELIMINARY STATEMENT AND SUMMARY OF COMPLAINT

25.     This case arises at the juncture of the California Orange County Superior and Appellate courts and the influence and impact of the world's largest and Orange County based private judge alternative dispute resolution ("ADR") service provider which tempts and entices Justices of the Orange County Appellate Court, the Fourth District Division 3, and judges of the Orange County Superior Court, with lucrative post – bench retirement jobs as "neutrals."

26.     The world's largest ADR provider is JAMS, INC., headquartered in Orange County.  Many Orange County Superior Court judges and Appellate Court Justices have gone to work for JAMS.  Plaintiffs are informed and believe, and thereon allege, that many current judges and justices serving in Orange County aspire and desire to secure a job at JAMS after their retirement from the bench.

27.     Plaintiffs are informed and believe, and thereon allege, that it was the prospect of a JAMS job, and the natural inclination to shield and protect their friend and colleague, Justice Trotter, that caused Defendant judicial officers to have as the object of their agreement and conspiracy, the protection of Justice Trotter and JAMS, by ensuring consistent denial of Plaintiffs' due process rights.  To support and uphold

JAMS, the judicial officer defendants agreed and conspired to deprive Plaintiffs of their due process right to an impartial tribunal with unbiased decision makers.

28.   Plaintiffs are informed and believe, and thereon allege, that the judicial officer Defendants used their offices and powers, acting under color of state law, to deny Plaintiffs their due process rights and day in court by enforcing illegal contracts and upholding Judge Moss' unlawful "re-assumption" of jurisdiction in the *Haugen* case where Plaintiffs sued to stop a fiduciary fraudulent self-dealing sale of the Park, (which sale at times will be referred to as the "SAUNDERS sale.")

29.   Plaintiffs are informed and believe, and thereon allege, that by prior agreement and conspiracy made and in progress at all relevant times, the judicial officer defendants herein, other than MARGINES, which defendants are MOSS, O'LEARY, RYLAARSDAM and BEDSWORTH, intended and conspired to deny and did thereby deny Plaintiffs their 5th and 14th amendment due process rights.

30.   Plaintiffs are informed and believe, and thereon allege, that the LCCs, acting through their representatives and agents, had ex-parte contact with Judge MOSS to alert him to intervene for them to stop a temporary restraining order ("TRO") which threatened closing of the SAUNDERS sale, which sale was a rigged fiduciary fraudulent and self-dealing give away of the Park at a price far below fair market value, which sale would benefit the LLCs and non-judicial officer defendants.

31.   Plaintiffs allege, on information and believe, the LLCs were private parties that acted with the judicial officers to deny Plaintiffs' rights.  Plaintiffs are informed

and believe, and thereon allege, that the LLCs through one or more of their

representative and agents, had ex parte contact with Judge MOSS to "fix" the

fiduciary fraudulent and below market SAUNDERS sale of the Park.

32.    Because of the conspiracy and agreement between the LLCs and Judge

MOSS and Judge MOSS and the defendant Justices, Plaintiffs seek declaratory relief

under sec. 1983 that said defendants, working with the LLC's, denied Plaintiffs due

process rights under color of state law and that such denial took place starting in 2014.

33.    Against the non-judicial officer defendants, Plaintiffs sue Defendants for

damages on causes of action for the non-judicial Defendants having wrongfully sold

the Palm Beach mobilehome park, including Plaintiffs' homes, in a transaction fraught

with breach of fiduciary duty, self-dealing, and aiding and abetting of breach of

fiduciary duty.

## BACKGROUND– THE VALUABLE REAL ESTATE PRIZE – THE PARK

34.    The object and financial prize motive that has spawned years of litigation is

the Palm Beach mobilehome park, i.e. the "Park", is the spectacular ocean side large

property, one of the last of its kind in south Orange County.  Attached as Exhibit "A"

are an aerial photo of the Park, grids showing its 126 spaces, the park office, club

house, and other features, along with the 2015 Park operating permit and historic

painting showing trailers in the area of Plaintiffs' homes (other than CHODOSH).

## THE PALM BEACH MOBILEHOME PARK LITIGATION

35.    The Palm Beach Park is fifteen (15) acres across the street from the beach

in San Clemente.   It is a rare and wonderful and very valuable parcel of land. (See Exh. A) The parcel has been used for mobilehomes and trailers since around 1940, and since the 2007 unlawful "conversion", as an illegal and substandard park.  The main Palm Beach Park case is *F. Chodosh, et al. v. PBPA* filed in 2010 to address the unlawful mobilehome park "conversion."  After *Chodosh* more lawsuits were brought about the Park and the HOA, with the last and most recent lawsuit being *Haugen v. PBPA* 30-2015-00819837, filed Nov. 12, 2015 ("*Haugen*").

36.     In 2007 PBPA members, including Plaintiffs, voted to convert the mobilehome park to "resident ownership" under statutory procedure Bus. & Prof. Code sec. 11010.8, et al.    The "conversion" acquisition closed in December 2007 for $24.75 million when PBPA purchased the park land using member contributions and loans it made to members.

37.     The "conversion" transactions were entirely illegal.  PBPA did not comply with the statutory procedure to become a "resident owned park", §11010.8 et al.  The new memberships were issued without the security permit required under Corp. Code sec. 25113.  Funds were not escrowed to pay for the conversion as §11010.8 required.

38.     Plaintiffs' spaces were not lawfully permitted mobilehome spaces; they were RV lots without certificates of occupancy. (See Exh. A, pg. 96, Operating Permit, 108 Mobilehome lots; 18 RV lots.)  Other than Mr. Chodosh's home, Plaintiffs' homes were substandard with "bootleg" utilities, unsealed sewage connections that routinely clogged and discharged raw sewage, and Romex snarled

electric wire that shorted and tripped breakers, arcing sparks.  Leases for the illegal spaces were illegal.

39.     As alleged herein, and as Judge Moss correctly ruled, PBPA's loans to its members violated federal truth in lending, 15 U.S.C. sec. 1601 et seq.  ("TILA"). PBPA had no residential lender's license as required by state law.  The Park, with its failed "conversion" and worse, was a real estate crime scene.  A grid listing PBPA illegality, laws, evidence, and reference is attached hereto as Exhibit "B".

40.     In 2010 Plaintiffs and others filed the lawsuit, *Floyd Chodosh, Sue Eicherly, et al. v. Palm Beach Park Association,* et al.  30-2010-00423544, Orange County Superior Court, filed Nov. 2010 the ("*Chodosh*") case.

41.     In April 2013, after a phase I trial, the trial judge noted unlawful transactions, stating that PBPA, the homeowners' association, was an "illegal" lender making "illegal" mortgage loans. (*Chodosh*, Ph. I. Trial Transcript, Oral Decision of Hon. Nancy Wieben Stock, May 21, 2013, pg. 37, line 17)   Still later, commenting on the illegality, Judge Wieben Stock stated that the quantity of Park and PBPA illegality, on a scale of 1-10, was a "10."   (Trans. 06/12/13, pg. 28, lines 8-10)

42.     The *Chodosh* case contests the illegal transactions at the park between PBPA and its members and others.  Judge Moss entered judgment for PBPA in *Chodosh* April 14, 2016.   By entering the judgment against Plaintiffs, Judge Moss purported to enforce illegal leases, contracts and agreements, which he could not do. A court can only invalidate an illegal lease or contract; it cannot enforce it.

43.     The *Haugen* case purpose was to stop the fiduciary fraudulent, self-dealing, insider rigged under market value and unlawful sale of the park to friends and colleagues of the HOA President, a real estate broker, who by breach of her fiduciary duties and self-dealing, would be enriched personally from the sale.

44.     Unfortunately, rather than overturn the illegality and enforce the law, Plaintiffs and other PBPA members would suffer the wrath and wrongful conduct of Judge MOSS and Justices O'LEARY, RYLAARSDAM and BEDSWORTH as they implemented their agreement and conspiracy to deny Plaintiffs due process.

45.     Judge Moss engaged in willful judicial misconduct in *Chodosh* and *Haugen* and in other Palm Beach Park cases.

46.     Judge Moss' willful judicial misconduct and, Plaintiff contends on information and belief, crimes committed by Judge Moss, were and are and have been proven by facts and events and evidence in *Haugen* and *Chodosh* which evidence was presented to each and all of the judicial officer defendants herein.

47.     Justices O'LEARY, RYLAARSDAM and BEDSWORTH upheld Judge MOSS' wrongful rulings and decisions.   Plaintiffs are informed and believe, and thereon allege, that Judge Moss and the Justices O'LEARY, RYLAARSDAM and BEDSWORTH conspired and agreed to shirk and breach their duty to uphold the law in order to hurt and harm Plaintiffs and their counsel because they had sued Justice Trotter and JAMS.

## JAMS INFLUENCE AND IMPACT – ADVERSE TO PLAINTIFFS

48. JAMS bills itself "the largest private alternative dispute resolution provider in the world."  JAMS is not a defendant.  However, Plaintiffs are informed and believe, and thereon allege, that JAMS serves as background object in the disputes and controversies herein.

49. JAMS shareholders or partners, what JAMS calls "neutrals," include three of the four living retired justices from the Orange County Appellate Court Fourth District Division 3, founding and first Div. 3 presiding justice John K. Trotter and original associate justices Edward Wallin and Sheila Sonenshine.  At least a dozen former Orange County Superior court judges are JAMS "neutrals".  It is common knowledge that JAMS routinely recruits Orange County judges and justices to join JAMS after they retire from the bench.

50. Plaintiffs sued PBPA in 2010 over an unlawfully done mobile home park conversion to "resident ownership" which was to secure property ownership for the senior members.  However, the botched "conversion" rendered the Park and PBPA unlawful and illegal in every way, making the Park a real estate crime scene.  Original judge on the case Hon. Nancy Wieben Stock mentioned some of the illegality in her oral decision at the Phase I trial in May 2013, describing accurately PBPA as an "illegal" lender that made "illegal" $200,000 mortgage loans to members. (Transcript, 5/21/13, pg. 17, line 17)

51. Following the Phase I trial, in late 2013, Plaintiffs engaged in "mediation" at JAMS with JAMS' co-founder Hon. John K. Trotter acting as the "neutral."  Justice Trotter was the founding and first presiding justice of the Orange County Appellate Court, the Fourth District Court of Appeal, Division 3.

52. As alleged in the action *Floyd Chodosh, et al. vs. John K. Trotter and JAMS, INC.*, OCSC Case #30-2014-0072371, D070952, at the "mediation" Justice Trotter shed light on why Plaintiffs' trial judge had not appeared for several weeks in late 2013 when hearings were canceled and the clerk acted as judge pro temp.  Justice Trotter said that Plaintiffs' trial judge, whom he said he knew well as his friend and colleague "Judge Nancy", had suffered a heart attack, but fortunately had recovered.

53. Later in the "mediation", as alleged in the JAMS complaint, Justice Trotter threatened and promised the Plaintiffs that if they did not, as he insisted, accept the insolvent HOA's "I owe you" settlement, that he, Justice Trotter, would tell "Judge Nancy" that Plaintiffs were the "bad guys" that prevented settlement.

54. Several weeks after this "mediation" with "neutral" Justice Trotter, Hon. Nancy Wieben Stock retired and joined JAMS.   Plaintiffs learned that JAMS had been recruiting Judge Stock during the "mediation", but did not disclose it.

55. With passage of time and inquiry, Plaintiffs have become informed and believe, and thereon allege, that Justice Trotter carried out his promise and threat to "bad mouth" Plaintiffs to Judge Wieben Stock.  As Plaintiffs allege in their JAMS

case complaint, after the "mediation" with Justice Trotter, it seemed to Plaintiffs that Judge Stock made a 180 degree turn on her rulings.

56. Plaintiffs also feared Justice Trotter would malign them to their new trial judge, Hon. Robert J. Moss.   Plaintiffs are unaware whether or not JAMS or Justice Trotter "bad mouthed" them by communication to defendant Judge MOSS after Judge MOSS took over for Judge Wieben Stock in January 2014.

## THE JUDICIAL OFFICERS' AGREEMENT AND CONSPIRACY FORMED

57. Because of Justice Trotter's misconduct and Plaintiffs' fear that Justice Trotter would try to influence Judge MOSS, in May 2014, after Plaintiffs sued Justice Trotter and JAMS, they filed a statement and motion to disqualify Judge MOSS based in part on Plaintiffs' lawsuit against Justice Trotter and JAMS for mediator misconduct and for failure to disclose JAMS was hiring their trial judge.

58. When Judge MOSS refused to recuse, Plaintiffs sought a writ from the Orange County Appellate Court, Div. 3.   Justice RYLAARSDAM, as Acting Presiding Justice, denied Plaintiffs writ to disqualify Judge MOSS by order entered June 26, 2014 in *Chodosh,* G050238.  In the Order denying the Writ, Justice RYLAARSDAM stated that, also: "I would issue an order to show cause why sanctions should not be imposed for the filing of a manifestly frivolous writ." (Exh. L)

59.   On information and belief, Plaintiffs allege that, that in or about that time, May - June 2014, or before, Judge MOSS agreed and conspired with Justice RYLAARSDAM along with, at that or later time, Justices O'LEARY and

BEDSWORTH that they, and each of them, would deliberately not follow the law and intentionally and purposefully rule against Plaintiffs, thereby denying them due process rights under the Fifth (5th) and Fourteenth (14th) Amendments.

60.     Plaintiffs are informed and believe that the object of the agreement and conspiracy was to punish Plaintiffs and their counsel for having sued Justice Trotter and JAMS.   Plaintiffs are informed and believe, and thereon allege, that the conspirators, and each of them, were also motivated by the prospect of enhancing their probability of landing a JAMS job after retirement.

61.     Plaintiffs are informed and believe and thereon allege that Judge MOSS willful judicial misconduct is brazenly exhibited and evident in the *Haugen* case and boldly displayed in the *Chodosh* case because Judge MOSS was comfortable that his agreement and conspiracy with Justices O'LEARY, RYLAARSDAM and BEDSWORTH to rule against Plaintiffs and contrary to law and in derogation of their rights would be affirmed and upheld on any appeal or Writ to the Orange County Fourth District Court of Appeal Division 3.

62.     Ensuing and consistent denials of Plaintiffs' appeals and writs would demonstrate that Judge MOSS was correct the Justices would affirm and support him on his rulings that were plainly against the law.  With the conspiracy and agreement in place, Judge MOSS thereafter enforced illegal leases and other unlawful agreements.

63.     To help Plaintiffs' opponents against them, Judge MOSS stepped in just in time to "reassume" jurisdiction in *Haugen* where he had been disqualified, in order to

halt Plaintiff Haugen's TRO that would have prevented the fiduciary fraudulent give away sale of the Park.   Under the conspiracy and agreement, the Defendant Justices were to uphold each and all of Judge MOSS' wrong rulings, which they did.

64.     The statements and actions of Justices O'LEARY, RYLAARSDAM and BEDSWORTH served during the litigation to back up, buttress and support Judge MOSS' willful judicial misconduct undertaken to deny Plaintiffs' rights.

**JUDGE MOSS WILLFUL JUDICIAL MISCONDUCT IN *HAUGEN***

65.      Of all Judge MOSS' wrongdoing, which wrongdoing the Defendant Justices would uphold, most egregious and proven beyond doubt is Judge Moss' willful judicial misconduct in the *Haugen* case, where, having been disqualified weeks earlier, Judge Moss suddenly called in from vacation to "reassume" jurisdiction, i.e. take the *Haugen* case from the judge to whom it had been reassigned.   Having put himself back on the case, Judge Moss took off calendar a TRO application that threatened the closing of the fiduciary fraudulent park sale in which elder HOA members would lose millions in real estate equity to the affiliates of MANTELLI, the HOA president and real estate broker engaged in fiduciary breach, fraud and self-dealing to steal the Park and its value from the elder HOA members.

66.     It is law and common sense that a person or entity that is disqualified, whether judge, juror, referee, sports player or team, that having been disqualified, the judge, juror, referee, sports player or team does not have the power, on her or his or its

own volition, to "re-qualify". A disqualified person or entity does not have power to undo the disqualification by their own decree.

67.     Judge Moss, says he "reassumed" jurisdiction (Ver. Ans. Exh. pg. 8, lines 25-28; Exh. G), on his own order, of the *Haugen* case where he had been previously disqualified by the Supervising Judge MARGINES' Order granting a Code Civ. Proc. sec. 170.6 disqualification challenge (Exh. C, pg. 108, Exh. F, pg. 183)

68.     Judge Moss knew he had been disqualified; he said so on the record in a hearing in the *Chodosh* case on Dec. 1, 2015. (Exh. C, pgs. 109-112)   The 170.6 disqualification order was entered Nov. 30, 2015. (Exh. C, pg. 108, Exh. F, pg. 183) Judge MOSS was disqualified.  The *Haugen* case was reassigned.

69.     When trial in *Chodosh* concluded Dec. 15, 2015.  Judge MOSS stated on the record that he would be on vacation for two (2) weeks, which would delay his issuing his statement of decision in *Chodosh*.  (Exh. C, pgs. 116-118, pg. 117, lines 22-26) Judge MOSS stated that he would be away from the court Dec. 17 – Dec. 27, 2015.

70.     Around that same date, Dec. 15, 2015, Plaintiffs learned that the fiduciary fraudulent real estate broker HOA president defendant MANTELLI and her accomplices FIORI, SMITH, SAUNDERS, COLDREN and SALISBURY had scheduled the fraudulent sale closing for Dec. 22, 2015.   It appeared the HOA president and accomplices feared the deal might not close as the escrow period for the fraudulent sale had expired by its terms.

71.     A much bigger threat to the fraudulent sale was that the HOA Board president and directors had received a better and higher offer to purchase the park from Hometown America a large real estate company ready to close all cash. (Exh. I)

72.     HOA President MANTELLI and those acting unlawfully with her withheld the higher and better offer from the HOA membership, as the fiduciary fraudulent and self-dealing below market sale would be in jeopardy if the members found out they could quickly close with an all cash buyer that would yield at least $20,000 dollars more for each member's pocket.  (Exhibit I)

## JUDGE MOSS SUDDENLY STEPS IN TO SAVE PARK SALE FROM TRO

73.     Plaintiff and her co-plaintiffs decided they would try to stop the fraudulent park sale, scheduled for Dec. 22, 2015, in order to have time to get word out to PBPA members of the higher and better offer from Hometown America.

74.     For himself and co-plaintiffs, on Dec. 21, 2015, in the *Haugen* case, Plaintiff Mr. HAUGEN filed a TRO application to stop the fraudulent Park sale, scheduled to close escrow the next day, Dec. 22, 2015.

75.     Mr. Haugen's TRO application and accompany pleadings and evidence were filed electronically for the courtroom (CX 101) of Hon. Gail A. Andler, the judge to whom the Presiding (then Supervising) Judge MARGINES had reassigned the *Haugen* case.  (Order granting 170.6, Nov. 30, 2015; Exh. C., pg. 108)

76.     Appearing for the hearing on the TRO the next day, Dec. 22, 2015, Plaintiff and her co-plaintiffs and counsel were told by the CX 101 court clerk to go to Judge MOSS' courtroom regarding the *Haugen* TRO application and hearing.

77.     Judge MOSS was not in his court; he was on vacation.  Judge MOSS' clerk confirmed his absence.   However, Judge MOSS' Clerk told counsel present that Judge Moss was back on the *Haugen* case, and that the TRO hearing was continued one (1) week to Dec. 28, 2015.

78.     Less than four (4) hours after Judge Moss' orders to postpone the TRO and take back the case, the deed for the wrongful park sale recorded.  (Judge Moss' order to take back case, 12/22  9:29 a.m.; deed recorded 1:18 p.m. (Exh. C, pgs. 129, 131)

79.     A disqualified judge cannot requalify himself or herself.  Judge Moss engaged in blatant, patent willful judicial misconduct by purporting to, as he put it, "reassume" jurisdiction; which he knew was unlawful and impossible.

80.      On information and belief, Plaintiffs allege that Judge MOSS engaged in the willful judicial misconduct in *Haugen* for his personal pecuniary or other benefit or compensation.   Plaintiffs are informed and believe, and thereon allege, that Judge MOSS had more motive for his perfectly and strategically timed willful judicial misconduct that allowed sale of the Park.

## EVIDENCE OF CRIME IN *HAUGEN* -UNDENIABLE *EX-PARTE* CONTACT

81.     It is not happenstance or coincidence that Judge MOSS, weeks after his disqualification, called in from vacation to order himself back on the *Haugen* case.

There is no set of plausible facts on which, <u>without anyone contacting him *ex-parte*</u>, Judge MOSS could or would have, while on vacation, on his own unprompted initiative, called into court about a case not in his courtroom, i.e. another judge's case, take over the case despite having been disqualified in it, and enter an order to postpone the hearing on a temporary restraining order ("TRO"), an application that would block the fiduciary fraudulent and self-dealing sale of a senior citizens' mobilehome park scheduled to close that same day.

82.     That Judge MOSS called in the wrongful orders from his vacation and that the sale closed less than four (4) hours later, Plaintiff alleges and contends, on information and belief, proves crime.  (Judge MOSS orders entered 12/22/15 at 9:00 and 9:29 a.m.; fraudulent sale closed at 1:18 p.m.; Exh. C, pgs. 129, 131)   Judge MOSS was not in court; someone had to contact him while he was on vacation to request that he intervene to stifle the TRO which endangered closing of the fiduciary fraudulent real estate sale; a fraud that would bilk around 120 senior citizens out of millions in real estate equity they hold in their HOA.

83.     In correspondence with counsel for SAUNDERS, COLDREN and PBPA, Plaintiffs' alleged, through counsel, that their clients or they as counsel had conducted ex parte communication with Judge Moss.  (See, Exhibit E, pgs. 152-178)

84.     PBPA counsel denied any *ex-parte* contact.   (Exh. E, pgs.168-172, 178)

85.     Counsel for the LLCs, SAUNDERS, COLDREN and SALISBURY did not deny.  It is undisputed that they were aware of Judge MOSS' Minute Orders of Dec.

21-22, 2015.  The first Minute Order entered by Judge Moss on Dec. 22, 2015, 9:00 a.m., which postponed the TRO, reflects "Edward Susolik / Peter S. Bauman, Callahan & Blaine, specially appearing for John Saunders."   (Exh. C, pg. 128)

86.    Mr. SAUNDERS was not a party to the *Haugen* action.  His counsel had never appeared in court before on any Palm Beach case.  Plaintiffs are informed and believe, and thereon allege, there was no reason for the clerk to make the entry, and that entry of the "appearance" of Mr. Susolik and Mr. Bauman for SAUNDERS adds to the appearance of impropriety; the buyer in the court where the judge would enter orders to ensure that the buyer closed the fiduciary fraudulent sale 4 hours later.

87.    It should be noted that this was the first Minute Order Judge Moss entered, at 9:00 a.m., to continue the TRO. (Exh. C pg. 128) He did not enter the Minute Order putting himself back on the case until 9:29 a.m. (Exh. C pg. 129) Plaintiffs are informed and believe, and thereon allege, that the 9:00 a.m. Minute Order serves as evidence of Judge Moss ex parte contact with the LLCs, as it refers to specially appearing counsel for SAUNDERS, manager of the LLCS.  and for which COLDREN was a principal and SALSIBURY an attorney.

88.    Weeks later, after discovering Judge Moss' willful judicial misconduct in taking back the *Haugen* case, Plaintiffs believed they had reason and evidence that beyond reasonable doubt would support and mandate the disqualification of Judge Moss in the *Chodosh* and other Palm Beach Park cases.

89.     On April 22, 2016, Plaintiff and others, through counsel, filed a statement

of disqualification against Judge Moss.  In his sworn answer, Judge Moss "I

specifically deny that I engaged in any *ex parte* contacts in the *Haugen* case."  (Judge

Moss Ver. Answer, pg. 8, ¶6, lines 21-23, see Exh. G, pg. 189)

90.     Judge Moss' denial of ex parte contact in *Haugen* is not credible.  He was

disqualified, the case reassigned, and he stated on the record he had no jurisdiction.

91.     It is undeniable that someone communicated to Judge Moss that the TRO

threatened sale of the Park. There had to have been an *ex-parte* communication that

alerted Judge Moss to the sudden need for him to call in to stifle the TRO.   (Exh. C)

92.     Plaintiffs contend that, apart from the fact that there must have been ex-

parte communication, other evidence proves crime.  TRO application opposition

papers, filed Dec. 21, 2015 in the court of Judge Andler, were filed after the clerk or

someone altered on the caption pages the court and hearing date, changing from Judge

Andler's Dept. CX 101 to "Judge Moss CX 102 and hearing date from "Dec. 22" to

"Dec. 28).  (See Exh. D)  Compare TRO Opposition *service* copies' "clean" caption

pages showing hearing in CX 101 before Judge Andler, to *filed* copies of the same,

each with altered caption pages, reflecting transfer of the TRO to CX 102, Judge

MOSS.  (See Exh. D, pgs. 139-150)

93.     TRO opposition pleadings were manually changed with a typewriter from

"CX 101", which was Judge Andler, to "CX102", the Judge Moss courtroom.  The

manual changes to filed pleadings were done as of Dec. 21, the day before Judge

Moss entered his order placing himself back on the case.  Thus, as of Dec. 21 the court record for the TRO opposition (Exh. C, pgs. 122-127) shows the *Haugen* case TRO having been transferred to Judge Moss and the TRO hearing postponed, but Judge Moss did not "reassume jurisdiction" until the next day, Dec. 22. (Exh. C, pg. 129)

94.     Plaintiffs are informed and believe, and thereon allege, that crimes were committed by the doctoring and altering of pleadings submitted to the court which were changed to reflect transfer to Judge Moss the day before Judge Moss purported to place himself back on the case.

95.     It is also evidence that Judge Moss actually took the TRO off calendar and continued it with his order on Dec. 22 at 9:00 a.m. (pg. 128) *before* he self-requalified himself back on the *Haugen* case with his order entered at 9:29 a.m. (Exh. C pg. 129)

96.     This evidence shows Judge MOSS and his clerk scrambling to make sure the TRO was neutralized so that the fraudulent sale could close on Dec. 22, 2015 as scheduled.  Judge Moss was in such a hurry that he forgot to <u>first</u> self-override his disqualification and <u>second</u> order himself back on to the *Haugen* case, or as he put it, "reassume jurisdiction", then purport to act as judge in the case to postpone the TRO. He did not first "reassume" jurisdiction, then enter orders in the case to stop the TRO.

97.     In his verified answer, Judge Moss explains that the altered court documents showing the *Haugen* case TRO transferred to his courtroom on the day before he "reassumed jurisdiction" merely reflected inaccuracy in the "register of actions" i.e. the docket.  In explanation, Judge Moss clarified that the times on the

court orders may have been inaccurate, but the sequence of the minute orders is what mattered.

98.      Judge MOSS explained: "The numbering of the Register of Actions reflects the correct order in which documents were filed in the *Haugen* case.  With respect to the filing times listed in the Register of Actions, I do not believe all of them are accurate."  (Exh. G, page 190, lines 1-5; J. MOSS Verified Answer, 04/29/2016)

99.      Plaintiff contends that the wrong sequence resulted from haste and rush to make sure the main objective, stopping the TRO from preventing closing of the fraudulent Park sale, was achieved.  Judge MOSS mistakenly first stopped the TRO; then "reassumed" jurisdiction.  The error meant he was not the judge on the case when he continued the TRO.   His TRO postponement was ineffective as he had not yet "reassumed" jurisdiction when he purported to postpone the TRO hearing.

100.      Plaintiffs are informed and believe, and thereon allege, that Judge Moss, recognizing the inconsistent times on his Minute Orders and pleadings prove judicial misconduct, put forth in his Answer the explanation that the sequence is correct, but the times are not.   The sequence, times, and Judge MOSS elucidation on why times do not matter prove the hurriedness to stop the TRO.   It was not until afterwards that Judge MOSS' Clerk could assemble the Minute Orders and, ignoring the times recorded on them, put them in the "right sequence."

## JUDGE MOSS TWO (2) ORDERS TO "REASSUME" - MISLEADING

101.   Judge MOSS issued two (2) orders placing himself back on the case, one on Dec. 22, (Exh. C, pg. 129) and the other on Dec. 23, 2015.  (pg. 134) There was no reason for Judge Moss to issue two orders to place himself back on the *Haugen* case.

102.   Plaintiffs are informed and believe, and thereon allege, that Judge MOSS issued the second order as a way to mislead Plaintiffs and their counsel into believing that his "re-assumption" of jurisdiction had been ordered by the judge to whom the case had been re-assigned, but not Judge MOSS himself.

103.   The Dec. 23 Minute Order just says "Defendant's objection having been granted and peremptory challenge stricken, this is case is reassigned to the Hon. Robert J. Moss for all purposes.  Clerk to give notice."  (12/23/15 Minute Order, at 2:55 p.m., Exh. C, pg. 134)   As the Judicial Officer Presiding, it states: "Under the direction of Honorable Robert J. Moss."  The Dec. 23 Minute Order is vague, making it appear that Judge MOSS being put back on the case was decided and ordered by the assigned or other Judge, but not disqualified Judge MOSS. As ordered, the clerk served the Dec. 23, 2015 Minute Order on Plaintiff's counsel.

104.   In contrast, the Dec. 22, 2015 (Exh. C, pg. 129) Minute Order precisely reflects that Judge Moss himself ordered himself "re-qualified" in *Haugen*.   It recites that peremptory challenge was filed, that matter was referred to C-1 and case was reassigned to Hon. Gail A. Andler.  It then notes that Defendant filed an objection on Dec. 1, 2015.

105.   The Dec. 22, 2015 Minute Order then states: "The Court, having read and considered the objection, now rules as follows: Defendant's objection is granted. Peremptory challenge is stricken.  Clerk to give e-Service notice to counsel." (12/22/15 Minute Order, 9:29 a.m., Exh. C, pg. 130)

106.   The Dec. 22 Minute Order states that the Judicial Officer Presiding was Robert J. Moss, i.e. it makes clear that, it was he, Judge MOSS himself, although disqualified, that decreed himself as "reassuming" jurisdiction in *Haugen*.

## JUDGE MOSS FIRST ORDER NOT SERVED; SECOND ORDER SERVED

107.   Judge MOSS entered two (2) orders by which he put himself back on the case, i.e. as he says, by which he "reassumed" jurisdiction.  First there was the Dec. 22 Minute Order (Exh. C, pg. 129), followed the next day by the Dec. 23, 2015 Minute Order (Exh. C, pg. 134)

108.   While Judge Moss ordered service of the Dec. 22 Minute Order, the clerk failed to serve it, as shown by blank proof of service. (Exh. C, pg. 130)

109.   Plaintiffs are informed and believes, and thereon alleges, that it is not clerk error that caused her counsel to not be served the Dec. 22 Minute Order which plainly states Judge Moss issued his own order placing himself back on *Haugen*.

110.   Plaintiffs are informed and believes that it was deliberate on the part of Judge MOSS to not serve the Dec. 22 Minute Order showing judicial misconduct.

111.   Plaintiffs are informed and believe that upon reflection on his willful judicial misconduct, that Judge MOSS decided to create a second (2nd) Minute Order on Dec. 23 that omitted the detail that he had placed himself back on the case.

112.   Plaintiffs are informed and believe that Judge MOSS intentionally caused to be served the subsequent Dec. 23 Minute Order that did not specifically reflect that Judge MOSS had "re-qualified" himself.  (Dec. 23 Order, proof of service at pg. 135)

113.   Conversely, Plaintiffs are informed and believe that Judge MOSS deliberately caused the Dec. 22, 2015 Minute Order to not be served (Exh. C, pg. 130), as it gave the detail that he Judge MOSS, had re-qualified himself in order to, as he put it, "reassume" jurisdiction in a case where he had been disqualified.

## ADOPTIVE ADMISSION OF EX PARTE CONTACT WITH JUDGE MOSS

114.   Plaintiff contends that other evidence of crime is shown by Plaintiff's counsel's correspondence with opposing counsel involved in Palm Beach Park cases and who were present when Judge MOSS took back the case and the sale closed on Dec. 22, 2015.   (See Exhibit E)

115.   As set forth in the correspondence attached hereto as Exhibit E, Plaintiffs were informed and believed that the ex-parte communication Judge MOSS had was willful judicial misconduct that had to include and involve conspiracy to obstruct justice, Penal Code 182, et al. and other crimes. (Exh. E, pgs. 152-167, 173-177)

116.   As set forth in the correspondence, Plaintiffs' counsel informed the LLC'S and SAUNDERS' counsel and PBPA and its counsel of Plaintiffs' contention that

there had been ex parte communication with Judge MOSS in order to tip him off to call into the court from vacation, take back a case not in his court, on which he had been disqualified, in order to enter an order delaying a TRO application that threatened the scheduled closing of the fiduciary fraudulent and self-dealing sale. Plaintiffs charged that counsel for PBPA or SAUNDERS or both had undertaken the illegal ex parte communication with Judge MOSS.

117.   PBPA counsel denied or at least attempted to deny the charge that they had been involved and had made an ex parte communication with Judge MOSS.

118.   However, counsel for SAUNDERS and the LLCS did not deny the allegation of wrongful ex parte communication with Judge MOSS.   Further correspondence established the record that the failure of SAUNDERS and LLCs' counsel to deny the ex parte communication amounted to and was an adoptive admission that such wrongful ex parte communication had actually occurred between Judge MOSS and the LLCs and SAUNDERS, by and through their counsel.

119.   Plaintiffs contend that by failing to deny charges of ex parte communication with Judge MOSS, that the LLCs' and SAUNDERS' counsel, for those entities, adoptively admitted that such entities had ex parte communication with Judge MOSS.

120.   Plaintiffs contend and are informed and believe and thereon allege that various crimes did and had to occur for Judge MOSS to effectuate unlawful denial of the TRO by his unlawful "re-assumption" of jurisdiction and TRO delay order which had the intended result of allowing the fraudulent park sale to close as its wrongdoer

and fiduciary breaching and aiding and abetting conspirators and organizers had

scheduled it.

121.   Plaintiffs are informed and believe, and thereon allege, that the facts and

evidence alleged herein prove that Judge MOSS engaged in wrongful ex parte

communication with SAUNDERS and the LLCs that constituted crime, including

conspiracy to obstruct justice, Penal Code sec. 182, all as set forth and documented in

the counsels' correspondence, Exh. E, pgs. 152-178 hereto, incorporated by reference.

### JUSTICES O' LEARY, RYLAARSDAM AND BEDSWORTH UPHOLD JUDGE MOSS' WILLFUL JUDICIAL MISCONDUCT IN *HAUGEN*

122.   After discovering that Judge MOSS had wrongfully "reassumed"

jurisdiction, on April 22, 2016 Plaintiffs filed a motion to disqualify Judge MOSS in

the main *Chodosh* case.   On April 29, 2016, Judge MOSS denied the disqualification

and denied any wrongdoing in his verified answer (Exh. G)

123.   On May 9, 2016, Plaintiffs took a writ to the Orange County Appellate Court

Div. 3 on Judge MOSS' refusal to recuse to Div. 3.  (*Chodosh v. Superior Court*,

G053512)   Laid before Div. 3 were the court documents starting with the 170.6

challenge, that in sequence by themselves provide Judge MOSS willful judicial

misconduct in "reassuming" jurisdiction in *Haugen*.  (See Exh. C, pgs. 105-137; court

file stamped pages in sequence; proof of Judge MOSS' willful judicial misconduct).

124.   On May 18, 2016, PBPA filed an opposition to the writ petition.

125.   Before Plaintiffs could file their Reply, on May 26, 2016, the appellate court, O'LEARY, RYLAARISDAM AND BEDSWORTH denied the writ.

126.   Before Justices O'LEARY, RYLAARISDAM AND BEDSWORTH was a plain record of court documents, pleadings, minute orders and transcripts, in sequence, showing that Judge MOSS "re-assumption" of jurisdiction was willful judicial misconduct and worse.  (Exh. C: See, Judge MOSS' Answer, Exh. G, pg. 189, line 25)

127.   To Plaintiffs' knowledge, the Justices ignored their duty under the Judicial Ethics code to report the wrongdoing of another judge, Judge Moss, to authorities.

128.   Plaintiffs are informed and believe, and thereon allege that Justices O'LEARY, RYLAARISDAM AND BEDSWORTH intentionally and purposefully, by agreement and conspiracy, failed to disqualify Judge MOSS and report him as required, all in order to harm and damage Plaintiffs because they had dared to sue Justice Trotter and JAMS, which lawsuit threatened and defied the power of Justice Trotter and JAMS to extra-judicially dictate results in cases submitted for mediation to JAMS.   The Defendant Justices, and each of them, in denying the writ, acted in violation of law, ethics, and in derogation of Plaintiffs' due process rights.

## NOTICE OF JUDGE MOSS' WRONGDOING TO PRESIDING JUDGE MARGINES; NO INDICATION HE DID ANYTHING ABOUT IT

129.   After filing the Writ to Div. 3, Plaintiffs filed a protest against Judge Moss with the Orange County Superior Court Hon. Charles MARGINES.   A true and

correct copy of Plaintiff's counsel's letter to Judge MARGINES, dated April 26, 2016, is attached hereto as Exhibit F (pgs. 180-185).

130.   In the letter Plaintiffs pointed out Judge MARGINES duty under the California Judicial Ethics Code, Canons 3D(1) and 3(c)(3) to investigate and report judge misconduct to the Commission on Judicial Performance.

131.   PBPA counsel sent a letter to Judge MARGINES in the nature of an opposition / objection to Plaintiffs' letter.  Plaintiffs sent a follow up letter to Judge MARGINES.

132.   Plaintiffs never heard anything from Judge MARGINES.  To Plaintiffs' knowledge, Judge MARGINES did nothing about Judge MOSS' misconduct, thereby ignoring his duties as specified in the paragraphs just above.

## JUDGE MOSS' WILLFUL JUDICIAL MISCONDUCT IN *CHODOSH*

133.   In *Chodosh*, unlike *Haugen*, there is not a single shocking undeniable set of facts and events proving judicial misconduct similar to Judge MOSS' astounding stunt in claiming he "reassumed" jurisdiction on a case where he had been disqualified.

134.   Rather, in *Chodosh*, starting when he took over the case in January 2014, Judge MOSS engaged in continual willful judicial misconduct by intentional disregard of the law and Plaintiffs' rights and other actions.  Most basic, Judge MOSS, in his court, upheld and supported illegality.   (See Exhibit B for grid of PBPA illegality.)

135.   Judge MOSS denied Plaintiffs their rights to sue and defend on the plain evidence that the Palm Beach Park documents and agreements were illegal.  Instead, in

direct derogation of the most basic principle of law – that a court does not lend itself

to illegality -- Judge Moss enforced blatantly illegal leases and contracts and

transactions in favor of an illegal actor fiduciary.   A court cannot enforce an illegal

contract; it must invalidate the illegal lease or contract or agreement.

136.   The enormity and totality of PBPA illegality was proven before Judge

MOSS.  Attached as Exhibit B is a grid of PBPA wrongdoing and crimes and the

evidence therefore.   Judge MOSS ignored all of these laws and that PBPA engaged in

violations of such laws which violations carried criminal penalties.   Judge MOSS not

only ignored PBPA illegality, he enforced against Plaintiffs PBPA's illegal lease,

membership, loan and other documents and instruments that it generated.

137.   Judge MOSS caused Plaintiff and other members to lose their homes by

enforcing an unlawful contract of forfeiture.   Judge MOSS ruled that the HOA, by

mere vote of its Board of Directors, could "terminate" Plaintiff's lease and

membership, i.e. take her home.   With Judge MOSS, the HOA did not have to

foreclose or evict or in some lawful manner take possession of a Plaintiff's home; with

Judge MOSS' helpful rulings, by mere Board vote, PBPA could take member homes.

138.   HOA PBPA could not just take a Board vote to "terminate" a Plaintiffs'

rights to a home, and upon such "termination", as Board President MANTELLI

testified, give "<u>nothing</u>" in return.  (Exh. O, pg. 225, line 26)   Putting aside that

illegal actor PBPA had no right of any kind against any Plaintiff, in any event,  there

is no lawful procedure for a summary taking of an HOA member's home owner rights

by a mere Board vote.  Taking a home requires foreclosure or eviction or other process.

139.   Essentially Judge MOSS granted PBPA an illegal contract of forfeiture, or an unlawful "strict foreclosure", where the lender, here the HOA, by Board vote, "terminated" each Plaintiff, thereby taking the member's lease, membership and home, and giving nothing in exchange for the home.

140.   In addition to having their HOA take their homes for nothing, on leases and contracts that were illegal, on April 14, 2016, Judge MOSS entered six (6) figure judgments against Plaintiffs.

141.   In summary, in *Chodosh*, Judge Moss, (1) enforced a fiduciary's illegal leases and contracts and agreements against the beneficiaries; (2) upheld the HOA taking homes by mere vote of its Board of Directors, giving no consideration, which was unlawful forfeiture and (3) awarded the illegal actor fiduciary HOA six (6) figure judgments against Plaintiffs, the victims of the illegality Judge MOSS upheld.

142.   As one example, for Plaintiff EICHERLY, she and her late husband, in 2003, paid $185,000 for their home in the Park. Judge MOSS first caused the HOA to take her home, then ordered her ejected from it for <u>nothing</u>. (Exh. O)   Then he awarded her HOA $245,196 against her. (Judgment entered 4/19/16 in *Chodosh*)

143.   Judge MOSS rendered Plaintiffs homeless and financially ruined.  He did so by the misconduct of enforcing against them and in favor of their HOA fiduciary its illegal leases, contracts and agreements.

## JUDGE MOSS "RULINGS" ON ILLEGALITY – MISLEAD PBPA MEMBERS

144.    Judge MOSS' "rulings" on illegality prove his intentional judicial misconduct.  The most basic principle in law is that a court will not enforce illegal contracts.   "'No principle of law is ***better settled*** than that **a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out**.'"  *Lee On v. Long* (1951) 37 Cal.2d 499, 502.  (Emphasis added)

145.    A court must confront and deal with illegality whenever it is revealed in a civil case.  Illegality can come be raised at any time, including on appeal. See, e.g. *Lewis & Queen v. N.M. Ball Sons* (1957) 48 Cal.2d 141, 147-148 ("[T]he legality of a contract may always be examined even for the first time on appeal.")

146.    However, in Judge MOSS' courtroom, PBPA filed and had him grant Motions in Limine to exclude evidence of PBPA crime.   It made no difference to Judge MOSS that PBPA was a fiduciary.  Before Judge MOSS, fiduciary HOA PBPA could successfully argue that evidence of its crimes was inadmissible.

147.    Judge MOSS' rulings were fundamentally wrong in allowing a fiduciary to keep out evidence of its crimes.  Judge MOSS ruled to uphold fiduciary crime.

148.    Judge MOSS also "ruled" that Plaintiffs could not raise illegality, because they failed to plead it in their operative complaint filed in 2012.   In April 2014, what would turn out to be three (3) years before the case concluded, Plaintiffs had moved to amend their complaint and answer to the PBPA cross complaint to assert claims and

defenses based on illegality.  Judge MOSS denied the motions to amend.  Thus, the lack of pleading illegality was the result of Judge MOSS' "rulings."

149.    Regardless, the law is that illegality need not be plead and can arise at any time, even on appeal.  See, e.g. *Geffen v. Moss* (1975) 53 Cal. App. 3d 215, ("[I]f the question of illegality develops during the course of a trial, a court must consider it whether pleaded or not. . . ")

150.    Judge MOSS was wrong to state that he could keep out illegality because Plaintiffs had not plead it.  Judge MOSS had denied Plaintiffs the right to amend their pleadings; and there is no pleading requirement for illegality.  Plaintiffs are informed and believe and thereon allege that Judge MOSS knew his rulings to keep out illegality based on lack of "pleading" it was contrary to law.

151.    Moreover, when illegality appears in a case, the court has a duty to inquire and ascertain the illegality.  See, e.g. *Morey v. Paladini* (1922) 187 Cal. 727, 734: ("When the court discovers a fact which indicates that the contract is illegal and ought not to be enforced, it will, on its own motion, instigate an inquiry in relation thereto.")

152.    In his statement of decision in *Chodosh* Judge MOSS refers to illegality as just a "theory."  In his decision, pg. 5, lines 1-5, Judge MOSS elucidates his errors:

> While the main theory of plaintiffs was the failure to disclose the right of first refusal, plaintiffs also argued that there were numerous violations of law such as the Subdivision Map Act, the Subdivided Lands Act, and the lack of required Certificates of Occupancy that somehow form the basis for liability. None of these theories, incidentally, were pled in the fourth amended complaint.

153.    Regarding appearance in his courtroom of attorney for the California Dept. of Business Oversight, and the DBO investigation which already had shut down transfers of PBPA illegal memberships, Judge MOSS stated such state agency action had no significance: "Plaintiff introduced evidence that the Department of Business Organizations (sic) is currently investigating this issue (because the plaintiff or their lawyer invited an investigation) but the fact that there is an investigation in progress proves nothing.  It is just an investigation."  (Judge MOSS' Written Statement of Decision, entered in *Chodosh* 03/30/2016, pg. 5, lines 16-20)

154.    It is fundamental not only that a court cannot enforce an illegal contract, but that when evidence of illegality is presented, the court must investigate and ascertain the illegality.    That DBO had shut down transfers of PBPA memberships, thereby stopping home sales in the Park, should have prompted Judge MOSS to conduct his own investigation to determine if such base line illegality existed – that a non-profit homeowners' association was selling its memberships in violation of the California Securities Act of 1968, Calif. Corp. Code sec. 25000 et seq.   Judge MOSS ignored his sworn duty to uphold the law; he looked the other way when PBPA illegality was stark before him.  He ignored evidence of crime against seniors.

155.    In Judge MOSS' courtroom, as to Plaintiffs' cases, illegality was upheld and supported.  Moreover, at all times, and most recently with a brief filed December 16, 2016, PBPA spouts and repeats Judge MOSS' incorrect pronouncements that illegality must be plead and cannot come into a trial or appeal.

156.    Plaintiffs are informed and believe and thereon allege that Judge MOSS, in conspiracy with the Defendant Justices and the LLCs, purposefully entered wrong and unlawful orders and rulings not just to allow PBPA to take Plaintiffs' homes and property, but also so that MANTELLI and those allied in wrongdoing with her could declare and crow to the PBPA members that PBPA and MANTELLI had "won" and were "winning" in the court with Judge MOSS.  A true and correct copy of an example of a MANTELLI "win" announcement to members is attached as Exhibit K.

157.    Knowing that since MANTELLI joined PBPA there had been no financial statements or accounting for reserves, and aware of total PBPA illegality, Judge MOSS, in open court, before PBPA members in attendance other than the Plaintiffs, praised MANTELLI as "credible" and commended her and the Board.

158.    Plaintiffs are informed and believe, and thereon allege, that Judge MOSS may have had more motivation than the defendant Justices O'LEARY, RYLAARSDAM and BEDSWORTH.    Plaintiffs are informed and believe, and thereon allege, that Judge MOSS, in addition to his agreement and conspiring on the objective to harm Plaintiffs by denying them their constitutional rights, also had motive and goal to make sure the SAUNDERS sale went through.

159.    Plaintiffs are informed and believe, and thereon allege, that Judge MOSS praise of MANTELLI and other conduct had the deliberate purpose of impressing other PBPA members that the court found favor with MANTELLI, thereby imparting on to her the imprimatur for approval by the court, which facilitated and further

enabled MANTELLI to defraud PBPA members and enrich herself personally by arranging the wrongful SAUNDERS sale.  (See, e.g. Exh. K, pg. 205)

**JUSTICES O' LEARY, RYLAARSDAM AND BEDSWORTH UPHOLD JUDGE MOSS' WILLFUL JUDICIAL MISCONDUCT IN *CHODOSH***

160.   In *Oberholzer v. Calif. Judicial Performance Commission* (1999) 20 Cal. 4th 371, 396, our State Supreme Court stated: "Action that is legally erroneous nevertheless can constitute misconduct if it involves '*bad faith, bias, abuse of authority, disregard for fundamental rights, intentional disregard of the law or any other purpose other than the faithful discharge of judicial duty' (citation omitted*)."

161.   Judge Moss' misconduct rampantly runs afoul of *Oberholzer*.   Judge Moss acted in bad faith.  He abused his authority.  He made a record of disregard for fundamental rights.  He executes on an intentional disregard for the law. He enforced illegal leases and contracts.  In *Haugen*, on information and belief, Plaintiffs allege he committed crimes, including conspiracy to obstruct justice, Penal Code §182. (Exh. E)

162.   Several times Plaintiffs' appealed or petitioned Judge Moss' unlawful rulings and failures to follow the law to the appellate court, Division 3.

163.   The record demonstrates that the Orange County Appellate Court, including and principally Presiding Justice O'LEARY, former Justice RYLAARSDAM, and Justice BEDSWORTH, did carry out their agreement and conspiracy to deny due process to Plaintiffs, because they wrongly affirmed and upheld Judge MOSS' wrongdoing in entering unlawful rulings and judgments.

164.   The *Chodosh* case commenced 2010.  Along with it a derivative action was filed with Ole Haugen as the derivative plaintiff.  *Haugen v. PBPA* (filed Nov. 2010, OCSC #30-2010-00432259).

165.   Three (3) months after he had taken over the Palm Beach Park litigation, Judge Moss granted the PBPA motion to dismiss the derivative case on the basis that PBPA, by Board vote, had "terminated" the derivative plaintiff's membership and member lease and had taken his home, for nothing. (Exhibit O) Based on the unlawful contractual forfeiture, PBPA claimed that Mr. Haugen no longer had membership status and therefore could not serve as derivative plaintiff for PBPA.

166.   Mr. Haugen appealed the dismissal.  Because PBPA had brought the motion to dismiss in the *Chodosh* (i.e. non-derivative consolidated individual cases) instead of in *Haugen* the derivative case, the appeal was filed under the case no. for *Chodosh v. PBPA* 30-2010-00423544, but captioned *Haugen v. Wiley*. G050145 (Notice of Appeal filed May 16, 2014)

167.   At the outset in briefing Appellant Mr. Haugen demonstrated to Division 3 that the *Haugen* derivative case appeal, like all PBPA lawsuits, involved plainly illegal leases, HOA memberships and transactions, and illegal "boot" legged rental spaces, which illegality meant PBPA had no standing or right to be in court; it could not enforce illegal contracts; it was an illegal actor as to all the agreements and transactions.

168.   In the appeal because Judge MOSS had ignored illegality, on Nov. 25, 2015 Appellant and Plaintiff herein Mr. Haugen filed a motion to Div. 3 requesting that the court augment the record and take notice of evidence of PBPA illegality, captioned: "Appellant's Motion: to Augment and Supplement the Record to Prove that Appellant's Lease is Illegal and other Illegality; or in the Alternative, if the Trial Court, as before, refuses to hear Illegality, for this Court to take Evidence To Establish Illegal Lease and Illegality."

169.   The motion attachments pointing out the law that illegality need not be plead and can be raised at any time, even on appeal.  The motion reviewed PBPA overall illegality, but focused on the illegal lease, citing the court to its own decision *Espinosa v. Calva* (2008) 169 Cal. App. 4th 1393 which held a lease for illegal premises, that lacked certificate of occupancy or permit, was unenforceable.  In the decision Div. 3, Justice RYLAARSDAM, writing the opinion, reviewed the law of illegality, i.e. that court cannot ignore it, that it can come up at any time, the duty of a court to inquire about it, and that a court cannot uphold an illegal contract.  (Id. at 1400).   On Dec. 2, 2015, Division 3 denied the motion with an Order that had no Justice's name or signature.  (Order Ent. 12/2/15, *Haugen v. Wiley*, G050145)

170.   On December 16, 2015 at oral argument on the appeal, Appellant Haugen's counsel pointed out to the panel, Justices RYLAARSDAM, BEDSWORTH and Aaronson, that PBPA had no right or ability to "terminate" Mr. Haugen or anybody,

as the membership, the member lease, the member loan and everything at or about

PBPA or Palm Beach Park was illegal.

171.   RYLAARSDAM ignored the blatant PBPA illegality.  Justice

RYLAARSDAM stated that the only question before the court was whether Mr.

Haugen could still serve as derivative plaintiff after the homeowners' association

PBPA had "terminated" him by vote of its Board of Directors.

172.   Plaintiffs' counsel argued that all the underlying agreements and transactions

were illegal, as shown by substantial and undeniable evidence, and that PBPA, that no

HOA, could "terminate" a member with a board vote.   Justice BEDSWORTH voiced

his agreement with RYLAARSDAM that the only question before the court was

whether Mr. Haugen could serve as derivative plaintiff, not whether he had been

legally or effectively "terminated."

173.   In the unpublished opinion, *Haugen v. Wiley* G050145 (filed Jan. 9, 2016)

Justices RYLAARSDAM, BEDSWORTH and Thompson ruled that the derivative

case was properly dismissed because Mr. Haugen was no longer a PBPA member.

The opinion speaks as though PBPA were a regular Davis Stirling HOA, ignoring that

its existence and operations were entirely illegal, and acting to enforce the illegal

"termination" by contract of homeowner rights against Plaintiff HAUGEN.

174.   The records and dockets for the *Haugen* and *Chodosh* cases demonstrate that

defendants RYLAARSDAM and BEDSWORTH and O'LEARY were informed and

knew that leases, memberships and transactions in the Park were illegal and

unenforceable.    They knew Judge MOSS was wrong to enforce the illegal leases and

contracts.  They knew that Judge MOSS had no right or power to uphold the PBPA

summary "termination" of Mr. Haugen's property and legal rights.

175.    Justices O'LEARY, RYLAARSDAM and BEDSWORTH knew they had a

duty and were sworn to investigate and ascertain illegality and take action against it.

176.    The Defendant Justices ignored ample evidence of illegality.  They breached

their sworn duty to uphold the law.  They did not reverse Judge MOSS.  They upheld

his illegality.

177.    In so doing, the Justices acted to deliberately deny Plaintiffs due process.

## JUSTICES O' LEARY, RYLAARSDAM, BEDSWORTH – CONSPIRATORS' COMMUNICATION BY WRONGFUL "LAW OF THE CASE"

178.    Justices O'LEARY, RYLAARSDAM and BEDSWORTH entered several

rulings that were wrong and unlawful, including refusing to disqualify Judge MOSS

and upholding illegal strict foreclosure and taking of Plaintiff Haugen's membership

and lease, i.e. his home, as well as upholding and sanctioning other PBPA

wrongdoing, including its violation of TILA.

179.    During litigation an appellate decision in the still ongoing underlying trial

court case is usually adopted as the "law of the case."   As related herein, the *Chodosh*

case was appealed to Div. 3 and heard by Justices RYLAARSDAM and

BEDSWORTH (*Haugen v. Wiley* G050145).  In that case evidence was submitted and

motion made to bring into the case ample evidence of PBPA illegality.   The Justices ignored the illegality and upheld it.

180.   When Plaintiffs first moved to disqualify Judge MOSS in May 2014, Justice RYLAARSDAM, in denying writ to disqualify Judge MOSS, stated his view that Plaintiffs' counsel should be sanctioned for having brought a manifestly frivolous appeal.  (See, *Chodosh v. Sup. Ct*. G050238 [first writ re: Judge MOSS disqualification] Order Denying Writ, June 26, 2014; Exhibit L)

181.   When Plaintiffs again, for the second time, on May 9, 2016, took a writ to Div. 3 for the purpose of having Judge MOSS disqualified, (*Chodosh v. Superior Court,* G053512), largely for his blatant "re-assumption" of jurisdiction in *Haugen.*

182.   Justices O'LEARY, RYLAARSDAM and BEDSWORTH denied the writ, upholding Judge MOSS as trial judge in the face of overwhelming evidence of Judge MOSS' wrongdoing in having "reassumed" jurisdiction in *Haugen* just in time to save and enable close of escrow for the fraudulent SAUNDERS sale.

183.   The record shows that at all times, and under several specific rulings and opinions of the Defendant Justices, that said Defendants did and intended to communicate to Judge MOSS that the "law of the case" for *Chodosh* and Palm Beach Park litigation would be that no law would be followed or upheld, and that Judge MOSS, like the Defendant Justices, could ignore and defy the basic principle of law that a court cannot uphold or enforce an illegal lease, contract or agreement.

184.   Plaintiffs are informed and believe, and thereon allege, that defendant Justices O'LEARY, RYLAARSDAM and BEDSWORTH at all times intended to communicate, and did communicate, as part of their agreement and conspiracy to Judge MOSS, by and through their wrongful "law of the case" rulings, that he could and they would uphold and enable him to deny Plaintiffs their due process rights by deliberate failure and refusal to follow the most basic legal principle that a court will not uphold an illegal lease, contract, agreement or transaction.

185.   Plaintiffs are informed and believe, and thereon allege, that Judge MOSS and one or more of Justices O'LEARY, RYLAARSDAM and BEDSWORTH communicated about their agreement and conspiracy to deny Plaintiffs' their rights and cause their HOA to take their homes for nothing.  Plaintiffs are informed and believe that Judge MOSS including probably one, some or all of the Defendant Justices, communicated with the LLCs as part of the agreement and conspiracy to deny Plaintiffs their rights and take their homes, and neutralize their TRO and legal efforts to halt the fiduciary fraudulent sale of the Park to SAUNDERS.

186.   Plaintiffs are informed and believe, and thereon allege, that the communications of and by and between defendants who agreed and conspired to deprive Plaintiffs due process, as alleged herein, included the Defendant Justices issuing to and for Judge MOSS various orders and decisions that constituted wrongful and incorrect decrees to a court not to follow or uphold the law and litigant rights.

### THE PERSONAL FRIENDSHIPS AND COLLEGIALITY THAT BINDS JUSTICE TROTTER AND JUSTICES O' LEARY, RYLAARSDAM AND BEDSWORTH

187.   Justice Trotter was the first and founding Presiding Justice of the Orange County Appellate Court Division 3.   In 1987 he left Div. 3 to co-found, grow and operate JAMS.   Justice Trotter's photographic portrait hangs in the Div. 3 foyer, overlooking passer by litigants and their counsel.

188.   Of course current Div. 3 Justices must follow Div. 3 precedent that Justice Trotter wrote; case precedent opinions by Justice Trotter are many.   As would be expected, Div. 3 Justices of this court, Justice RYLAARSDAM, have cited to Justice Trotter's opinions, e.g. *Mola Development Corp. v. Assessment Appeals Board* (2000) 80 Cal. App. 4th 309, 325 ("As Presiding Justice Trotter wrote for this court. . . ")

189.   Plaintiffs are informed and believe, and thereon allege, that each of Justices O'LEARY, RYLAARSDAM and BEDSWORTH personally know and are good friends with Justice Trotter.   As one example, Justice O'LEARY conducted the interview of Justice Trotter for the California Appellate Project.   Upbeat as they introduced themselves in the video interview, their friendship and collegiality was crowned with the following exchange:

Kathleen O'Leary: I'm Kathleen O' Leary, a justice of the Fourth District Court of Appeal, Division Three in Santa Ana, and I have the pleasure this morning of chatting with Justice John K. Trotter, a founding member—in fact, the founding presiding justice—of the Santa Ana Court of Appeal. Justice Trotter . . . I can call you —Justice Trotter or I can call you —Jack.

John Trotter: I think —Jack would be better.

<u>Kathleen O'Leary</u>: Okay. And you can call me ―KO, because I think that's how we've always called each other.

<u>John Trotter: Right</u>. I was going to say, that's how we know each other.

(See Div. 3 former Justices' biographies, court website, before July 20, 2016)

190.   Plaintiffs are informed and believe that Justice RYLAARSDAM has personally known Justice Trotter going back to the 1960s when they were both practicing law in Orange County.  They were opposing counsel in cases including *Scotsman Mfg. Co. v. Superior Court* (1966) 242 Cal. App. 2d 527.

191.   Plaintiffs are informed and believe that Justice BEDSWORTH has personally known Justice Trotter for many years, going back to when Justice BEDWORTH was an Assistant Deputy Attorney years ago.

192.   Plaintiffs are informed and believe that Justices O'LEARY, RYLAARSDAM and BEDSWORTH, and each of them, over the past twenty (20) years or more, have regularly and almost annually attended a State Bar or similar function or meeting where they have seen and conversed with Justice Trotter.

## JUSTICES O' LEARY, RYLAARSDAM AND BEDSWORTH PECUNIARY INTEREST IN JAMS POST BENCH RETIREMENT EMPLOYMENT

193.   Justices O' LEARY, RYLAARSDAM AND BEDSWORTH, and all Div. 3 Justices, have a direct and assured pecuniary interest in JAMS.  They have access to an opportunity that JAMS has made available to past Justices going back thirty (30)

years when original and first Presiding Justice Hon. Jack Trotter left the Div. 3 bench in order to become the co-founding "neutral" at JAMS

194.   Justice Trotter is founder and prominent member of JAMS, Inc., the world's largest ADR provider.   Three (3) of four (4) living former Div. 3 Justices are "neutrals" at JAMS, Justices Trotter, Edward Wallin and Sheila Sonenshine.   It is common knowledge in the legal community that a retiring Fourth District, and especially Div. 3, Justice, can look to JAMS for post-court employment at compensation much higher than a Justice's salary.

195.   There are few available revenue and expense figures for JAMS.  There are news reports quoting JAMS "neutrals", including Justice Trotter, about how a JAMS "neutral" can makes much more money than as a sitting judge.

196.   Plaintiffs are informed and believe, and thereon allege, that it is common knowledge in the legal community that a retiring judge or justice, ensconced at JAMS, can earn double or triple their prior public servant pay.

197.   On information and belief, Plaintiffs allege that there is competition among judges and Justices to go to JAMS, and therefore a judge presented with the chance to rule in favor of JAMS may be tempted to better his or her chances for a JAMS job by ignoring facts and law and ruling against the party that sued JAMS, thereby obtaining favor and currency with JAMS that will enhance the obliging wrongdoer judge's opportunity for a JAMS job.

## O'LEARY USE OF DIV. 3 WEBSITE TO PROMOTE JAMS CEASES

198.   Justices O' LEARY, RYLAARSDAM AND BEDSWORTH, and all Division 3 Justices, have a direct and substantial pecuniary interest in JAMS.   This financial interest is shown by Justice O' LEARY having acted to use the official court website to promote JAMS.  Justice O'LEARY, as the Div. 3 Presiding Justice, was responsible for the court's website.

199.   In July 2016 Plaintiffs brought a motion to disqualify Div. 3 in the JAMS case.  In their motion they argued that the Div. 3 Justices' pecuniary interest in JAMS was evidenced by the knowing and intentional use of the court website to promote JAMS and its business; that the Justices were using the court website to advertise JAMS.   According to JAMS' opposition, Division 3 advertising for JAMS on the court website was of no significance.  (JAMS Opp. filed 07/22/16, *Chodosh v. J. Trotter and JAMS*, then G051731, transferred by Calif. Supreme Court Order on 9/25/16 to Div. 1, new case no. in Div. 1 is D070952).

200.   The JAMS promotional materials were prominently featured in the "biographies" of past Div. 3 Justices and JAMS' neutrals Justice Trotter, Hon. Edward Wallin (Ret.) and Hon. Sheila Sonenshine (Ret.).  The biographies' promotions read:

> In 1987, Trotter, 53, resigned his position at the Court of Appeal to take a senior position at JAMS (Judicial Arbitration and Mediation Service) a start-up organization, to provide alternative dispute resolutions services.  Trotter also has served as a special master in various mass tort, securities and pharmaceutical cases.

> In 1999, Wallin retired from the Court of Appeal to work for JAMS (Judicial

Arbitration and Mediation Services), where he specializes in complex cases involving construction, real estate, employment, insurance, and intellectual property disputes.

Sonenshine currently serves as a mediator and arbitrator of complex civil litigation matters at JAMS (Judicial Arbitration & Mediation Service).

(Appellants' Motion to Disqualify Division 3 Justices, filed 7/8/16; D070952)

201.   It is a fact that Div. 3 removed these promotional paragraphs in or about July 28, 2016 after Plaintiffs' filed their Motion to Disqualify in the JAMS case on July 7, 2016, which motion made request for removal of the JAMS promotional materials.

202.   The record shows that Justice O'LEARY, having utilized the court website for years to promote JAMS, upon challenge, removed the promotional language.

203.   Plaintiffs are informed and believe, and thereon allege, that Justice O'LEARY'S use of the court website to promote JAMS occurred because of her pecuniary interest in JAMS, and that the other Div. 3 Justices assented to and approved the court website JAMS advertising, believing that promotion of JAMS is in the financial and personal best interests of Div. 3 Justices and each of them.

**JUSTICES O' LEARY, RYLAARSDAM AND BEDSWORTH REFUSE TO RECUSE IN THE JAMS CASE; CALIFORNIA SUPREME COURT INTERVENES TO REMOVE THEM FROM THE JAMS CASE**

204.   Plaintiffs filed the *F. Chodosh v. Justice Trotter* case May 2014.  It was on appeal to Div. 3 from July 2014 to the present, first in Division 3, and later in Division 1 where it is pending.  (In Div. 3, G051731; in Div. 1, D070952)

205.   Under California law, a Justice of the Court of Appeal must self-recuse when necessary or appropriate to prevent or avoid appearance of impropriety and to prevent any facts that would cause a person to doubt the impartiality of the Justice.

206.   After the JAMS case was fully briefed in June 2016, Plaintiffs waited for the Justices to self-recuse.  They never did.

207.   Therefore, on July 8, 2016 Plaintiffs filed a motion in Div. 3 to disqualify the Division 3 Justices in the JAMS case on contentions that (1) the Justices were personally and collegially bound to Justice Trotter and (2) the Justices had a pecuniary interest in JAMS.

208.   Faced with facts of personal, professional and financial involvement and entanglement, Div. 3 Justices all refused to recuse.  Justice O'LEARY entered an order that Div. 3 Justices would self – recuse when and if they chose. (*F. Chodosh v. J. Trotter*, D070952; Order Ent. 8/25/2106)

209.   Following their refusal to recuse, the California Supreme Court took the JAMS case away from Div. 3 and ordered it transferred to Div. 1.  (Id., Docket entry)

210.   Division 3 Justices' failure to recuse, thereby necessitating California Supreme Court intervention to remove them from the JAMS case, is further demonstration that Div. 3 Justices cannot realistically be expected to rule fairly where the defendants are their revered former colleague Justice Trotter and JAMS which tempts and entices the Justices as an Orange County fountain of future employment.

211.   Div. 3 Justices are and must or at least would be attracted to act and rule in a

manner that benefits JAMS, the "world's largest ADR provider" in which they have a financial interest of non-contingent assured future employment and income.

## PBPA FIDUCIARY BREACH AND FRAUD BEFORE THE 2015 PARK SALE

212.   As alleged and demonstrated herein, at all times since 2007 PBPA and the Park have operated and functioned in an entirely illegal manner, leasing "bootleg" spaces, providing substandard dangerous utilities, and entering into all manner of illegal leases and contracts and agreements with its members, starting with issuing the statutorily defined non-profit membership security without the securities permit and ending with making illegal mortgage loans as an illegal lender.   (See grid, Exh. B)

213.   Palm Beach Park, despite its illegality, operated 1998 – 2012 with revenue and expense figures reported to the members monthly.   PBPA also provided annual reports, including statement of HOA Reserve Funds.   From 1998 through 2012 PBPA'S HOA reserves were at all times about $1,000,000 or more.

214.   When MANTELLI became Board President January 2013, PBPA ceased providing financial information to its members.

215.   HOA PBPA never accounted to its members for 2013 or 2014 as required by law and PBPA bylaws.

216.   Plaintiffs are informed and believe, and thereon allege, that PBPA, despite having supposedly sold the Park, still has not yet distributed to its members a final 2015 year-end financial statement that includes accounting for the under market $35 million sale proceeds PBPA received on the fiduciary fraudulent Park sale.

217.   The Palm Beach Park litigation and PBPA record is one of overwhelming fiduciary fraud and self-dealing and crime, committed against elders, all of which wrongdoing Judge Moss ignored, supported and in the end rewarded with six figure judgments in favor of fiduciary PBPA against its member and elder victims.

218.   Judge MOSS' upholding and supporting illegality for the benefit of a fiduciary against its beneficiaries was made plain and clear to Div. 3 and especially Justices O'LEARY, RYLAARSDAM and BEDSWORTH.  Aware and knowing of Judge MOSS' wrongful rulings, these defendant Justices upheld and affirmed Judge MOSS wrongdoing, all with the intent and purpose of harming Plaintiffs and their counsel because they had dared to defy and sue Justice Trotter and JAMS.

## THE FIDUCIARY FRAUDULENT SELF-DEALING SALE OF THE PARK

219.   The biggest Palm Beach Park fiduciary breach and crime was the taking of the entire park from the approximately 120 members at a below market price on a fiduciary self-dealing rigged sale.  The *Haugen* case was filed to stop the sale.

220.   As related herein, three (3) weeks after having been disqualified on *Haugen* and acknowledging the disqualification on the record, on Dec. 21-22, 2015, Judge Moss stepped in, just in time, as he put it, to "reassume jurisdiction" (Exh. G, pg. 189, line 25) to thwart a TRO intended to stop the wrongful park sale.

221.   The sale was plainly the product of fiduciary fraud and self-dealing.   PBPA, as the seller HOA, did not list the property for sale; there was no marketing.  No appraisal was commissioned.

222.   Using JEFFERIES 75% loan to value (Exh. N) and dividing the $35,797,500 loan principal by .75 indicates JEFFERIES valued the Park at $48,000,000.  On base analysis, the $35,000,000 "net" purchase price was at least $13,000,000 under market value. (Compare Exh. N,  JEFFERIES, loan to SAUNDERS offer, Exh. M)

223.   The HOA Board President did not disclose to the members that the buyer's principals and agents were the President's real estate industry friends and colleagues.

224.   Plaintiffs are informed and believe and thereon allege that the LLC and SAUNDERS bribed HOA directors MANTELLI, FIORI and SMITH, thereby obtaining a 3 vote approval from the five (5) member Board.  As detailed herein, the LLCS and SAUNDERS purchased homes from FIORI and SMITH at inflated prices. Plaintiffs are informed and believe, and allege, that MANTELLI was self-dealing from the start; she did not steer the Park to her friends SAUNDERS, et al. for nothing.

225.   Prior to the illicit Park sale to Saunders, PBPA had received the Hometown America better and higher offer to purchase the Park for more money. (Exh. I) The Board President and Directors did not notify the members of the better offer.

226.   At the time of the closing of the fraudulent sale, the fraudulent sale contract had expired; the sale closed months after the closing deadline.

### SAUNDERS, COLDREN, SALISBURY, JEFFERIES AND FIDELITY AID AND ABET BREACH OF FIDUCIARY DUTY

227.   Defendants SAUNDERS, COLDREN, SALISBURY, ANSHUTZ, the LLCS and FIDELITY knew that MANTELLI and FIORI and SMITH were breaching

their fiduciary duties to PBPA and its members by having PBPA sell the Park to the LLCS. They knew that MANTELLI had arranged the transaction as an inside, self-dealing maneuver to enrich herself and the buyers' principals who were her prior colleagues and good friends.   Defendants SAUNDERS, COLDREN, SALISBURY, ANSHUTZ, the LLCs and FIDELITY knew that the approximately $35,000,000 purchase price was below market.

228.   They knew that MANTELLI and the PBPA Board had received a higher offer for the purchase from capable and ready to close buyer Hometown America. (Exhibit I) They knew that MANTELLI, FIORI and SMITH, in violation of their fiduciary duty, had not disclosed the higher and better and "no broker" Hometown America offer to PBPA members.  (Exhibit I, pgs. 196 – 199)

229.   They knew that as of sometime in or about October, 2015, the LLC'S and SAUNDERS' offer to purchase, (Exhibit M) putting aside its illegality, had already expired as it required, under the wrongfully obtained members' approval, that close of the LLCs sale had to occur within sixty (60) days of escrow opening which, Plaintiffs are informed and believe, occurred in or about mid-July 2015.  Thus, the SAUNDERS sale had lapsed well before it closed on December 22, 2015.

230.   Prior to the unlawful and void purported "closing of escrow" of the SAUNDERS' Sale, on the day before, Dec. 21, 2015, Plaintiffs' counsel gave SAUNDERS, and by and through him the LLCs, COLDREN and SALISBURY and ANSHUTZ and JEFFERIES written notice of PBPA and MANTELLI and FIORI and

---

SMITH fiduciary breaches and that the SAUNDERS sale was and would be the product of fiduciary breach, fraud and self-dealing.

231.   Plaintiffs are informed and believe and thereon allege that they knew for many months that the SAUNDERS Sale was the product of fiduciary breach, fraud and self-dealing.  On Dec. 21, 2015 they received official notice of what they already knew. A true and correct copy of the notice is attached as Exhibit H (pgs. 192-194)

232.   Prior to the unlawful and void purported "closing of escrow" of the SAUNDERS' Sale, on the day before, Dec. 21, 2015, Plaintiffs' counsel gave FIDELITY, and through it JEFFERIES written notice of PBPA and MANTELLI and FIORI and SMITH fiduciary breaches and that the SAUNDERS sale was and would be the product of fiduciary breach, fraud and self-dealing.

233.   Plaintiffs are informed and believe and thereon allege that FIDELITY and JEFFERIES had already known for months or weeks that the SAUNDERS Sale was the product of fiduciary breach, fraud and self-dealing.  Therefore, on Dec. 21, 2015 they received further written notice (Exh. H) of what they already knew.

**<u>RESULTS REWARD JUDICIAL AND FIDUCIARY WRONGDOING</u>**

234.   Plaintiffs are informed and believe, and thereon allege, that Judge MOSS and Justices O'LEARY, RYLAARSDAM and BEDSWORTH agreed and conspired to deny Plaintiffs their rights and harm them by deliberate wrong court rulings having the color of law because they wanted revenge on Plaintiffs for their having dared to sue Justice Trotter, their friend and colleague, and JAMS, where they could get a

retirement job.   Plaintiffs are informed and believe that Judge MOSS, as the judicial officer on the front line to carry out the illicit agreement and conspiracy, may have obtained other benefit, particularly for his having jumped in from vacation on the morning of Dec. 22, 2016 to stop the TRO in *Haugen* by his "reassuming" jurisdiction in *Haugen*, thereby assuring closing of the fiduciary fraud and self-dealing SAUNDERS sale that afternoon, just four (4) hours later.

235.   Plaintiffs are informed and believe, and thereon allege, that Judge MOSS and Justices O'LEARY, RYLAARSDAM and BEDSWORTH agreement and conspiracy caused the fraudulent self-dealing SAUNDERS sale to close escrow.

236.   At the same time, Plaintiffs are informed and believe and thereon allege, the LLC's acted with the judicial officer defendants to deprive Plaintiffs of their constitutional rights under color of law.

237.   The non-judicial officer defendants, and each of them, breached fiduciary duties or aided and abetted breach of fiduciary duties, or both.   Their wrongdoing, combined with and made possible by the judicial officer defendants' wrongdoing, caused damage to Plaintiffs, PBPA and PBPA members.

238.   On the culmination of their purposeful wrongdoing, represented by the "closing" of escrow of the fraudulent Park sale on Dec. 22, 2015, Defendants, and each of them, had achieved the goal and objectives of their wrongdoer agreements and conspiracies.

239.   The judicial defendants had achieved denial of Plaintiffs' rights by wrongful use of actions under color of law, thereby punishing Plaintiffs and their counsel for having dared to sue Div. 3 Founding Presiding Justice Trotter and JAMS.

240.   Defendants MANTELLI, FIORI and SMITH attained their objectives of having the wrongful Park sale close thereby enriching them personally.

241.   Defendants the LLCs, SAUNDERS, COLDREN, SALISBURY and ANSHUTZ achieved their objective of closing purchase of the Park at a price many millions below its fair market value and in a manner that plans and provides SAUNDERS power to oust PBPA members.

Upon and with and under the foregoing facts and events, Plaintiffs allege the following causes of action:

## FIRST CAUSE OF ACTION

### (Plaintiffs Against Judge Moss, and Defendants Presiding Justice O'Leary, and Former Justice Rylaarsdam and Justice Bedsworth and the LLCs)

### VIOLATIONS OF 42 U.S.C. SEC. 1983 - DENIAL OF DUE PROCESS AND DEPRIVATION OF PROPERTY IN VIOLATION OF THE U. S. CONSTITUTION 5th and 14TH AMENDMENTS

242.   Plaintiffs hereby incorporate by this reference Paragraphs 1 through 241 as though fully set forth at length herein.

243.   Plaintiffs are entitled to due process of law under the United States Constitution, its Fifth (5th) and Fourteenth (14th) amendments.   At the core of due process is the right to an impartial adjudicator and tribunal.

244.   As alleged herein, the judicial officer defendants, Judge MOSS and Justices O'LEARY, RYLAARSDAM and BEDSWORTH  entered into a prior agreement, and a conspiracy, to deprive Plaintiffs of their due process rights, by deliberate disregard of law, imposition of illegal contracts, and misuse of the judicial system, including allowing and supporting Judge MOSS in his wrongful "re-assumption" of jurisdiction in the *Haugen* case – just in time to unlawfully suppress Plaintiff Haugen's TRO application intended to stop the fiduciary fraudulent sale for the benefit of himself and all Plaintiffs, which sale closed to the detriment of Plaintiffs and all PBPA members.

245.   Plaintiffs are informed and believe, and thereon allege, that Judge MOSS and Justices O'LEARY, RYLAARSDAM and BEDWORTH entered into their prior agreement and conspiracy to deprive Plaintiffs of their United States constitutional rights to due process and an impartial tribunal and adjudicator in or about mid-2014, after Plaintiffs had refused to accede to Justice Trotter's forced settlement and perhaps before but more likely after Plaintiffs sued Justice Trotter and JAMS in the action *F. Chodosh, et al. v. John K. Trotter and JAMS, Inc*. (filed May 14, 2014) and sought to disqualify Judge MOSS, as to which Justice RYLAARSDAM threatened Plaintiffs' counsel with sanctions for a "frivolous" petition. (Exh. L)

246.   Plaintiffs are informed and believe, and thereon allege, that aware of Plaintiffs having sued Justice Trotter and JAMS, Judge MOSS and Justices O'LEARY, RYLAARSDAM and BEDWORTH agreed and conspired to ignore and defy the law and in all respects act and rule against Plaintiffs, even though Plaintiffs

were in the right and the law was clearly on their side, all for the purpose of hurting and harming Plaintiffs in retaliation and retribution for their having sued Justice Trotter and JAMS and on the motivation of obtaining a post-retirement JAMS job.

247.   The illegality and crimes Judge MOSS' ignored and upheld, as alleged and described herein, are listed and summarized on the grid attached as Exhibit B hereto.

248.   Evidence of the crime that Judge MOSS ignored and proof of his wrongful enforcement of illegal leases, contracts and transactions is overwhelming.  The evidence was presented to Judge MOSS and was also communicated to Justices O'LEARY, RYLAARSDAM and BEDWORTH.

249.   As alleged herein and above, Judge MOSS and Justices O'LEARY, RYLAARSDAM and BEDWORTH, by prior agreement and conspiracy, wrongfully upheld and affirmed Judge MOSS' wrongful rulings and decisions by which the court aided and abetted illegal leases and contracts, unlawfully enforcing them against Plaintiffs.

250.   With regard to all of the crime reaffirmed and upheld by Justices O'LEARY, RYLAARSDAM and BEDWORTH, most start and significant is their ignoring and not following the directly on point and dispositive decision they made, with Justice RYLAARSDAM penning the opinion, in *Espinoza v. Calva* (2008) 169 Cal.App.4th 1393.   In that case they held that lease of space that lacks a certificate of occupancy or permit is a lease for "illegal" premises, and therefore the lease is unenforceable.

251.   Justices O'LEARY, RYLAARSDAM and BEDSWORTH knew that a court cannot uphold and enforce a lease for illegal premises.   But that is what they did by upholding and affirming Judge MOSS' wrongful rulings and decisions.

252.   By conspiracy and pre-agreement made in or about May 2014, after Plaintiffs had refused to accede to Justice Trotter's commandment that they accept an amorphous "I owe you" settlement from their insolvent HOA, and after Plaintiffs, or some of them, sued Justice Trotter and JAMS in May 2014,  moving forward to the present, at all times Judge MOSS and JUSTICES O'LEARY, RYLAARSDAM and BEDSWORTH have acted to carry out their agreement and conspiracy to deprive Plaintiffs of their rights in order to harm them by supporting PBPA to take their homes.

253.   On and for this first cause of action, Plaintiffs seek and pray for declaratory relief against the judicial officer Defendants, as requested in their Sixth Cause of Action for Declaratory Relief and their prayer.

254.   On this cause of action, Plaintiffs allege that the LLCs, through their counsel or agent or manager, participated with Judge MOSS in the agreement and conspiracy to harm Plaintiffs by denying them their due process rights, and that they had *ex-parte* contact with Judge MOSS in order to carry out the agreement and conspiracy.

255.   Against the LLC defendants on this cause of action, Plaintiffs seek compensatory and punitive and exemplary damages and to recover attorney's fees and

costs under 42 U.S.C. sec. 1988 et al.  On this cause of action Plaintiffs seek and pray

for the relief set forth herein and in their prayer below.

### SECOND CAUSE OF ACTION
**(Plaintiffs Against Judge Moss, Presiding Judge Margines and
Defendants Presiding Justice O'Leary,
Former Justice Rylaarsdam and Justice Bedsworth)**

### EXTREME FACTS THAT CAUSE INTOLERABLE APPEARANCE OF IMPROPRIETY THEREBY CAUSING DENIAL OF DUE PROCESS AND DEPRIVATION OF PROPERTY IN VIOLATION OF THE U. S. CONSTITUTION 5th and 14TH AMENDMENTS, et al.

256.   Plaintiffs hereby incorporate by this reference Paragraphs 1 through 255 as

though fully set forth at length herein.

257.   *In Caperton v. A. T. Massey Coal Co*. 556 U.S. 868 (2009) the Supreme

Court held that objective standards require recusal when "the probability of actual bias

on the part of the judge or decisionmaker is too high to be constitutionally tolerable."

Where the standards are met, the challenged judges are unable to render due process.

258.   In *Caperton v. Massey* the court noted: "It is axiomatic that "[a] fair trial in a

fair tribunal is a basic requirement of due process."   *Caperton v. Massey* facts caused

the Court to hold that: "On these extreme facts the probability of actual bias rises to an

unconstitutional level," and that the extreme facts that create an unconstitutional

probability of bias "'cannot be defined with precision.'" (*Aetna Life Ins. Co. v. Lavoie*,

(1986) 475 U. S. 813, 822; quoting *In re Murchison*, (1955) 349 U. S. 133, 136).

259.   In the Palm Beach Park cases, even were it not true that Judge MOSS and

Justices O'LEARY, RYLAARSDAM and BEDWORTH had actually, as alleged,

entered into a prior agreement and engaged in conspiracy to deny Plaintiffs their due process and other constitutional rights, i.e. that actual bias is proved, the undeniable facts that exist cross the threshold established by *Caperton* as "extreme" facts that defeat and deny due process without and need or requirement to prove actual judge bias.    The facts in this case are extreme within the meaning of *Caperton*.

260.    With their assured opportunity to secure the sinecure of a JAMS job, Div. 3 Justices have clear personal and pecuniary motive to rule against Plaintiffs, which interest runs afoul of the holdings and principals of *Tumey v. Ohio* (1927) 273 U.S. 510, 523, which held it is a violation of due process to: "[S]ubject [a man's] liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case."

261.    Judge MOSS "re-assumption" of jurisdiction in *Haugen*, where he had been disqualified is an extreme fact.  That the give-away sale of the Park occurred four (4) hours later is another extreme fact, not a coincidence.  That Judge MARGINES ignored the wrongdoing is an extreme fact.

262.    This case has many extreme facts.  The facts give rise to a constitutionally intolerable level of appearance of impropriety.   Whether or not it is actually proven that Justices O'LEARY, RYLAARSDAM and BEDSWORTH and Judge MOSS did, as alleged herein, actually enter into an agreement and conspiracy to deny Plaintiffs their constitutional rights, the overwhelming evidence and numerous facts demonstrate that Plaintiffs were denied their due process right to an impartial tribunal.

263.    Plaintiffs have been harmed by the denial of their due process rights.

264.    Therefore, as to all the judicial officer defendants, Plaintiffs seek and request the declaratory relief for this cause of action described below in the Sixth Cause of Action and in the prayer that follows it, stating and to the effect that at all relevant times, going back to January 2014, Judge MOSS and the Defendant Justices did not and could not afford and provide to Plaintiffs the impartial tribunal and decision makers that is the core of due process.

## THIRD CAUSE OF ACTION
### (Plaintiffs against Judge Moss, Justices O'Leary, Rylaarsdam and Bedsworth and PBPA)

### BREACH OF TRUTH IN LENDING 15 U.S.C. §1601 et seq.

265.    Plaintiffs hereby incorporate by this reference the above Paragraphs 1 through 264 as though fully set forth at length herein.

266.    Plaintiffs states this cause of action for breach of the truth in lending act ("TILA") 15 U.S.C. sec. 1600 et seq. against PBPA, Judge MOSS and Defendant Justices O' LEARY, RYLAARSDAM and BEDSWORTH.

267.    PBPA made mortgage loans of $200,000 to Plaintiffs.  The loans were secured by a mortgage on the Plaintiffs' homes.

268.    Judge MOSS correctly ruled that the loans were mortgage loans and violated TILA.  (Phase III trial Statement of Decision in *Chodosh*, 6/30/15; pgs. 12-13)

However, he did not order immediate restitution of the funds Plaintiffs had paid on the

TILA violating PBPA loans, instead deferring such payment in violation of TILA.

269.   After ruling correctly at Phase III that PBPA had made mortgage loans that

TILA covered, Judge MOSS did not about face before the Phase IV trial.  In October

2015 PBPA brought a motion to expunge Plaintiffs "Notice of Action" or "*Lis*

*Pendens*" recorded against the Park.   Judge MOSS granted the expungment motion,

again ignoring rampant illegality, and after deciding that Plaintiffs had no real property

interest at all.  However, at Phase III, Judge MOSS had ruled that the PBPA loans were

mortgage loans.   Judge MOSS had to have ruled that there were mortgage loans, as

only mortgage loans would be covered by TILA, which he ruled applied.  (Id. Phase III

SOD)  According to Judge MOSS, while the Plaintiffs did mortgage their homes to

PBPA in violation of TILA, as it turned out the Plaintiffs had nothing to mortgage, no

real property right, such that PBPA could expunge their Lis Pendens for lack of real

property claim.

270.   Plaintiffs took a writ in *Chodosh*, to overturn Judge MOSS wrong ruling

granting expungement motion on the declaration Plaintiffs had no real property claims.

The Petition and pleadings laid out how Judge MOSS had ruled Plaintiffs had

mortgaged their homes which made PBPA violate TILA, but that inconsistent with his

prior ruling he then ruled they had no real property right to support a *lis pendens*.   The

Petition pointed out Plaintiffs had leases, and homes at the Park, and that case law was

ample and behind them in their right to a *lis pendens* as homeowners with leases.

271.   Plaintiffs' Writ, filed Dec. 22, 2015, also reviewed PBPA rampant illegality. (*Chodosh v. Sup. Ct*., G052957, filed 12/22/15).   The next day, Dec. 23, 2015, Presiding Justice O'LEARY authorized PBPA to respond informally, which it did, stating that illegality did not matter.  On Jan. 14, 2016, Div. 3 denied the writ.

272.   Causing direct and immediate financial harm to Plaintiffs, Judge MOSS, having correctly ruled PBPA had violated TILA, did not force PBPA as lender to thereupon tender back to Plaintiffs the borrowers all money they had paid to PBPA on the TILA violating loan.  Then recent and dispositive Supreme Court authority, *Jesinowski v. Countrywide Home Loans, Inc*. (Jan. 13, 2015) 574 U.S. ___, 135 S. Ct. 790, dictated that Judge MOSS had no discretion to not cause PBPA to immediately refund to Plaintiffs amounts they paid on the PBPA loans that violated TILA, which mandates immediate restitution to the borrowers [Regulation "Z", CFR 226.115 implementing the statute, 15 U.S.C. §1635(b)].   Amounts due Plaintiffs at that time totaled about $125,000.  Judge MOSS did not order PBPA to refund the money as TILA mandated.  Instead, he postponed the matter until final trial where he would enter, against Plaintiffs, six figure judgments on illegal contracts, all the while failing and refusing to enforce Plaintiffs' rights under federal law TILA to an immediate refund of amounts paid on PBPA's TILA violating loans.

273.   Plaintiffs are informed and believe, and thereon allege, that Judge Moss failed to enforce TILA as part of the agreement and conspiracy with the Defendant Justices, JAMS and PBPA that Plaintiffs must be made to lose the case.

274.   PBPA made mortgage loans as shown by the loan documents, Secured Promissory Note, Loan and Security Agreements, et al.  The loan was secured by the borrower's leasehold for the home.  PBPA admits it made mortgage loans to members.

275.   Judge MOSS and Justices O'LEARY, RYLAARSDAM and BEDSWORTH denied Plaintiffs their rights to enforcement of federal law by denying to enforce TILA and by ignoring on point dispositive federal authority.

276.   Plaintiffs are informed and believe, and thereon allege, that Defendants Judge MOSS and the Justices O'LEARY, RYLAARSDAM and BEDSWORTH denied Plaintiffs their rights to reimbursement under TILA in order to inflict financial harm on them as part of the agreement and conspiracy to make Plaintiffs lose by ignoring and failing to follow the law, this time the trounced law being TILA.

277.   Judge MOSS violated TILA by finding TILA violation but not enforcing and later ignoring it.   He and the Justices violated TILA for failure to apply the law on the admitted and obvious facts.

278.   In violating TILA by failing to enforce it as judicial officers. Judge MOSS and the Justices denied Plaintiffs due process and deprived them of their property, i.e. money the paid on the TILA violating PBPA loans.

279.   Plaintiffs seek a declaration that PBPA, for having violated TILA, must comply with TILA, notwithstanding any action in the state courts.

## FOURTH CAUSE OF ACTION
### (Plaintiffs against PBPA and Mantelli, Fiore and Smith)

### BREACH OF DUTY; CORP. CODE §7231

280.    Plaintiffs hereby incorporate by this reference Paragraphs 1 through 279 above as though fully set forth at length herein.  Plaintiffs state the cause of action for Breach of fiduciary duty against PBPA and its director and President MANTELLI, director and treasurer FIORI and director SMITH.

281.    As alleged herein, at all relevant times PBPA, a non-profit mutual benefit corporation and homeowners association with fiduciary duties to its members, including Plaintiffs, has violated and breached those duties by entering into and engaging in wide scale illegality, including the leasing of not permitted spaces, bootleg of utilities, issuing memberships without security permit, making mortgage loans that violated TILA and for which PBPA had no lender's license, and other illegality, all as herein alleged and described.  (See Exhibit B, grid showing illegality).

282.    As also alleged and described herein, at all relevant times PBPA has been under the domination and control of defendants MANTELLI, FIORI and SMITH, directors and officers of PBPA at relevant times as alleged herein.  As officers and directors of PBPA, defendants MANTELLI, FIORI and SMITH owed fiduciary duties to PBPA and to its members, including Plaintiffs.   Further, they owed to PBPA the duty of responsible corporate governance under California Corporations Code sec. 7231 and other law.

283.     As alleged and described herein, MANTELLI, FIORI and SMITH did themselves and knowingly caused PBPA to breach fiduciary duties to PBPA members, including Plaintiffs.   In carrying out a sale of the Park, assuming PBPA members had approved a Park sale, MANTELLI, FIORI and SMITH knew that PBPA, as a fiduciary HOA selling its land, the HOA had to market the land for sale in order that competition would yield the highest price.  They also knew that the HOA had to obtain a current appraisal to justify the sale.   Instead, for their own benefit, they caused PBPA to do no marketing of the property, and they did not obtain for it a current appraisal.   When members inquired, they referred to a two (2) year old appraisal (Jan. 2014) as justification for the property sale two (2) years later, with closing on December 22, 2015.

284.     These defendants caused and did themselves engage in illegal transactions between PBPA and its members, including Plaintiffs, seeking to enforce such illegal agreements and transactions for their own personal benefit.

285.     Plaintiffs are informed and believe, and thereon allege, that MANTELLI, FIORI and SMITH, and each of them, intentionally and purposefully suppressed and did not disclose to PBPA members the higher purchase offer from Hometown America, which better offer would yield about $20,000 more to each of the approximately 120 PBPA members.  (Exh. I)

286.     Plaintiffs are informed and believe, and thereon allege, that MANTELLI and FIORI and SMITH knew that by going through with the SAUNDERS sale, each

of them would personally benefit by receipt of illicit and hidden compensation from the LLCs and SAUNDERS.

287.    Plaintiffs are informed and believe and thereon allege, that in exchange for promoting and causing PBPA to sell the Park in the wrongful and below market SAUNDERS sale, that SAUNDERS would pay and deliver on to MANTELLI substantial funds as a broker's fee or kickback.

288.    Plaintiffs are informed and believe and thereon allege, that in exchange for promoting and causing PBPA to sell the Park in the wrongful and below market SAUNDERS sale, that SAUNDERS promised FIORI that SAUNDERS would buy from FIORI the home he owned at 102 Bay Drive in Palm Beach Park, which home FIORI had been trying to sell for many months.  Plaintiffs are informed and believe, and thereon allege, that SAUNDERS, as an inducement to FIORI, agreed to buy the home in exchange for FIORI's vote on the PBPA Board to go forward with the SAUNDERS sale and to ignore the better Hometown America offer.  (Exh. I)

289.    Plaintiffs are informed and believe, and thereon allege, that after the closing of the SAUNDERS sale, that SAUNDERS purchased from FIORI his home at 102 Bay Drive, and that SAUNDERS paid to FIORI an inflated and substantial purchase price that FIORI had been unable to obtain in the market for many months.

290.    Plaintiffs are informed and believe, and thereon allege, that at the time SAUNDERS purchased from FIORI his home at a price of hundreds of thousands of dollars, that other PBPA members, trying to sell their homes could not do so at any

price close to what SAUNDERS paid FIORI or any worthwhile price at all.   Instead, some of these PBPA members decided to sell their homes in the Park to SAUNDERS at greatly reduced prices compared to homes sale prices in the Park 2010 – 2013.

291.     Thus, while PBPA members' homes lost tremendous value as a result of and following the SAUNDERS sale, this did not affect FIORI, as he had been suborned by SAUNDERS financial incentive to approve the SAUNDERS sale and conceal from PBPA members the better Hometown America purchase offer.  FIORI concealed it in exchange for SAUNDERS buying FIORI's home at the six figure price FIORI had sought during the many months at which price the home did not sell.

292.     Similarly, Plaintiffs are informed and believe and thereon allege that Director SMITH had been trying to sell his home in the Park (109 Bay Dr.) for many months in the approximate time frame 2012 – 2015, but without success.  Plaintiffs are informed and believe, and thereon allege, that SMITH at such time was selling at a price that was several hundred thousand dollars.   Plaintiffs are informed and believe, and thereon allege, that SAUNDERS bribed SMITH, promising and agreeing that in exchange for SMITH's support of the SAUNDERS sale, and his engaging in concealment of the better Hometown America offer from the PBPA members, that SAUNDERS would, after closing of the Park sale, purchase from SMITH his home at the six figure price which SMITH had been unable to obtain after many months of marketing the home.

293.     Plaintiffs are informed and believe, and thereon allege, that at all times MANTELLI, FIORI and SMITH engaged in wrongful self-dealing in breach of fiduciary and other duties, that they placed their personal interests above the interests of PBPA and its members, all for their personal gain.

294.     Because of their breaches and violations of fiduciary duties and their self-dealing, defendants MANTELLI, FIORI and SMITH, and each of them, are jointly and severally culpable and responsible to Plaintiffs for the loss and damage Plaintiffs have sustained and suffered because of their wrongdoing.

295.     Plaintiffs are informed and believe, and thereon allege, that the acts and omissions and wrongdoing of MANTELLI, FIOIR and SMITH was wanton, reprehensible and despicable, such that Plaintiffs are entitled to an award of exemplary and punitive damages against them.   As to PBPA, Plaintiffs allege it is responsible for their actual damages.

296.     Plaintiffs are informed and believe, and thereon allege, that defendants in this cause of action, by their wrongdoing, violated various statutes, including real estate broker statutes that govern MANTELLI and Corporations Code statutes that govern defendants PBPA, MANTELLI, FIORI and SMITH.

297.     Because the outrageous and repulsive wrongdoing was intended by these defendants to take Plaintiffs' homes, and since Plaintiffs are elders, they are also entitled to treble (3x) damages against these Defendants under California Civil Code sec. 3345.

298.     Therefore, on this cause of action, Plaintiffs seek compensatory, trebled and punitive damages, fees and costs, and attorneys' fees against these defendants under the PBPA bylaws and leases, albeit the leases are illegal contracts, all as prayed for herein and below.

**FIFTH CAUSE OF ACTION**
**(Plaintiffs against the LLCs, Saunders, Anschutz,**
**Coldren, Salisbury, Jefferies and Fidelity)**

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

299.  Plaintiffs hereby incorporate by this reference the above Paragraphs 1 through 298 as though fully set forth at length herein.

300.  Plaintiffs state this cause of action for aiding and abetting of breach of fiduciary duty against Defendants the LLCS, SAUNDERS, COLDREN, SALISBURY, ANSHUTZ, FIDELITY and JEFFERIES.

301.  As alleged and described in this complaint, these Defendants, knowing that PBPA and its directors were engaging in breaches and violations of fiduciary duty, aided and abetted the fiduciary transgressions with the intent and purpose that such fiduciary transgressions would benefit these Defendants financially, principally by causing the close of the below market SAUNDERS SALE, and by funneling of PBPA money to SALISBURY and Plaintiffs are informed and believe, to ANSHUTZ and MANTELLI and others.

302.  Plaintiffs are informed and believe, and thereon allege, that each of these Defendants knew of the Hometown America offer and that it was a better and higher

price offer than that from SAUNDERS, and that they knew that PBPA, under the control of MANTELLI. FIORI and SMITH and others, had not provided the better offer to the PBPA membership.

303.  While Plaintiffs are informed and believe, and thereon allege, that these defendants at all relevant times prior to the "close of escrow" on Dec. 22, 2015, had actual and personal knowledge of PBPA and MANTELLI et al. fiduciary breach and wrongdoing, they also took steps to suppress and conceal from the PBPA membership the Hometown America offer.

304.  SAUNDERS, and through him the LLCS and COLDREN and JEFFERIES, were placed on notice on Dec. 21, 2015 that the SAUNDERS sale was the product of fiduciary breach, fraud, wrongdoing and self-dealing.   A true and correct copy of the notice sent to SAUNDERS et al. c/o his counsel, stating that the sale was the product of fiduciary wrongdoing, is attached hereto as Exhibit H.

305.  FIDELITY, and through it JEFFERIES, were placed on notice on Dec. 21, 2015 that the SAUNDERS sale was the product of fiduciary breach, fraud, wrongdoing and self-dealing.  A true and correct copy of the notice sent to FIDELITY that states the sale was the product of fiduciary wrongdoing, is attached hereto as Exhibit H.

306.  Plaintiffs are informed and believe and thereon allege, that JEFFERIES was also made aware that the SAUNDERS sale was at a sales price dramatically under market because the loan JEFFERIES made to the LLCs for $35,797,500 (Exh. N, pg.

219) was almost $800,000 more than the $35,000,000 "net" purchase price for

SAUNDERS.  (Exh. M, pgs. 211-213) (The SAUNDERS purchase price was

$37,000,000, less a $2,000,000 "credit" for litigation, along with other price reducers.

307.  JEFFERIES knew that it was highly unusual for the buyer of real estate to

take out a loan on the purchased property that not only covered the full purchase price

of the property, but yielded to the buyer, at close of escrow almost $800,000 in cash

that they buyer could take out of escrow!   It is a rare real estate transaction where the

buyer can finance on the purchased property's value more than the purchase price.

This was a red flag to JEFFERIES which caused it to know the purchase price was

below market and that the sale was not at a fair market price.

308.  JEFFERIES' real estate loans of the type it made to SAUNDERS are based

on a "loan to value" of seventy-five percent (75%), i.e. the loan amount cannot exceed

75% of the property's value.  (Exh. N, pg. 221) Thus, JEFFERIES knew, by applying

its required loan to value ratio, that it must believe and had to advise its sovereign

fund investors and others that the Park was worth about $48,000,000, i.e. $35,797,500

÷ .75 = $47,730,000.   By its own underwriting standards, which JEFFERIES surely

met in the transaction, JEFFERIES knew that the property was worth at least

$13,000,000 more than the purchase price SAUNDERS and the LLCs paid.

309.  As the title insurance company on the sale, defendant FIDELITY, apprised of

the loan amount and typical lender loan to value ratios, apart from the written notice it

received, knew that the SAUNDERS sale was the product of fiduciary wrongdoing, fraud, breach and self-dealing.

310.  Defendant SALISBURY went further than other Defendants to aid and abet PBPA fiduciary wrongdoing.   SALISBURY was legal counsel to COLDREN, a.k.a. the same or on the same side, the "buyer" side as SAUNDERS and the LLCs. SALISBURY'S prior representation of COLDREN is evidenced by her appearance as his counsel on the appellate decision caption page *Robert S. Coldren v. Hart, King & Coldren, Inc*. 239 Cal. App. 4th 237 (July 13, 2015)(See case caption, Exh. J, pg. 201)

311.    Around that time or soon after, if not before Ms. Salisbury was also counsel to PBPA, as shown by COLDREN affiliate Pacific Current Partners, marked "For Immediate Release, entitled "Pacific Current Partners Acquires Oceanfront Palm Beach Mobile Home Park", 01/29/2016, SALISBURY represented the "seller team", with the seller being PBPA, which team was led by president Diana Mantelli.  (See Exhibit J, pg. 203)

312.  Plaintiffs are informed and believe, and thereon allege, that SALISBURY, an attorney for the buyer, purported to represent the seller PBPA in order (a) to ensure that PBPA would sell the Park to the COLDREN side and not to Hometown America on its higher and better offer and (b) receive from PBPA substantial fees, totaling about $75,000 made by PBPA to SALISBURY in three (3) installments in 2015.

313.  Plaintiffs are informed and believe, and thereon allege, that SALISBURY could not legally or lawfully represent both sides in the Park sale transaction, and that

she knew she could not effectuate such double and opposing representation of both buyer and seller in a real estate transaction.  Plaintiffs are informed and believe, and thereon allege, that SALISBURY'S true intent, purpose and representation was to work for the buyer, and to steer and direct PBPA to complete the SAUNDERS sale, and to go against the interests of seller PBPA and its members.   Plaintiffs are informed and believe, and thereon allege that SALISBURY acted to aid and abet PBPA breach of fiduciary duty in carrying out the wrongful SAUNDERS sale, which by its terms had expired and was inferior to the Hometown America offer which SALSIBURY knew and had acted to ensure was concealed from PBPA members.

314.  Plaintiffs are informed and believe, and thereon allege, that defendant COLDREN aided and abetted breach of fiduciary duties owed to PBPA by undertaking, among other things, action and communications to thwart and derail the Hometown America better and higher offer made to PBPA for purchase of the Park, and that he did so with the express purpose of aiding MANTELLI and others in their fiduciary breaching and self-dealing promotion of the SAUNDERS sale, including their concealment of the higher and better Hometown America offer from PBPA members.

315.  Plaintiffs are informed and believe, and thereon allege, that each of Defendants SAUNDERS, COLDREN, the LLC's, SALISBURY and ANSHUTZ knew that the LLCS, with some or all of them as the LLC's accomplices or agents, had suborned and induced PBPA Directors and officers and defendants herein

MANTELLI, FIORI and SMITH so that they would go forward with the SAUNDERS sale, even though it was inferior to the Hometown America purchase offer which they knew MANTELLI, FIORI and SMITH had concealed from the PBPA members. Plaintiffs are informed and believe that these defendants bribed MANTELLI by promise and payment of a brokerage commission or kickback, and bribed FIORI and SMITH by promising to buy their homes in the Park at greatly inflated six figure purchase prices that they had not been able to obtain in the open market for many months.

316.  Defendants SAUNDERS, COLDREN, SALISBURY, ANSHUTZ and the LLCs and JEFFERIES and FIDELITY knew that the SAUNDERS sale and acquisition of the Park by the LLCs was and would be the product of fiduciary breach, fraud, wrongdoing and self-dealing.  With such knowledge, they went forward.

317.  These defendants, by their intentional aiding and abetting of PBPA breach of fiduciary duty, damaged and harmed Plaintiffs and did so with malice and purpose. They inducted and aided and abetted fiduciaries to Plaintiffs to shirk their fiduciary duties to Plaintiffs and to engage in fiduciary wrongdoing, all for the financial and other benefit of said defendants and to the detriment of Plaintiffs and the PBPA members all of whom were beneficiaries of PBPA's and its Directors' fiduciary trust.

318.  Because of and for the harm and loss and damage these defendants have caused Plaintiffs, they are liable to Plaintiffs for compensatory damages.

319.  Moreover, because their deliberate aiding and abetting of breach of fiduciary duty and wrongdoing was despicable and reprehensible, and especially since it was carried out against elder citizens, Plaintiffs are entitled to exemplary and punitive damages.

320.  Plaintiffs are informed and believe, and thereon allege, that defendants in this cause of action, by their wrongdoing, violated various statutes, including real estate lending statutes that govern JEFFERIES and Insurance Code statutes that govern FIDELITY.

321.  Because the outrageous and repulsive wrongdoing was intended by these defendants to take Plaintiffs' homes, and since Plaintiffs are elders, they are also entitled to treble (3x) damages against these Defendants under California Civil Code sec. 3345.

322.  Therefore, Plaintiffs allege and claim and pray for damages, both compensatory and punitive and exemplary, as stated herein and in the prayer below.

### SIXTH CAUSE OF ACTION
### (By Plaintiffs against All Defendants)

### DECLARATORY RELIEF
### [Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.]

323.      Plaintiffs hereby incorporate by this reference Paragraphs 1 through 322 as though fully set forth at length herein.  Plaintiffs state their cause of action for Declaratory Relief.

324.     Actual controversies have arisen and now exist between Plaintiffs and defendants concerning the parties and each party's respective rights and duties and the validity, or lack thereof, of their actions, rulings, judgments, documents and recorded instruments based on, in the first instance, Defendants wrongful and deliberate deprivation of Plaintiffs' United States constitutional due process rights as alleged herein.

325.     Plaintiffs contend that the judicial defendants, by their agreement, conspiracy and actions, did deliberately deny Plaintiffs' their due process and other rights under the United States Constitution, Amendments V and XIV, and in particular, at all times since early 2014, have denied Plaintiffs an impartial tribunal.

326.     Plaintiffs are informed and believe, and allege thereon, that the Defendants, and each of them, contend and will assert that there was no agreement or conspiracy to deny Plaintiffs' their due process and constitutional rights.

327.     There exists between Plaintiffs and Defendants a controversy for which declaratory relief is necessary and appropriate.

328.     Plaintiffs contend that even were there no agreement or conspiracy made by the judicial officer defendants as alleged herein, that the facts as to and under which the judicial officer defendants have processed, heard and handled Plaintiffs' cases and controversies, are so extreme that there was appearance of probability of actual bias on the part of the decisionmakers that was too high to be constitutionally permissible; thereby denying Plaintiffs due process. (See, *Caperton*, <u>supra</u>)

329.     Plaintiffs are informed and believe, and thereon allege, that Defendants will contend that there was no failure or lack of due process under the *Caperton* standards; that the facts were not so extreme such that there was no unconstitutional denial of due process by appearance of impropriety, as opposed to and without proof of actual bias, and that there were no extreme facts such that the probability of there being a partial or prejudiced tribunal was not intolerably high.

330.     A controversy exists between Defendants and Plaintiffs on whether there are extreme facts such that Plaintiffs were denied due process.  A judicial determination and declaration is necessary and appropriate.

331.     Plaintiffs allege and contend that the judicial officer defendants, by and between themselves though agreement and conspiracy, and with or without the participation of non-judicial officer defendants, acted at all times to abuse their official positions and under color of law, deny Plaintiffs their due process rights under the United States Constitution and Amendments V and XIV thereto.

332.     Plaintiffs are informed and believe, and thereon allege, that the judicial officer Defendants will contend that they, and none of them, acted deliberately or in conspiracy to deny Plaintiffs their due process rights.

333.     A judicial determination of this controversy is necessary and appropriate.

334.     Plaintiffs are informed and believe, and thereon allege, that the Defendants, and each of them, singularly and in combination, by denial of Plaintiffs'

due process rights, did not have any power or jurisdiction to seize or take Plaintiffs' homes and property.

335.     Plaintiffs are informed and believe, and thereon allege, that the Defendants, one and all, contend that Plaintiffs were not denied due process such that non-judicial defendants did have the power to obtain right, title and interest and the ability to seize and take Plaintiffs' homes and property.

336.     There exists between Defendants and Plaintiffs a controversy as to the right and power, or lack thereof, on the part of defendant PBPA to take and seize Plaintiffs' homes and property.

337.     Plaintiffs contend that because of their having been deprived due process rights under the United States constitution, that it was impossible for Defendants the LLCs to acquire any superior title to the Park as to and over Plaintiffs and each of them; that because of due process denial, there were and could not be any power that allowed such taking of property without due process.

338.     Plaintiffs are informed and believe that Defendants the LLCS contend that Judge MOSS and Justices O'LEARY, RYLAARSDAM and BEDSWORTH did not deny Plaintiffs their due process rights, such that the LLCs have right and title to the Park superior to that of Plaintiffs.

339.     An actual controversy exists between Plaintiffs and said defendants, as to which judicial decision is necessary.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, on each cause of action, as follows:

### FIRST CAUSE OF ACTION
### FOR VIOLATIONS of 5th and 14TH AMENDMENTS;
### INTENTIONAL DUE PROCESS DENIAL

A.   For determination that defendants Judge Moss and Justices O'Leary, Rylaarsdam and Bedsworth at all relevant times since early 2014 acted under a prior agreement and conspiracy to deprive Plaintiffs of their due process rights under the United States Constitution;

B.   That Judge Moss and the defendant Justices, by agreement and conspiracy, did purposefully deprive Plaintiffs of their constitutional rights.

C.   For determination that the LLCs had an agreement and engaged in a conspiracy with Judge Moss and the Justices to deprive Plaintiffs of their due process rights with Judge Moss acting under color of state law;

D.   For compensatory and exemplary damages against the LLCs and any non-juridical officer defendant herein that agreed and conspired and acted with the judicial officer defendants to deprive Plaintiffs of their United States constitutional due process and other rights as alleged herein;

E.      For attorneys' fees under 42 U.S.C. sec. 1988;

F.      For costs of suit; and

G.      For such other relief as the court deems just and proper.

## SECOND CAUSE OF ACTION
## FOR VIOLATIONS OF 14TH AMENDMENT; DUE PROCESS DENIAL

A.      For determination that defendants Judge Moss, Presiding Judge

Margines, and Justices O'Leary, Rylaarsdam and Bedsworth, at all

relevant times acted to create and display extreme facts such that there

was and has been a constitutionally intolerable appearance of

impropriety because of such extreme facts that denies due process;

B.      That by such extreme facts making for gross appearance of

impropriety. the Judges and Justices, since 2014, did deprive Plaintiffs

of their constitutional rights to due process under the law of *Caperton*

*v. Massey Coal*, supra.

C.      For such other relief as the court deems just and proper.

## THIRD CAUSE OF ACTION
## FOR VIOLATIONS OF TRUTH IN LENDING, 15 U.S.C. §1600 et seq.

A.      For determination and affirmation that PBPA violated TILA by failing

and refusing to refund to Plaintiffs the amounts they paid on the TILA

violating loans made by PBPA, which paid amounts, proof will show

totaled approximately $125,000, which amounts are not in dispute;

B.   For interest on such amounts as provided by TILA and law;

C.   For costs of suit incurred herein;

D.   For attorneys' fees pursuant to TILA and contract, i.e. the lease between Plaintiffs and PBPA; and

E.   For such other relief as the court deems just and proper.

## FOURTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

A.   For general damages according to proof;

B.   For exemplary and punitive damages;

C.   For treble damages (3x) under California Civil Code sec. 3345;

D.   For attorneys' fees under PBPA bylaws, member leases, and PBPA loan documents, albeit such leases and agreements were and are illegal.

D.   For costs of suit incurred herein; and

E.   For such other relief as the court deems just and proper.

## FIFTH CAUSE OF ACTION
## INTENTIONAL AIDING AND ABETTING OF
## BREACH OF FIDUCIARY DUTY

A.   For general damages according to proof;

B.    For exemplary and punitive damages;

C.    For treble damages (3x) under California Civil Code sec. 3345;

D.    For attorneys' fees under any applicable contract discovered during this case;

E.    For costs of suit incurred herein; and

F.    Such other relief as the court deems necessary.

## SIXTH CAUSE OF ACTION
## DECLARATORY RELIEF

A.  For a declaration that the rulings, orders and judgments made and entered against Plaintiffs by or with the assistance of Judge Moss and the Justices were made and entered at a time when Judge Moss and the Defendant Justices were engaged in an agreement and conspiracy to deprive Plaintiffs of their due process and other rights under the United States Constitution, Amendments V and XIV, and under federal law.

B.  For a declaration that Judge Moss and the Defendant Justices, at the time they entered orders directing that Plaintiffs lose to PBPA all their property and rights as members of PBPA, which property and rights and related privileges were thereby taken, were denying and did deny Plaintiffs' their due process rights either intentionally by agreement and conspiracy or by generating events and facts that were extreme such that the appearances of impropriety

became and were constitutionally intolerable;

C.    For a declaration that Plaintiffs property and rights are owned and held by them free and clear of any claim of defendants the LLCs that they own the Park including Plaintiffs' homes because the LLC's purported to obtain title to the Park with the help and assistance of Judge Moss at a time that Judge MOSS was engaged in an agreement and conspiracy to deny Plaintiffs their due process and other rights under the United States Constitution; and

D.    For a declaration that Plaintiffs' property and rights are owned and held by them free and clear of any claim of defendant lender Jefferies because the Park sale occurred during and as a result of Judge Moss willful judicial misconduct in carrying out an agreement and conspiracy to deprive Plaintiffs of their United States constitutional rights.

**PLAINTIFFS DEMAND A JURY TRIAL.**

DATED: Dec. 21, 2016                    Respectfully Submitted,


                                        LAW OFFICE OF PATRICK J. EVANS

                                            /s/ Patrick J. Evans

                                        By: _____
                                            PATRICK J. EVANS
                                            Counsel to Plaintiffs
                                            Sue Eicherly, Myrle Moore,
                                            Floyd Chodosh, Ole Haugen,
                                            Todd Peterson, Kathleen
                                            Schowalter  and Rodger Kane

# COMPLAINT

## EXHIBIT LIST AND REFERENCES

| Exh. | Doc. Date | Document Title / Description | Complaint Pg. / Par. ¶ |
|------|-----------|----------------------------|------------------------|
| A | 2004, etc. | Palm Beach Park Aerial, Schematic, Operating Permit; Painting Trailers in spaces | 4/7; 11/34-38 |
| B | 2007 to present | Grid of PBPA Illegality, statutes, facts, evidence, statutes providing for criminal penalties | 13/39; 34/134; 54/212 |
| C | 11/17 - 12/28/15 | Pleading Caption and Min. Order pages, *Haugen*, in chronological order, 11/12 – 12/28/15 | 4/7; 5/13, passim |
| D | 12/21/15 | TRO Opp. Caption Pages, as served compared to as filed (hearing moved to Judge Moss, CX102) | 25/92 |
| E | 3/23/16 3/24/16 3/25/16 3/29/16 4/06/16 | Counsel letters exchanged re: Judge Moss "re-assumption" of *Haugen*, *ex-parte* Contact with Judge Moss, Charge of Conspiracy to Obstruct Justice, Penal Code sec. 182 | 23/83-84; 30/114-115; 32/121; 41/161 |
| F | 4/26/16 | Ltr. to Presiding Judge Margines, re: disqualified Judge Moss "re-assumption" in *Haugen* | 33/129 |
| G | 4/29/16 | Judge Moss' Verified Answer to Disqualification Statement; denies *ex parte* contact in Haugen | 20/67; 25/89; 27/98; 33/126; 55/220 |
| H | 12/21/15 | Notices of PBPA Fiduciary Breach to Saunders and to Fidelity National Title Co. | 76/304; 58/237; |
| I | 11/30/15 | Home Town America Cover Letter and Offer to D. Mantelli (Offer $20,000 more per member) | 21/72; 56/225; 71/285 |
| J | 7/13/15 1/29/16 | *Coldren* appeal; Salisbury is Coldren's counsel; PCP Press Release, Salisbury is PBPA counsel | 5/17; 78/310 |
| K | 10/4/14 | "Cowgirl" Mantelli "Win" Notice to Members | 40/156-159 |
| L | 6/26/15 | Div. 3 Denial of Writ to DQ Judge Moss, J. Rylaarsdam states he would also sanction | 17/58; 46/180; 61/245 |
| M | 05/1/15 | Saunders Sale original offer, Letter of Intent | 7/19; 56/222; 76/306 |
| N | 12/22/15 | Deed of Trust pages for Jefferies Loan Jeff. Website pg. showing 75% Loan to Value | 6/14; 56/222; 76/306 |
| O | 12/7/15 | Mantelli testimony; PBPA takes membership and lease, gives "nothing" in return | 35/138; 36/142 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**[COMPLAINT EXHIBITS "A" through "O" follow this page]**

# EXHIBIT A



© 2013 Google



PALM BEACH MOBILE HOME PARK
35902 COAST HYWY - SAN CLEMENTE, CALIF.

108 Mobilehome Lots With Drains

18 RV Lots Without Drains

APPROX. SCALE
5/16" = 40.3'



{Plaintiffs' names shown in their spaces}

**2015** ANNUAL PERMIT TO OPERATE

City of San Clemente Building Division

COPY

PERMIT NO. 1
DATED : 12/15/14
AMENDED

ENFORCEMENT AGENCY

| PARK ID NO. | PARK NAME and ADDRESS | INC. or UNC. | MOBILEHOME LOTS WITH DRAINS | RECREATIONAL VEHICLE LOTS WITH DRAINS | LOTS WITHOUT DRAINS | TOTAL LOTS |
|---|---|---|---|---|---|---|
| 30-0053 | Palm Beach Park 35002 Coast Highway San Clemente, CA 92672 | Inc. | 108 | | 18 | 126 |

CONDITIONAL USES:

Only independent mobile homes may be accommodated.  Only vehicles bearing Department of Housing & Community Development insignia of approval may be installed on all lots.  Recreational vehicle lots without traps or vents.

OWNER:  Palm Beach Park Association
       101 Palm Drive
       San Clemente, CA
92672

THIS PERMIT IS ISSUED IN ACCORDANCE WITH THE PROVISIONS OF THE CALIFORNIA HEALTH AND SAFETY CODE AND IS SUBJECT TO SUSPENSION OR REVOCATION AS PROVIDED THEREIN. THIS PERMIT IS NOT TRANSFERABLE. THE ENFORCEMENT AGENCY SHALL BE NOTIFIED WITHIN 30 DAYS OF ANY CHANGE OF NAME, OWNERSHIP, OR OPERATOR.

POST IN A CONSPICUOUS PLACE
HCD 5038 (7/04)   THIS PERMIT EXPIRES DECEMBER 31, 2015



Capistrano Beach Trailer Park

One Mile North of San Clemente on U. S. 101
CAPISTRANO BEACH, CAL.
T. C. M. A. Approved
35902 COAST HWY. 101
SAN CLEMENTE, CALIF.
Phone HYacynth 2-3341

"Palm Beach Park" sometime between 1945 and 1958

# EXHIBIT B

**EXHIBIT "B" TO**

**PLAINTIFFS M. Moore, et al.  vs. JUDGE MOSS, et al. USDC**

**Dec.  21, 2016**

**PALM BEACH PARK ILLEGALITY - ORIGINAL, ONGOING AND RECENT**

(References are to documents, exhibits, evidence and testimony in *Chodosh* case)

| *Description* of PBPA Violation | Evidence Doc./Exhibit Transcript/ Item | Law/Act/Case/Authority | Statutes and Law for PBPA Violations | Statutes Criminal Penalty |
|---|---|---|---|---|
| **ORIGINAL** | **PBPA** | **ILLEGALITY 2007-2008** | | |
| ***ILLEGAL SUBDIVISION*** Palm Beach Park is Failed / Illegal Subdivision; No Conversion to Condominium or Stock Cooperative | PBPA atty. Gibbs' testimony, Minutes, Park is coop without permit or map  P-34 | Subdivided Lands Law Davis Stirling Bus. & Prof. Code: §11010.8(a)(3) no permit (a)(4) no funds to convert (Gibbs Testimony P-93, 94) | §11010.8 et al. | §11023 et al. |
| ***NO SECURITIES PERMIT*** PBPA Issued Membership Certificates Without Required Securities Permit- 2008 | 11/9/15 stip. only 2 permits '98 and '09; no 2008 Gibbs Test. P-93, 94, 106, pgs. 137-138 | Securities Law of 1968 Corp. Code §25019, et al. – B&P §11010.8(a)(3) permit under 25113 required. | §25113, et al. | 25400 25401 et al. |

1

| Description of PBPA Violation | Evidence Doc./Exhibit Transcript/ Item | Law/Act/Case/Authority | Statutes and Law for PBPA Violations | Statutes Criminal Penalty |
|---|---|---|---|---|
| **CERTIFICATES OF OCCUPANY – NONE**<br><br>2007-2008 Issuance of new Member Leases, including leases of RV spaces for mobilehomes; leases without cert. of occupancy; PBPA Violation of operating permit, RV lots leased for mobilehomes | D-125 et seq. P109, 110, 115, 116<br><br>"[A]bsence of certificate of occupancy rendered the lease illegal."<br><br>*Espinoza v. Calva* (2008) 169 CA4th 1393, 1400 [4th DCA, Div. 3] | Calif. Building Code Sec. 111 ("certificate of occupancy") (See, RJN 2) Mobilehome Building Code, Title 25 §1366 (RJN 3) San Clemente City Ord. (RJN4) Test. HCD Inspector John Contreras, [Only 3 Certificates of Occupancy in the official file] | Title 25 §1366 et al.<br><br>*Espinoza v. Calva* (2008) | H&S §17920<br><br>San Clemente City Ordinances See RJN |
| **PBPA HOA LOANS $16.1M** In 2008 PBPA loans $16.1m as Residential mortgage loans[1] | D- 163 to D- 198 | Federal Truth in Lending (court ruled at Phase III that PBPA violated TILA) | 15 U.S.C. §1601, et al. | §1611 et al. |

_____

[1] Trial court ruled that PBPA took security interests (mortgages) in member leases. (See previously filed Notice of Phase III Ruling 12/04/15; court ruling and PBPA admitting its security interests in the member leases, which makes them residential mortgage loans).

2

| Description of PBPA Violation | Evidence Doc./Exhibit Transcript/ Item | Law/Act/Case/Authority | Statutes and Law for PBPA Violations | Statutes Criminal Penalty |
|---|---|---|---|---|
| **NO LENDER'S LICENSE** Without license, PBPA makes and services residential mortgage loans | PBPA did not produce license; does not exist | Residential Mortgage Lending Act ("RMLA") Financial Code §50000 et seq. | §50120 | §50500 |
| **ILLEGAL SUBDIVISION FINANCING** 2008 Residential Mortgage Loans | same | Division of land for 90 mortgage loans, violation Subdivision Map Act Govt. Code §66412, et al. | §66412 | §66499.31 |
| **ONGOING** | **PBPA** | **ILLEGALITY** | | |
| Transfer of Memberships Home Resales; memberships not transferable | 11/9/15 stip. DBO shut down; PBPA does not produce 2008 permit | Securities Laws  Building Code (transfer of leases for premises that do not have certificate of occupancy) | §21113 et al. | 25400 25401 |
| PBPA Operates Park as conventional §798 Park; therefore, cannot assess[2] | PBPA position taken; Vote to Reaffirm Assessment held 8/3/13 | *Karrin v. Ocean-Aire Mob. Home Estates* (1991) 1 CA4th 1066, 1070. (Assessment on §798 tenants "illegal") | Mobile-home Residency Law ("MRL") §798.31 | §798.86 |

---

[2] PBPA contends it is a §798 conventional landlord-tenant park. (PBPA Mot. to expunge, 10/21/15, pg. 2 fn. 2, "Plaintiffs' and cross-defendants' relationship with PBPA is that of landlord tenant. (See generally Civ. Code, §798 et seq.)" The member leases state §799 applies. PBPA contends Plaintiffs and members were assessed based on the member "ratification" vote held 8/3/13 – when PBPA was a §798 park. Fiduciary PBPA is estopped to deny it is a §798 park. Therefore, the assessment is illegal.

3

| *Description* of PBPA Violation | Evidence Doc./Exhibit Transcript/ Item | Law/Act/Case/Authority | Statutes and Law for PBPA Violations | Statutes Criminal Penalty |
|---|---|---|---|---|
| $200,000 Assessment – collection from new owners, turn over to blanket encumbrance lender Thrivent; no lot / lien release given. | J. Johnson test. P-95, Dan Smith Test., Ph. III, 4/15/15, pages 234-238 | Subdivided Lands Law Bus. & Prof. Code B&P §11010.8, et al. §11013.1 §11013.2 §11013.4 §11018.2 | §11013.1 §11013.2 §11013.4 §11018.2 | §11023 et al. |
| 2008-2016 Failure to send Mortgagor 1098 reports of interest paid | O. Haugen, corresp. with PBPA; no 1098s received | Internal Revenue Code Code Federal Regs. CFR § 1.6050H-2 (e) | same | §7434 §6721 |
| Raw Sewage Stench and Unsanitary | P111-113, 117-118, 119, 120 | Building Code, Titles 24, 25 Health & Safety §18901 et seq. | §17920 | §17920 §18700 |
| **2013 - Present** | **PBPA** | **ILLEGALITY** | | |
| No Annual Financial Statements; No Financials | Testimony of PBPA Director and Treasurer George Fiori, 2014 financials not yet done as of Dec. 2015 | Corporations Code Securities Laws Cal. Admin. Code Civ. Code §5300 et seq. | §5012 §8321 §25146 Ad. Code 260.146 | Corp. §25400 et al. |

4

| *Description* of PBPA Violation | Evidence Doc./Exhibit Transcript/ Item | Law/Act/Case/Authority | Statutes and Law for PBPA Violations | Statutes Criminal Penalty |
|---|---|---|---|---|
| Spending of $1M+ Reserves (2013-2015) | $1,016,000 reserves 11/12, P-122 | Reserves spent without Member Approval; 2 signature rule violated | Civ. Code §5510 | Penal Code §503 et al. |
| Building Code and Zoning, etc. violations | P-109 P-118 | PBPA leases spaces permitted for RVs to Appellant and others as spaces for mobilehomes; "Bungalow" RV spaces are the small 18 spaces shown on *Eicherly v. PBPA* Complaint Exhibit I (I: 1: 32) These spaces are not permitted for mobilehomes, only for recreational vehicles. PBPA leases of these RV spaces for mobilehomes violate occupancy and use permits and are therefore illegal.<br><br>Additional violations to be determined upon and following noticed HCD park inspection | H&S §18300, et al. | §17920 §18700 S. C. City Ord. 1.20.040 et seq. |

5

# EXHIBIT
# C

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**11/12/2015** at 08:00:00 AM

Clerk of the Superior Court
By Trinity Mai,Deputy Clerk

1  PATRICK J. EVANS - State Bar No. 110535
   LAW OFFICE OF PATRICK J. EVANS
2  16897 Algonquin Street, Suite F
   Huntington Beach, CA 92649
3  Tel.: (714) 594-5722; Fax:  (714) 840-6861
   pevans@pevanslawoffice.com
4  Attorneys for Plaintiff, OLE HAUGEN

5

6                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

7

8        **FOR THE COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

9

10  OLE HAUGEN, an individual;          CASE NO.   30-2015-00819837-CU-BC-CJC
                                                   Judge Randall J. Sherman
11         Plaintiff,                   **VERIFIED COMPLAINT FOR:**

12                                      1.   **Breach of Contract - Violation of**
                                             **Bylaws re:  06/28/15 Membership**
13                                           **Vote to Sell Park and Dissolve;**

14  v.
                                        2.   **Breach of Statutory Election**
15                                           **Requirements; Corp. Code §7616;**
                                             **Civil Code §5145, et al.;**
16  PALM BEACH PARK ASSOCIATION, a
    California non-profit mutual benefit
17  corporation; and DOES 1 - 20        3.   **Breach of Mobilehome Space Lease**
                                             **[Contract] – for Bylaw Breaches re:**
18         Defendants.                       **06/28/15 Membership Vote;**

19
                                        4.   **Breach of Fiduciary Duty-**
20                                           **Conducting Illegal Vote; Board**
                                             **Directors Conflicted [and Treble**
21                                           **Damages, Civ. Code §3345];**

22
                                        5.   **Financial Elder Abuse Welf. &**
23                                           **Inst. Code §15610.30 et al. [and**
                                             **Treble Damages, Civ. Code §3345];**
24

25                                      6.   **Quiet Title;**

26                                      7.   **Accounting; and**

27
                                        8.   **Declaratory Relief**
28

**VERIFIED COMPLAINT CHALLENGING HOA MEMBERSHIP VOTE AND TO QUIET TITLE**
1

## SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF ORANGE
## CENTRAL JUSTICE CENTER

### MINUTE ORDER

DATE: 11/16/2015                    TIME: 02:29:00 PM          DEPT: C24

JUDICIAL OFFICER PRESIDING: Randall J. Sherman
CLERK: Delia Sanchez
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT:

CASE NO: **30-2015-00819837-CU-BC-CJC** CASE INIT.DATE: 11/12/2015
CASE TITLE: **Haugen vs. Palm Beach Park Association**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Breach of Contract/Warranty

EVENT ID/DOCUMENT ID: 72269014
**EVENT TYPE:** Chambers Work

### APPEARANCES

There are no appearances by any party.

The Court hereby takes notice that the following cases are related to above-entitled matter:
30-2010-00423544 In re: Palm Beach Park Association Cases

This case is removed from the inventory of the Honorable Randall J. Sherman in Department C24 and
reassigned to the Honorable Robert J. Moss in Department CX102 for all purposes.

The Court determines that for purposes of exercising C.C.P. 170.6 rights, there are two sides to this
matter unless the contrary is brought to the attention of the Court, by Ex-Parte motion. Counsel has 15
days from the date of the enclosed certificate of mailing in which to exercise any rights under C.C.P.
170.6.

Court orders Clerk to give notice.

DATE: 11/10/2015                    MINUTE ORDER                         Page 1
DEPT: C24                                                            Calendar No.

1  **PATRICK J. EVANS, SBN 110535**
   **LAW OFFICE OF PATRICK J. EVANS**
2  **16897 ALGONQUIN STREET, SUITE F**
   **HUNTINGTON BEACH, CALIFORNIA 92649**
3  **Tel:  714\ 594-5722; Fax: 714\ 840-6861**
   pevans@pevanslawoffice.com
4  **Attorneys for Plaintiff OLE HAUGEN**

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange
**11/25/2015** at 08:58:00 PM
Clerk of the Superior Court
By Sarah Loose, Deputy Clerk

7        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9        **FOR THE COUNTY OF ORANGE – CIVIL COMPLEX CENTER**

| | |
|---|---|
| OLE HAUGEN, an individual;<br><br>          Plaintiff,<br><br>_v._<br><br>PALM BEACH PARK ASSOCIATION, a California non- profit mutual benefit corporation;<br>and DOES 1 - 20<br><br>          Defendants. | CASE NO. 30-2015-00819837-CU-CO-CJC<br><br>[Assigned to Dept. CX102<br> Hon. Robert J. Moss, Judge Presiding]<br><br>**PEREMPTORY CHALLENGE UNDER CODE OF CIVIL PROCEDURE SECTION 170.6; MOTION RE: DISQUALIFICATION OF JUDICIAL OFFICER; DECLARATION OF PLAINTIFF'S COUNSEL IN SUPPORT**<br><br>Action Filed: Nov. 12, 2015 |

**TO THE HONORABLE COURT, DEFENDANT AND INTERESTED PERSONS:**

I, Patrick J. Evans, hereby declare:

I am the attorney for Plaintiff, Ole Haugen ("Plaintiff") in this action.

Pursuant to Code Civil Procedure sec. 170.6, Plaintiff hereby moves and requests that the assigned Judge, Honorable Robert J. Moss, be disqualified to hear the case and cause and that the case and cause be re-assigned to another judicial officer.

1

**PEREMPTORY CHALLENGE – MOTION AND DECLARATION – CODE CIV. PROC. §170.6**

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 11/30/2015       TIME: 03:03:00 PM     DEPT: C01

JUDICIAL OFFICER PRESIDING: Supervising Judge Charles Margines
CLERK: L. Labrador
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT:

CASE NO: **30-2015-00819837-CU-BC-CXC** CASE INIT.DATE: 11/12/2015
CASE TITLE: **Haugen vs. Palm Beach Park Association**
CASE CATEGORY: Civil - Unlimited     CASE TYPE: Breach of Contract/Warranty

---

EVENT ID/DOCUMENT ID: 72275651
**EVENT TYPE**: Chambers Work

---

**APPEARANCES**

---

There are no appearances by any party.

A Peremptory Challenge under C.C.P.§170.6 as to the Honorable Robert J. Moss having been filed on 11/25/15, by Plaintiff, and this matter having been transferred to C1 for reassignment, the Court now rules as follows:

This case is reassigned to the Honorable Gail A. Andler in Department CX101 for all purposes.

Counsel to contact clerk in Department CX101 within 15 days of receipt of this order to reschedule any pending hearings.

The Court determines that for purposes of exercising C.C.P.§170.6 rights, there are two sides to this matter unless the contrary is brought to the attention of the Court, by Ex-Parte motion. Counsel has 15 days from the date of the enclosed certificate of mailing in which to exercise any rights under C.C.P.§170.6.

Court orders Clerk to give notice. Plaintiff to give notice to any parties not listed and to file proof of service with the court within 10 days.

---

DATE: 11/30/2015           MINUTE ORDER           Page 1
DEPT: C01                                         Calendar No.

1

1              SUPERIOR COURT OF CALIFORNIA

2          COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

3                   DEPARTMENT CX102

4

5    IN RE:                      ) LEAD CASE NO.
                                 ) 30-2010-00423544
6    PALM BEACH PARK ASSOCIATION )
     CASES:                      ) CONSOLIDATED WITH:
7                                ) 30-2010-00423807
     LEAD CASE:                  ) 30-2010-00425213
8                                ) 30-2010-00423173
     FLOYD M. CHODOSH, ETC., ET AL., ) 30-2010-00425206
9                                ) 30-2010-00425291
                 PLAINTIFFS,     ) 30-2010-00425323
10                               ) 30-2010-00435331
       VS.                       ) 30-2010-00432261
11                               )
     PALM BEACH PARK ASSOCIATION,)
12   ET AL.,                     )
                                 )
13               DEFENDANTS.     )
     _____)

14

15       HONORABLE ROBERT J. MOSS, JUDGE PRESIDING

16                REPORTER'S TRANSCRIPT

17                DECEMBER 1, 2015

18

19   APPEARANCES OF COUNSEL:

20

21      FOR PLAINTIFFS:        LAW OFFICE OF PATRICK J. EVANS
                               BY:  PATRICK J. EVANS

22      FOR CROSS-COMPLAINANT:  ALLAN B. WEISS & ASSOCIATES
                               BY:  ALLEN L. THOMAS

23

24           KATHY D. HOFFMAN, CSR #5787
             COURT REPORTER PRO TEMPORE

25

26

2

1          SANTA ANA, CALIFORNIA - TUESDAY, DECEMBER 1, 2015

2                         MORNING SESSION

3              (THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN

4      COURT:)

5          THE COURT:  LAST BUT NOT LEAST IS THE PALM BEACH PARK

6      ASSOCIATION CASES.

7          MR. EVANS:  GOOD MORNING, YOUR HONOR.  PATRICK EVANS

8      FOR THE PLAINTIFFS, EXCEPT CHRIS MC LAUGHLIN.

9          MR. THOMAS:  ALLEN THOMAS FOR CROSS-COMPLAINANT, PALM

10     BEACH PARK ASSOCIATION, AND THE PARTY THAT BROUGHT THE

11     EX PARTE.

12         THE COURT:  THIS IS THE DEFENDANT'S EX PARTE TO

13     EXPUNGE THE LIS PENDENS THAT WAS RECENTLY RECORDED.  I

14     BELIEVE THIS LIS PENDENS WAS RECORDED IN THE NEW CASE THAT

15     WAS FILED JUST THIS LAST MONTH; CORRECT?

16         MR. EVANS:  THAT'S RIGHT, YOUR HONOR.  IT'S A NEW

17     CASE, DEALS WITH ENTIRELY NEW FACTS.

18         THE COURT:  MR. EVANS HAS FILED A 170.6, SO I DON'T

19     HAVE JURISDICTION TO RULE ON THIS MOTION.

20         MR. THOMAS:  WE'RE IN THIS COURT TO SEEK THE COURT TO

21     ENFORCE ITS PREVIOUS ORDER.  WE FILED THIS EX PARTE IN THE

22     CURRENT CASE BEING HEARD BY THIS COURT, AND WE BELIEVE THAT

23     THE COURT ON NOVEMBER 13TH, 2015, GRANTED PALM BEACH PARK'S

24     MOTION TO EXPUNGE A LIS PENDENS FILED BY ALL THE

25     PLAINTIFFS, INCLUDING OLE HAUGEN, AND MR. EVANS AT THAT

26     TIME ON BEHALF OF OLE HAUGEN SOUGHT TO CARVE OUT MR. HAUGEN

1    FROM THE COURT'S RULING, AND THE COURT SAID NO.

2            WE BELIEVE THAT THIS COURT UNDER THE AUTHORITIES

3    WE CITED IN THE EX PARTE, I THINK IT'S 125 OF THE CODE OF

4    CIVIL PROCEDURE, HAS THE INHERENT POWER TO ENFORCE ITS

5    ORDERS.

6            AND MR. EVANS RAN OUT THE MONDAY AFTER THAT

7    FRIDAY, AND FILED -- OR RECORDED ANOTHER LIS PENDENS

8    AGAINST THE SAME PROPERTY.  THE COURT FOUND ON THAT FRIDAY

9    THAT MR. HAUGEN HAS NO INTEREST, PROPERTY RIGHT, TITLE TO

10   THE REAL PROPERTY.  THE COURT ENGAGED MR. EVANS IN ORAL

11   ARGUMENT OVER THE FACT THAT, EVEN ASSUMING WHATEVER HE

12   CLAIMS IS TRUE, IT DOES NOT AFFECT MR. HAUGEN'S TITLE,

13   POSSESSION, RIGHT TO REAL PROPERTY.

14           WE ATTACHED THE COMPLAINT FILED BY OLE HAUGEN AS

15   AN EXHIBIT, AND CONTRARY TO MR. HAUGEN'S COUNSEL'S

16   ARGUMENT, WE'RE NOT ADMITTING ANYTHING IN THERE IS TRUE,

17   BUT WE POINTED OUT TO THE COURT IN THIS CASE, IN THE CASE

18   BEFORE YOU, THAT, IN FACT, NOTHING THAT MR. HAUGEN ALLEGES

19   HAS ANY RIGHT, TITLE, OR INTEREST TO THE PROPERTY.  IT'S

20   ALL RELATING TO THIS ELECTION VOTE THAT THEY HAD TO SELL

21   THE PROPERTY.  THERE'S NO CAUSES OF ACTION THAT PERTAIN TO

22   RIGHT, TITLE, INTEREST IN THE PROPERTY.

23        THE COURT:  LET ME STOP YOU, MR. THOMAS.  I AGREE WITH

24   ALL THAT.  MY ONLY HANG-UP IS THIS NEW ACTION HE FILED A

25   170.6 AGAINST ME.  THAT MEANS I DON'T HAVE JURISDICTION TO

26   RULE ON THE NEW ACTION.  ALL THESE ARGUMENTS COULD BE MADE

4

1    TO THE JUDGE TO WHICH THIS CASE IS ASSIGNED, BUT I DON'T

2    HAVE JURISDICTION IF THEY FILE A 170.6.

3        MR. THOMAS:  WELL, YOU DO HAVE JURISDICTION IN THE

4    CURRENT CASE.  WE'RE GOING TO CHALLENGE THAT 170.6 ANYWAY,

5    BECAUSE MR. HAUGEN HAS ALREADY ATTEMPTED TO DISQUALIFY YOU,

6    AND THERE'S A UNITY OF INTEREST, SO THAT'S DOWN THE ROAD

7    TOO, BUT MY POINT IS THAT YOU, YOUR HONOR, HAVE THE

8    AUTHORITY TO ENFORCE YOUR ORDERS AND ADHERE TO THE FACT, OR

9    AT LEAST ALLOW MY CLIENT TO ADHERE TO A SENSE OF JUSTICE IN

10   THE CASE YOU ARE PRESIDING OVER, AND THAT THIS IS A DIRECT

11   CHALLENGE, IN OUR OPINION, TO THE COURT'S AUTHORITY TO

12   EXPUNGE A LIS PENDENS.

13        WE'RE SEEKING TO EXPUNGE IT THROUGH THE COURT'S

14   INHERENT POWER.

15        THE COURT:  I UNDERSTAND THAT.

16        MR. THOMAS:  ALL RIGHT.  AND ALSO, YOUR HONOR, EACH

17   DAY THAT THAT LIS PENDENS IS RECORDED, CONTRARY TO WHAT

18   MR. HAUGEN WOULD ARGUE, EACH DAY IT CLOUDS TITLE, IF PALM

19   BEACH WANTED TO GO OUT AND GET A LOAN TODAY, THE LENDER,

20   THEY DON'T HAVE NOTICE OF ANYTHING.  AND HE SHOULD AT LEAST

21   HAVE TO POST AN UNDERTAKING WHILE THIS THING WORKS ITS WAY

22   THROUGH THE COURT.

23        THE COURT:  I UNDERSTAND THAT TOO, BUT WITHOUT

24   JURISDICTION, YOU HAVE TO FILE THIS MOTION IN THE

25   DEPARTMENT TO WHICH THE NEW CASE IS ASSIGNED.

26        MR. THOMAS:  DO WE HAVE ANY IDEA WHEN THAT MIGHT

1  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   CARY L. WOOD, SB# 146598
2      E-Mail: Cary.Wood@lewisbrisbois.com
   DOMINEH FAZEL, SB# 256491
3      E-Mail: Domineh.Fazel@lewisbrisbois.com
   633 West 5th Street, Suite 4000
4  Los Angeles, California 90071
   Telephone: 213.250.1800
5  Facsimile: 213.250.7900

6  Attorneys for Defendant
   PALM BEACH PARK ASSOCIATION
7

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**12/01/2015** at 05:21:00 PM
Clerk of the Superior Court
By Sarah Loose, Deputy Clerk

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            COUNTY OF ORANGE, CIVIL COMPLEX CENTER

11 OLE HAUGEN, an individual

12            Plaintiff,

13 v.

14 PALM BEACH PARK ASSOCIATION, a
   California non-profit mutual benefit
15 corporation; and DOES 1-20

16            Defendants.

CASE NO. 30-2015-00819837-CU-BC-CXC

**DEFENDANT PALM BEACH PARK ASSOCIATION'S OBJECTION TO PLAINTIFFS' CODE OF CIVIL PROCEDURE §170.6 PEREMPTORY CHALLENGE**

Judge:  Hon. Gail A. Andler
Dept.:  CX-101

Consolidated with: 30-2010-00423807;30-2010-00425213; 30-2010-00425173; 30-2010-00425206; 30-2010-00425291; 30-2010-00425323; 30-2010-00425331; 30-2010-00432261

Action Filed:    November 12, 2015
Trial Date:

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

Defendant PALM BEACH PARK ASSOCIATION hereby objects to plaintiffs' Code of Civil Procedure §170.6 peremptory challenge to the Honorable Robert J. Moss on the ground that it is procedurally improper and defective.

4814-5422-3403.1

1
DEFENDANT PALM BEACH PARK ASSOCIATION'S OBJECTION TO PLAINTIFFS' CODE OF CIVIL PROCEDURE §170.6 PEREMPTORY CHALLENGE

1  Allan B. Weiss, Esq. (Bar No. 043774)
   Allen L. Thomas, Esq. (Bar No. 102924)
2  ALLAN B. WEISS & ASSOCIATES
   5001 Airport Plaza Drive, Suite 240
3  Long Beach, CA 90815-1280
   Telephone:  (562) 421-6333
4  Facsimile:  (562) 421-6903
   allan@weisslawassociates.com
5
   Attorneys for defendant, Palm Beach Park Association
6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF ORANGE

10                      CIVIL COMPLEX CENTER

11

12  OLE HAUGEN, an individual          )   CASE NO: 30-2015-00819837-CU-BC-CXC
                                        )
13                  Plaintiff,          )   [Deemed related to 30-2010-00423544-CU-CX-
                                        )   CXC]
14  VS.                                 )
                                        )   NOTICE OF ASSOCIATION OF COUNSEL
15  PALM BEACH PARK ASSOCIATION, a )
    California  non-profit  mutual  benefit )  [Lead Complaint filed: November 12, 2015]
16  corporation; and DOES 1-20         )   [Assigned to Judge Gail A. Andler; Dept. CX-101]
                                        )
17                  Defendants.         )
                                        )
18

19       TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

20       NOTICE IS HEREBY GIVEN that the law firm of Allan B. Weiss & Associates hereby

21  associates in the defense of defendant, Palm Beach Park Association, in the above referenced

22  action with Lewis, Brisbois, Bisgaard & Smith, LLP.  All further notices should *also* include

23  the law firm of Allan B. Weiss & Associates at 5001 Airport Plaza Drive, Suite 240, Long

24  Beach, California 90815 (562) 421-6333, allan@weisslawassociates.com.

25  DATED: December 9, 2015           ALLAN B. WEISS & ASSOCIATES

26
                                      By:
27                                        Allen L. Thomas, Esq.
                                          Attorneys for Defendant,
28                                        Palm Beach Park Association

—————————————————————————————————
                    Notice of Association of Counsel
                                   1

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**12/15/2015** at 12:21:00 PM
Clerk of the Superior Court
By Olga Lopez, Deputy Clerk

1    **LEWIS BRISBOIS BISGAARD & SMITH** LLP
     CARY L. WOOD, SB# 146598
2      E-Mail: Cary.Wood@lewisbrisbois.com
     DOMINEH FAZEL, SB# 256491
3      E-Mail: Domineh.Fazel@lewisbrisbois.com
     633 West 5th Street, Suite 4000
4    Los Angeles, California 90071
     Telephone: 213.250.1800
5    Facsimile: 213.250.7900

6    Attorneys for Defendant, PALM BEACH PARK
     ASSOCIATION
7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11    OLE HAUGEN, an individual,         CASE NO. 30-2015-00819837-CU-BC-CJC

12         Plaintiff,           **DEFENDANT PALM BEACH PARK**
                                 **ASSOCIATION'S DEMURRER TO**
13        vs.              **PLAINTIFF OLE HAUGEN'S VERIFIED**
                                 **COMPLAINT**
14    PALM BEACH PARK ASSOCIATION, a
     California non-profit mutual benefit     Judge: Hon. Gail A. Andler
15    corporation; and DOES 1-20,
                                 *[Filed concurrently with the Request for*
16        Defendant.           *Judicial Notice]*

17                                Date:     March 7, 2016
                                 Time:     1:30 p.m.
18                                  Dept.:    CX-101

19
                                 Action Filed:    November 12, 2015
20                                Trial Date:      None Set

21

22       TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

23       PLEASE TAKE NOTICE that on March 7, 2016, at 1:30 p.m., or as soon thereafter as the

24    matter may be heard in Department "CX-101" of the above-entitled Courthouse located at the

25    Orange County Superior Court located at 751 West Santa Ana Boulevard, Santa Ana, California,

26    Defendant PALM BEACH PARK ASSOCIATION ("PBPA") will and hereby does demur to

27    Plaintiff OLE HAUGEN'S ("Plaintiff") Verified Complaint on the following grounds:

28    ///

4823-3579-4476.1
                                     1
DEFENDANT PALM BEACH PARK ASSOCIATION'S DEMURRER TO PLAINTIFF OLE HAUGEN'S
VERIFIED COMPLAINT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE

COMPLEX JUSTICE CENTER

DEPARTMENT CX-102


IN RE:                                )
                                      )
PALM BEACH PARK ASSOCIATION CASES     )
                                      )
                                      )
LEAD CASE:                            )
                                      )   NO. 30-2010-
CHODOSH V. PALM BEACH PARK ASSOCIATION,)     00423544
ET AL.,                               )
                                      )
                                      )
                                      )
_____)


THE HONORABLE ROBERT J. MOSS, JUDGE PRESIDING

REPORTER'S DAILY TRANSCRIPT OF PROCEEDINGS

DECEMBER 15, 2015

APPEARANCES OF COUNSEL:

  FOR PLAINTIFFS      PATRICK J. EVANS, ESQ.
                      LAW OFFICE OF PATRICK J. EVANS

  FOR DEFENDANTS      CARY L. WOOD, ESQ.
                      DOMINEH FAZEL, ESQ.
                      LEWIS BRISBOIS BIGAARD & SMITH, LLP


                      ALLEN L. THOMAS, ESQ.
                      ALLAN B. WEISS & ASSOCIATES




STEPHANIE A. KLINGAMAN, CSR# 12391
OFFICIAL COURT REPORTER

632

1          AS FOR EJECTMENT, THIS COURT RULED ON
2    MARCH 21, 2014 THAT THE CROSS-COMPLAINT DID NOT STATE
3    ALL OF THE NECESSARY ELEMENTS FOR EJECTMENT.  AND IT'S
4    HARD TO BELIEVE, ARE THEY SERIOUS, THESE PLAINTIFFS
5    SHOULD PAY MONEY AND BE EJECTED?
6          NO CHALLENGE TO THE MARKET VALUE SO-CALLED.
7    WELL, IT SEEMS TO ME THE SINGULAR INDICATION OF MARKET
8    VALUE WOULD BE 102 SANDY THAT MR. COOK RENTS FOR $1200 A
9    MONTH.  THAT'S A NEW MODERN UNIT MUCH BETTER THAN THE
10   PLAINTIFFS' UNIT.  WE HEARD TESTIMONY ABOUT THAT.  BUT
11   OF COURSE IT'S ILLEGAL.  AND MR. COOK COULD LIVE THERE
12   FOR THE NEXT 90 DAYS AND NOT PAY RENT.  AND IF THE PARK
13   WENT AT HIM, HE COULD THUMB HIS NOSE AT THEM BECAUSE
14   IT'S ILLEGAL.  THAT'S THE LAW.
15         THE SITUATION PREDICAMENT, IT IS CHAOS, AND
16   IT'S A TRAGEDY.  THESE FOLKS HAD AN OPPORTUNITY TO BUY
17   THIS PARK, AND NOW WE'RE TOLD THEY'RE GOING TO HAVE TO
18   SELL IT OFF.  THAT'S ANOTHER CHAPTER OF THIS SORDID TALE
19   COMING UP.
20         AGAIN, YOUR HONOR, I URGE THE COURT, JUST CUT
21   TO THE QUICK, IT'S ALL ILLEGAL.  LET'S BE DONE WITH IT.
22      THE COURT:  THANK YOU, MR. EVANS.
23         LADIES AND GENTLEMEN, I'LL TAKE THE MATTER
24   UNDER SUBMISSION, AND IT WILL BE A WHILE BEFORE YOU GET
25   MY DECISION, BECAUSE AFTER THIS WEEK, I'LL BE OFF FOR
26   TWO WEEKS AND THEN COME BACK, SO BE PATIENT, AND I'LL

633

1    GET IT TO YOU AS SOON AS I CAN.

2         MR. THOMAS:  WE ARE ALSO ASKING FOR A STATEMENT OF

3    DECISION, TOO.

4         THE COURT:  MY TYPICAL PRACTICE IS TO DO A

5    TENTATIVE DECISION, THEN INSTRUCT THE PREVAILING PARTY

6    TO DO THE STATEMENT OF DECISION.

7         MR. THOMAS:  THANK YOU, YOUR HONOR.

8                        (PROCEEDINGS CONCLUDED)

9                             -oOo-

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DO NOT DUPLICATE PURUSANT TO CGC 69954(D)

1     **PATRICK J. EVANS, SBN 110535**

         **LAW OFFICE OF PATRICK J. EVANS**

2     **16897 ALGONQUIN ST., SUITE F**

         **HUNTINGTON BEACH, CALIFORNIA 92649**

3     **Tel: 714\ 594-5722; Fax: 714\ 840-6861**

         pevans@pevanslawoffice.com

4     **Attorneys for Plaintiff, Ole Haugen**

ELECTRONICALLY RECEIVED
Superior Court of California,
County of Orange
12/21/2015 at 11:02:35 AM
Clerk of the Superior Court
By Olga Lopez, Deputy Clerk

5

6

7                  **SUPERIOR COURT OF CALIFORNIA**

8        **COUNTY OF ORANGE - CIVIL COMPLEX CENTER**

9

10    OLE HAUGEN, an individual;

11           Plaintiff,

12

13    *v.*

14

15    PALM BEACH PARK ASSOCIATION, a

        California non-profit mutual benefit

16    corporation; and DOES 1 - 20

17

18

19

20

21

22           Defendants.

23

| | |
|---|---|
| CASE NO. | |
| 30-201500819837-CU-BC-CJC | |
| [Hon. Gail A. Andler; Dept. CX-101] | |

**NOTICE AND DECLARATION OF NOTICE AND PROOF OF SERVICE OF PLAINTIFF OLE HAUGEN'S APPLICATION FOR ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER; ITS MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS AND EXHIBITS, AND ACCOMPANYING DOCUMENTS**

**[CODE CIV. PROC. §526, 527]**

**[Application and Request for Judicial Notice, and (Proposed) Order Filed and Lodged Separately]**

Hearing Date December 22. 2015
Hearing Time: 9:00 a.m.

Complaint Filed: Nov. 12, 2015

24   **TO THE HONORABLE COURT AND DEFENDANT THROUGH COUNSEL:**

25

26       PLEASE TAKE NOTICE that Plaintiff Ole Haugen will apply for a temporary restraining

27   order ("TRO") and for an Order to Show Cause ("OSC") requiring Defendant Palm Beach Park

28   Association ("PBPA") to show why a preliminary injunction should not issue pending trial in this

i

**NOTICE OF APPLICATION FOR TRO TO ENJOIN SAUNDERS SALE; DECLARATION OF NOTICE**

1   **PATRICK J. EVANS, SBN 110535**
    **LAW OFFICE OF PATRICK J. EVANS**
2   **16897 ALGONQUIN ST., SUITE F**
    **HUNTINGTON BEACH, CALIFORNIA 92649**
3   **Tel:  714\ 594-5722; Fax: 714\ 840-6861**
    pevans@pevanslawoffice.com
4   **Attorney for Plaintiff, Ole Haugen**

ELECTRONICALLY RECEIVED
Superior Court of California,
County of Orange
**12/21/2015** at 11:02:38 AM
Clerk of the Superior Court
By Olga Lopez,Deputy Clerk

5

6

7                   **SUPERIOR COURT OF CALIFORNIA**

8               **COUNTY OF ORANGE - CIVIL COMPLEX CENTER**

9   OLE HAUGEN, an individual;          CASE NO. 30-2015-00819837-CU-BC-CJC

10          Plaintiff,                  [Hon. Gail A. Andler; Dept. CX-101]

11                                      **APPLICATION FOR ORDER TO SHOW**
                                        **CAUSE AND TEMPORARY**
12                                      **RESTRAINING ORDER TO ENJOIN SALE**
                                        **OF PALM BEACH MOBILEHOME PARK**
13      *v.*                            **TO SAUNDERS PROPERTY CO.;**
                                        **MEMORANDUM OF POINTS AND**
14  PALM BEACH PARK ASSOCIATION, a      **AUTHORITIES AND  DECLARATIONS OF**
    California non-profit mutual benefit **OLE HAUGEN, PATRICK EVANS,**
15  corporation; and DOES 1 - 20        **PATRICIA M. WORTHINGTON AND**
                                        **BONNIE P. HARRIS IN SUPPORT [CODE**
16                                      **CIV. PROC. §526, 527]**

17                                      **[Notice and Declaration Re: Notice and**
                                        **Request for Judicial Notice, Notice of**
18                                      **Lodgment of Transcript and (Proposed)**
                                        **Order Filed and Lodged Separately]**
19

20                                      Hearing Date December 22. 2015
                                        Hearing Time: 9:00 a.m.
21          Defendants.                 Complaint Filed:  Nov. 12, 2015

22

23      **TO THE HONORABLE COURT AND DEFENDANT THROUGH COUNSEL:**

24          Plaintiff Ole Haugen applies for a temporary restraining order and for an Order to Show

25  Cause requiring Defendant Palm Beach Park Association ("PBPA") to show why a preliminary

26  injunction should not issue pending trial in this action, enjoining PBPA and its Board of Directors,

27  attorneys and agents acting with it, from taking any action to sell the Palm Beach Park to John

28

i

**APPLICATION FOR TRO AND MOTION FOR PRELIM. INJ. AGAINST SAUNDERS SALE**

1
2
3
4

**PATRICK J. EVANS, SBN 110535**
**LAW OFFICE OF PATRICK J. EVANS**
**16897  Algonquin Street, Suite F**
**Huntington Beach, California 92649**
**Telephone: (714) 594 - 5722**
**Facsimile:  (714) 840 - 6861**
**Attorneys for Plaintiff**
**Ole Haugen**

ELECTRONICALLY RECEIVED
Superior Court of California,
County of Orange

12/21/2015 at 11:02:30 AM

Clerk of the Superior Court
By Olga Lopez,Deputy Clerk

5

6            **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

7              **COUNTY OF ORANGE – CIVIL COMPLEX CENTER**

8

9    OLE HAUGEN, an individual, ,

10              Plaintiff,

11   v.

12   PALM BEACH PARK ASSOCIATION, a
     California non-profit mutual benefit corporation,
13   and DOES 1-20;

14              Defendants.

15

16

17

18

19

20

21

22

| CASE NO. |
| --- |
| 30-2015-00819837-CU-BC-CJC |
| [Hon. Gail A. Andler; Dept. CX-102] |
| **PLAINTIFF OLE HAUGEN'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF APPLICATION FOR TRO AND MOTION FOR PRELIMINARY INJUNCTION AGAINST  PALM BEACH PARK ASSOCIATION THAT IT CANNOT SELL THE PARK IN THE SAUNDERS SALE [CODE CIV. PROC. §526, 527]** |
| [Application and Memorandum of Points and Authorities, Declarations and Exhibits, Notice of Lodgment of Transcript and (Proposed) Order Filed and Lodged Separately] |
| Hearing Date: December  22, 2015 Hearing Time: 9:00 a.m. |

23          **TO THE HONORABLE COURT AND DEFENDANT THROUGH COUNSEL:**

24

25

26

27

28

1

**PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF APPLICATION TRO AND OSC RE: PI**



**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**12/21/2015** at 04:55:00 PM
Clerk of the Superior Court
By Olga Lopez, Deputy Clerk

1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   CARY L. WOOD, SB# 146598
2      E-Mail: Cary.Wood@lewisbrisbois.com
   DOMINEH FAZEL, SB# 256491
3      E-Mail: Domineh.Fazel@lewisbrisbois.com
   633 West 5th Street, Suite 4000
4  Los Angeles, California 90071
   Telephone: 213.250.1800
5  Facsimile: 213.250.7900

6  Attorneys for Defendant, PALM BEACH PARK
   ASSOCIATION
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10 OLE HAUGEN, an individual,                CASE NO. 30-2015-00819837-CU-BC-CJC

11              Plaintiff,                    **DEFENDANT PALM BEACH PARK**
                                             **ASSOCIATION'S OPPOSITION TO**
12     vs.                                   **PLAINTIFFS' APPLICATION FOR**
                                             **ORDER TO SHOW CAUSE AND**
13 PALM BEACH PARK ASSOCIATION, a            **TEMPORARY RESTRAINING ORDER**
   California non-profit mutual benefit      **TO ENJOIN SALE OF PARK LAND;**
14 corporation; and DOES 1-20,               **MEMORANDUM OF POINTS AND**
                                             **AUTHORITIES; DECLARATION OF**
15              Defendant.                    **ALLEN THOMAS**

16                                           [*Filed concurrently with the Request for*
                                             *Judicial Notice; Evidentiary Objections to*
17                                           *Declarations of Ole Haugen, Bonnie Harris,*
                                             *Patrick J. Evans, Esq., and Patricia*
18                                           *Worthington* ]

19                                           Date:      December 22, 2015
                                                                 28
20                                           Time:      9:00 a.m.
                                             Dept.:     CX-101  CX-102

21                                           The Hon. Gail A. Andler - Dept. CX-101

22                                           Action Filed:    November 12, 2015
                                             Trial Date:      None Set
23

24     TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

25     Defendant, PALM BEACH PARK ASSOCIATION ("PBPA") hereby submits its

26 Opposition to Plaintiff's Application for a Order to Show Cause and Temporary Restraining Order

27 To Enjoin Sal of Palm Beach Mobilehome Park to Saunders Property Co, as follows:

28 4815-6097-3100.1                              1

DEFENDANT PALM BEACH PARK ASSOCIATION'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR ORDER TO SHOW CAUSE AND TEMPORARY
RESTRAINING ORDER TO ENJOIN SALE OF PARK LAND; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF ALLEN THOMAS

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   CARY L. WOOD, SB# 146598
2     E-Mail: Cary.Wood@lewisbrisbois.com
   DOMINEH FAZEL, SB# 256491
3     E-Mail: Domineh.Fazel@lewisbrisbois.com
   633 West 5th Street, Suite 4000
4  Los Angeles, California 90071
   Telephone: 213.250.1800
5  Facsimile: 213.250.7900f

6  Attorneys for Defendant, PALM BEACH PARK
   ASSOCIATION
7

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange
**12/21/2015** at 04:55:00 PM
Clerk of the Superior Court
By Olga Lopez, Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11  OLE HAUGEN, an individual,            CASE NO. 30-2015-00819837-CU-BC-CJC

12              Plaintiff,                **REQUEST FOR JUDICIAL NOTICE IN
                                          SUPPORT OF PALM BEACH PARK
13        vs.                             ASSOCIATION'S OPPOSITION TO
                                          PLAINTIFF OLE  HAUGEN'S EX PARTE
14  PALM BEACH PARK ASSOCIATION, a        APPLICATION**
    California non-profit mutual benefit
15  corporation; and DOES 1-20,           *[Filed concurrently with Opposition to
                                          Plaintiff's Ex Parte Application and
16              Defendant.                Evidentiary Objections]*

17                                        Judge:   Hon. Gail A. Andler
                                                        28
18                                        Date:    December 2̶2̶, 2015
                                          Time:    9:00 a.m.
19                                        Dept.:   ̶C̶X̶-̶0̶0̶   CX- 102

20                                        Action Filed:    November 12, 2015
                                          Trial Date:      None Set
21

22
            TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:
23
            Pursuant to *California Evidence Code* sections 450 *et seq.*, with specific reference to
24
    sections 452(d)(1), along with *California Rules of Court,* Rules 3.1113(l) and 3.1306(c),
25
    Defendant PALM BEACH PARK ASSOCIATION ("PBPA"),  respectfully requests that in
26
    support of the concurrently filed Opposition to Plaintiff OLE HAUGEN'S Ex Parte Application
27
    for Order to Show Cause and Temporary Restraining Order , that this Court take Judicial Notice of
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-7178-4748.1                                   1

ELECTRONICALLY FILED
Superior Court of California,
County of Orange
**12/21/2015** at 04:55:00 PM
Clerk of the Superior Court
By Olga Lopez, Deputy Clerk

1 **LEWIS BRISBOIS BISGAARD & SMITH LLP**
CARY L. WOOD, SB# 146598
2   E-Mail: Cary.Wood@lewisbrisbois.com
DOMINEH FAZEL, SB# 256491
3   E-Mail: Domineh.Fazel@lewisbrisbois.com
633 West 5th Street, Suite 4000
4 Los Angeles, California 90071
Telephone: 213.250.1800
5 Facsimile: 213.250.7900

6 Attorneys for Defendant, PALM BEACH PARK
ASSOCIATION
7

8 SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11 OLE HAUGEN, an individual,

12             Plaintiff,

13      vs.

14 PALM BEACH PARK ASSOCIATION, a
California non-profit mutual benefit
15 corporation; and DOES 1-20,

16             Defendant.

17

18

19

20

21

22

23

| | |
|---|---|
| CASE NO. 30-2015-00819837-CU-BC-CJC | |

**OBJECTION TO DECLARATION OF PATRICK J EVANS' IN SUPPORT OF PLAINTIFF OLE HAUGEN'S EX PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND PRELIMINARY INJUNCTION**

[*Filed concurrently with the Opposition to Plaintiff's Ex Parte Application; Request for Judicial Notice; Evidentiary Objections to Declarations of Bonnie Harris, Ole Haugen, and Patricia Worthington*]

Date:    December 28, 2015
Time:    9:00 a.m.
Dept.:   CX-102

Action Filed:    November 12, 2015
Trial Date:      None Set

24   Defendant Palm Beach Park Association ("PBPA") hereby objects to the declaration of

25 Patrick J. Evans submitted in support of Plaintiff's Application for a Order to Show Cause and

26 Temporary Restraining Order To Enjoin Sal of Palm Beach Mobilehome Park to Saunders

27 Property Co. as follows:

28 ///

4842-6610-2828.1                                         1
OBJECTION TO DECLARATION OF PATRICK J. EVANS' IN SUPPORT OF PLAINTIFF OLE HAUGEN'S EX
PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND PRELIMINARY INJUNCTION

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**12/21/2015** at 04:55:00 PM
Clerk of the Superior Court
By Olga Lopez, Deputy Clerk

1 | **LEWIS BRISBOIS BISGAARD & SMITH** LLP
CARY L. WOOD, SB# 146598
2 |     E-Mail: Cary.Wood@lewisbrisbois.com
DOMINEH FAZEL, SB# 256491
3 |     E-Mail: Domineh.Fazel@lewisbrisbois.com
633 West 5th Street, Suite 4000
4 | Los Angeles, California 90071
Telephone: 213.250.1800
5 | Facsimile: 213.250.7900

6 | Attorneys for Defendant, PALM BEACH PARK
ASSOCIATION
7

8 |        SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 |        COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11 | OLE HAUGEN, an individual,

12 |              Plaintiff,

13 |         vs.

14 | PALM BEACH PARK ASSOCIATION, a
California non-profit mutual benefit
15 | corporation; and DOES 1-20,

16 |              Defendant.

17

18

19

20

21

22

23

| | |
|---|---|
| CASE NO. 30-2015-00819837-CU-BC-CJC | |

**OBJECTION TO DECLARATION OF OLE HAUGEN IN SUPPORT OF PLAINTIFF OLE HAUGEN'S EX PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND PRELIMINARY INJUNCTION**

*[Filed concurrently with the Opposition to Plaintiff's Ex Parte Application; Request for Judicial Notice; Evidentiary Objections to Declarations of Bonnie Harris, Patrick J. Evans, Esq., and Patricia Worthington ]*

Date:     December 28, 2015
Time:     9:00 a.m.
Dept.:    XXXXXX  cx- 102

~~Xxxxkxxx Gxxi xxx xxxkx~~r
~~kxxRkxGxXxxkxx~~

Action Filed:     November 12, 2015
Trial Date:       None Set

24 | Defendant Palm Beach Park Association ("PBPA") hereby objects to the declaration of

25 | Ole Haugen submitted in support of Plaintiff's Application for a Order to Show Cause and

26 | Temporary Restraining Order To Enjoin Sal of Palm Beach Mobilehome Park to Saunders

27 | Property Co. as follows:

28 | ///

4815-2669-8028.1                                     1
OBJECTION TO DECLARATION OF OLE HAUGEN IN SUPPORT OF PLAINTIFF OLE HAUGEN'S EX PARTE
APPLICATION FOR ORDER TO SHOW CAUSE AND PRELIMINARY INJUNCTION

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**12/21/2015** at 04:55:00 PM
Clerk of the Superior Court
By Olga Lopez, Deputy Clerk

1   **LEWIS BRISBOIS BISGAARD & SMITH** LLP
    CARY L. WOOD, SB# 146598
2      E-Mail: Cary.Wood@lewisbrisbois.com
    DOMINEH FAZEL, SB# 256491
3      E-Mail: Domineh.Fazel@lewisbrisbois.com
    633 West 5th Street, Suite 4000
4   Los Angeles, California 90071
    Telephone: 213.250.1800
5   Facsimile: 213.250.7900

6   Attorneys for Defendant, PALM BEACH PARK
    ASSOCIATION
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11  OLE HAUGEN, an individual,                CASE NO. 30-2015-00819837-CU-BC-CJC

12              Plaintiff,                     **OBJECTION TO DECLARATION OF
                                               PATRICIA M. WORTHINGTON IN**
13     VS.                                     **SUPPORT OF PLAINTIFF OLE
                                               HAUGEN'S EX PARTE APPLICATION**
14  PALM BEACH PARK ASSOCIATION, a             **FOR ORDER TO SHOW CAUSE AND**
    California non-profit mutual benefit       **PRELIMINARY INJUNCTION**
15  corporation; and DOES 1-20,
                                               *[Filed concurrently with the Opposition to*
16              Defendant.                     *Plaintiff's Ex Parte Application; Request for*
                                               *Judicial Notice; Evidentiary Objections to*
17                                             *Declarations of Bonnie Harris, Patrick J.*
                                               *Evans, Esq., and Ole Haugen ]*
18
                                                              28
19                                             Date:    December ~~XX~~, 2015
                                               Time:    9:00 a.m.
20                                             Dept.:   ~~XXXXXX~~  CX- 102

21                                             ~~XXXXXXXXXXXXXXXXXXXX~~
                                               ~~XXXXXXXXXXXX~~
22
                                               Action Filed:    November 12, 2015
23                                             Trial Date:      None Set

24       Defendant Palm Beach Park Association ("PBPA") hereby objects to the declaration of

25  Patricia M. Worthington submitted in support of Plaintiff's Application for a Order to Show Cause

26  and Temporary Restraining Order To Enjoin Sal of Palm Beach Mobilehome Park to Saunders

27  Property Co. as follows:

28  ///

    4814-2636-2412.1                          1

    OBJECTION TO DECLARATION OF PATRICIA M. WORTHINGTON IN SUPPORT OF PLAINTIFF OLE
    HAUGEN 'S EX PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND PRELIMINARY INJUNCTION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**12/21/2015** at 04:55:00 PM
Clerk of the Superior Court
By Olga Lopez, Deputy Clerk

1  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   CARY L. WOOD, SB# 146598
2     E-Mail: Cary.Wood@lewisbrisbois.com
   DOMINEH FAZEL, SB# 256491
3     E-Mail: Domineh.Fazel@lewisbrisbois.com
   633 West 5th Street, Suite 4000
4  Los Angeles, California 90071
   Telephone: 213.250.1800
5  Facsimile: 213.250.7900

6  Attorneys for Defendant, PALM BEACH PARK
   ASSOCIATION
7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

| 11 | OLE HAUGEN, an individual, | CASE NO. 30-2015-00819837-CU-BC-CJC |
|----|----|----|
| 12 | Plaintiff, | **OBJECTION TO DECLARATION OF BONNIE HARRIS IN SUPPORT OF PLAINTIFF OLE HAUGEN'S EX PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND PRELIMINARY INJUNCTION** |
| 13 | vs. | |
| 14 | PALM BEACH PARK ASSOCIATION, a California non-profit mutual benefit | |
| 15 | corporation; and DOES 1-20, | |
| 16 | Defendant. | *[Filed concurrently with the Opposition to Plaintiff's Ex Parte Application; Request for Judicial Notice; Evidentiary Objections to Declarations of Ole Haugen, Patrick J. Evans, Esq., and Patricia Worthington ]* |
| 17 | | |
| 18 | | 28 Date:    December 22, 2014 |
| 19 | | Time:    9:00 a.m. Dept.:    XXXXXXX  CX- 102 |
| 20 | | |
| 21 | | XXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXX |
| 22 | | Action Filed:    November 12, 2015 Trial Date:    None Set |
| 23 | | |

24      Defendant Palm Beach Park Association ("PBPA") hereby objects to the declaration of

25  Bonnie Harris submitted in support of Plaintiff's Application for a Order to Show Cause and

26  Temporary Restraining Order To Enjoin Sal of Palm Beach Mobilehome Park to Saunders

27  Property Co. as follows:

28  //
   4847-8246-0972.1                                           1
   OBJECTION TO DECLARATION OF BONNIE HARRIS IN SUPPORT OF PLAINTIFF OLE HAUGEN'S EX
   PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND PRELIMINARY INJUNCTION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CIVIL COMPLEX CENTER**

**MINUTE ORDER**

DATE: 12/22/2015                TIME: 09:00:00 AM        DEPT: CX102

JUDICIAL OFFICER PRESIDING: Under the direction of Honorable Robert J. Moss
CLERK:  Betsy Zuanich
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT:  None

CASE NO: **30-2015-00819837-CU-BC-CXC** CASE INIT.DATE: 11/12/2015
CASE TITLE: **Haugen vs. Palm Beach Park Association**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Breach of Contract/Warranty

---

EVENT ID/DOCUMENT ID: 72288945
**EVENT TYPE**: Ex Parte

---

**APPEARANCES**
Patrick J. Evans, from Law Office of Patrick J. Evans, present for Plaintiff(s).
Cary L. Wood/Domineh Fazel, from Lewis Brisbois Bisgaard & Smith LLP, present for Defendant(s).
 Allen L. Thomas present for defendant Palm Beach Park Association
Edward Susolik/Peter S. Bauman, Callahan & Blaine, specially appeared for John Saunders

**Application for Order to Show Cause and Temporary Restraining Order to Enjoin Sale of Palm Beach Mobilehome Park to Saunders Property Co.**

Ex Parte Application is continued to 12/28/2015, at 08:30 AM in this department.

Counsel for Palm Beach Park Association will give notice.

---

DATE: 12/22/2015                                              Page 1
DEPT:  CX102                     MINUTE ORDER
                                                              Calendar No.

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CIVIL COMPLEX CENTER**

**MINUTE ORDER**

DATE: 12/22/2015          TIME: 09:29:00 AM          DEPT: CX102

JUDICIAL OFFICER PRESIDING: Robert J. Moss
CLERK:  Betsy Zuanich
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT:  None

CASE NO: **30-2015-00819837-CU-BC-CXC** CASE INIT.DATE: 11/12/2015
CASE TITLE: **Haugen vs. Palm Beach Park Association**
CASE CATEGORY: Civil - Unlimited          CASE TYPE: Breach of Contract/Warranty

EVENT ID/DOCUMENT ID: 72288789
**EVENT TYPE**: Chambers Work

**APPEARANCES**

There are no appearances by any party.

Peremptory Challenge pursuant to C.C.P. §170.6 was filed by Plaintiff on 11/25/15, as to the Hon.
Robert J. Moss.

Matter was referred to Dept. C1 and case was reassigned to the Hon. Gail A. Andler in Department
CX101.

Defendant's Objection to the 170.6 against Judge Moss was filed on 12/01/15.

The Court, having read and considered the objection, now rules as follows:

Defendant's objection is granted.

Peremptory challenge is stricken.

Clerk to give e-Service notice to counsel.

DATE: 12/22/2015                          MINUTE ORDER                          Page 1
DEPT:  CX102                                                                    Calendar No.

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE** |
| Civil Complex Center<br>751 W. Santa Ana Blvd<br>Santa Ana, CA 92701 |
| **SHORT TITLE:** Haugen vs. Palm Beach Park Association |
| |

| **CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE** | CASE NUMBER:<br>**30-2015-00819837-CU-BC-CXC** |
|---|---|

I certify that I am not a party to this cause. I certify that the following document(s), Minute Order dated 12/22/15, have been transmitted electronically by Orange County Superior Court at Santa Ana, CA. The transmission originated from email address on December 22, 2015, at 9:36:20 AM PST. The electronically transmitted document(s) is in accordance with rule 2.251 of the California Rules of Court, addressed as shown above. The list of electronically served recipients are listed below:

---

**CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE**

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:

ICC 35902 LLC and 3187 Redhill LLC
4040 MacArthur Boulevard, Suite 300
Newport Beach, CA 92660

Title and Escrow No. 23057972
Parcel No.(s):
691-311-14, 691-341-02, 691-341-03

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

18.00

* $ R 0 0 0 8 0 4 2 6 9 6 $ *
2015000644197 1:18 pm 12/22/15
65 405 G02  5 10
20350.00 20350.00 0.00 0.00 12.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s)
☐ unincorporated area
☒ the city of San Clemente

Documentary Transfer Tax is $40,700.00
☒ computed on full value of interest or property conveyed, or
☐ full value less value of liens or encumbrances remaining at the
time of sale

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**PALM BEACH PARK ASSOCIATION, a California Nonprofit Mutual Benefit Corporation**

hereby GRANT(s) to

ICC 35902 LLC, a Delaware limited liability company, as to an undivided 26% tenancy-in-common interest, and

3187 Redhill LLC, a Delaware limited liability company, as to an undivided 74% tenancy-in-common interest

the following real property in the County of Orange, State of California:

Legal Description attached hereto as Exhibit "A" and made a part hereof.

MAIL TAX STATEMENTS AS DIRECTED ABOVE

Page 1 of 2
gGRANTDEE (DSI Rev. 11/03/14)

Title and Escrow No. 23057972

Dated: December 22, 2015

SELLER:

PALM BEACH PARK ASSOCIATION, a California
Nonprofit Mutual Benefit Corporation

By: Dinna Mantelli, President

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF Orange                    } SS:

On December 18, 2015                          before me,  Jordan Kelly
a Notary Public, personally appeared Diana Mantelli                who proved to me on the basis of satisfactory evidence to
be the person(s)/whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature  Jordan J. Kelly

JORDAN T. KELLY
Commission # 2121095
Notary Public - California
Orange County
My Comm. Expires Jul 27, 2019

1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
CARY L. WOOD, SB# 146598
2    E-Mail: Cary.Wood@lewisbrisbois.com
DOMINEH FAZEL, SB# 256491
3    E-Mail: Domineh.Fazel@lewisbrisbois.com
633 West 5th Street, Suite 4000
4  Los Angeles, California 90071
Telephone: 213.250.1800
5  Facsimile: 213.250.7900

6  Attorneys for Defendant, PALM BEACH PARK
ASSOCIATION

7

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**12/22/2015** at 02:32:00 PM

Clerk of the Superior Court
By Sarah Loose, Deputy Clerk

8         SUPERIOR COURT OF THE STATE OF CALIFORNIA

9         COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11  OLE HAUGEN, an individual,

12         Plaintiff,

13      vs.

14  PALM BEACH PARK ASSOCIATION, a
California non-profit mutual benefit
15  corporation; and DOES 1-20,

16         Defendant.

17

CASE NO. 30-2015-00819837-CU-BC-CJC

**NOTICE OF CONTINUANCE OF
PLAINTIFF OLE HAUGEN'S EX PARTE
APPLICATION**

The Hon. Robert Moss
[Dept. CX-102]

Action Filed:    November 12, 2015
Trial Date:      None Set

18

19  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

20         PLEASE TAKE NOTICE that on December 22, 2015, Plaintiff Ole Haugen's Application

21  for an Order to Show Cause and Temporary Restraining Order To Enjoin Sale of Palm Beach

22  Mobilehome Park to Saunders Property Co. ("Ex Parte Application") was on the Court's calendar

23  on an ex parte basis. Patrick Evans from the Law Offices of Patrick J. Evans appeared on behalf

24  of the Plaintiff. Allen Thomas from Allan B. Weiss & Associates appeared on behalf of defendant

25  Palm Beach Park Association. Domineh Fazel and Cary L. Wood of Lewis Brisbois Bisgaard &

26  Smith, LLP appeared on behalf of Palm Beach Park Association. The Court did not hear the Ex

27  Parte Application. The Court continued Plaintiff Ole Haugen's Ex Parte Application to 8:30 a.m.

28  on December 28, 2015 in department cx-102 before Honorable Judge Moss.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4850-0023-8124.1

1

NOTICE OF CONTINUANCE OF PLAINTIFF OLE HAUGEN'S EX PARTE APPLICATION

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CIVIL COMPLEX CENTER**

**MINUTE ORDER**

DATE: 12/23/2015             TIME: 02:25:00 PM        DEPT:  CX102

JUDICIAL OFFICER PRESIDING: Under the direction of Honorable Robert J. Moss
CLERK:  Betsy Zuanich
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT:  None

CASE NO: **30-2015-00819837-CU-BC-CXC** CASE INIT.DATE: 11/12/2015
CASE TITLE: **Haugen vs. Palm Beach Park Association**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Breach of Contract/Warranty

---

EVENT ID/DOCUMENT ID: 72289750
**EVENT TYPE**: Chambers Work

---

**APPEARANCES**

---

There are no appearances by any party.

Defendant's objection having been granted and peremptory challenge stricken, this case is reassigned to the Honorable Robert J. Moss for all purposes.

Clerk to give notice.

---

DATE: 12/23/2015                      MINUTE ORDER                          Page 1
DEPT:  CX102                                                          Calendar No.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**

Civil Complex Center
751 W. Santa Ana Blvd
Santa Ana, CA 92701

**SHORT TITLE:** Haugen vs. Palm Beach Park Association

| **CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE** | CASE NUMBER: **30-2015-00819837-CU-BC-CXC** |
|---|---|

I certify that I am not a party to this cause. I certify that the following document(s), Minute Order dated 12/23/15, have been transmitted electronically by Orange County Superior Court at Santa Ana, CA. The transmission originated from email address on December 23, 2015, at 2:40:45 PM PST. The electronically transmitted document(s) is in accordance with rule 2.251 of the California Rules of Court, addressed as shown above. The list of electronically served recipients are listed below:

ALLEN L. THOMAS
ALLAN@WEISSLAWASSOCIATES.COM

LAW OFFICE OF PATRICK J. EVANS
PEVANS@PEVANSLAWOFFICE.COM

LEWIS BRISBOIS BISGAARD & SMITH LLP
CARY.WOOD@LEWISBRISBOIS.COM

LEWIS BRISBOIS BISGAARD & SMITH LLP
DOMINEH.FAZEL@LEWISBRISBOIS.COM

Clerk of the Court, by: _____, Deputy

**CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE**

**V3 1013a (June 2004)**                                          Code of Civ. Procedure , § CCP1013(a)

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CIVIL COMPLEX CENTER**

**MINUTE ORDER**

DATE: 12/28/2015              TIME: 08:30:00 AM        DEPT: CX102

JUDICIAL OFFICER PRESIDING: Robert J. Moss
CLERK: Betsy Zuanich
REPORTER/ERM: Michelle Lott-Meyerhofer CSR# 8226
BAILIFF/COURT ATTENDANT: Angelina Bernal

CASE NO: **30-2015-00819837-CU-BC-CXC** CASE INIT.DATE: 11/12/2015
CASE TITLE: **Haugen vs. Palm Beach Park Association**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Breach of Contract/Warranty

EVENT ID/DOCUMENT ID: 72288988
**EVENT TYPE**: Ex Parte

**APPEARANCES**
Patrick J. Evans, from Law Office of Patrick J. Evans, present for Plaintiff(s).
Cary L. Wood, specially appearing for Lewis Brisbois Bisgaard & Smith LLP, present for Defendant(s).
Allen L. Thomas present for defendant Palm Beach Park Association

*Lead Case No. 30-2010-00423544   Chodosh vs Palm Beach Park Association*

*Deemed Related to:*

*Case No. 30-2010-00432259   Haugen vs Palm Beach Park Association*
*Case No. 30-2011-00498722   Palm Beach Park Association vs Eicherly*

*Consolidated with:*

| | |
|---|---|
| *30-2010-00423807* | *Eicherly vs Palm Beach Park Association* |
| *30-2010-00425173* | *Schowalter vs Palm Beach Park Association* |
| *30-2010-00425213* | *Harris vs Palm Beach Park Association* |
| *30-2010-00425206* | *Moore vs Palm Beach Park Association* |
| *30-2010-00425291* | *Haugen vs Palm Beach Park Association* |
| *30-2010-00425323* | *Peterson vs Palm Beach Park Association* |
| *30-2010-00425331* | *Kane vs Palm Beach Park Association* |
| *30-2010-00432261* | *McLaughlin vs Palm Beach Park Association* |

**Plaintiff Ole Haugen's Application for Order to Show Cause and Temporary Restraining Order to Enjoin Sale of Palm Beach Mobilehome Park to Saunders Property Co.**

---

DATE: 12/28/2015                          MINUTE ORDER                                Page 1
DEPT: CX102                                                                Calendar No.

CASE TITLE: Haugen vs. Palm Beach Park Association     CASE NO: **30-2015-00819837-CU-BC-CXC**

The Court having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows: Ex Parte Application is ***denied.***

All objections are sustained.

Lodged transcript of Ole Haugen returned to plaintiff's counsel, (Patrick Evans),  this date.

---

DATE: 12/28/2015                           MINUTE ORDER                                      Page 2
DEPT:  CX102                                                                        Calendar No.

# EXHIBIT
# D

1 | **LEWIS BRISBOIS BISGAARD & SMITH LLP**
CARY L. WOOD, SB# 146598
2 |    E-Mail: Cary.Wood@lewisbrisbois.com
DOMINEH FAZEL, SB# 256491
3 |    E-Mail: Domineh.Fazel@lewisbrisbois.com
633 West 5th Street, Suite 4000
4 | Los Angeles, California 90071
Telephone: 213.250.1800
5 | Facsimile: 213.250.7900

6 | Attorneys for Defendant, PALM BEACH PARK
ASSOCIATION
7 |

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10 | OLE HAUGEN, an individual,           CASE NO. 30-2015-00819837-CU-BC-CJC

11 |         Plaintiff,             **DEFENDANT PALM BEACH PARK**
**ASSOCIATION'S OPPOSITION TO**
12 |         vs.              **PLAINTIFFS' APPLICATION FOR**
**ORDER TO SHOW CAUSE AND**
13 | PALM BEACH PARK ASSOCIATION, a     **TEMPORARY RESTRAINING ORDER**
California non-profit mutual benefit       **TO ENJOIN SALE OF PARK LAND;**
14 | corporation; and DOES 1-20,         **MEMORANDUM OF POINTS AND**
**AUTHORITIES; DECLARATION OF**
15 |         Defendant.           **ALLEN THOMAS**

16 |                              *[Filed concurrently with the Request for*
*Judicial Notice; Evidentiary Objections to*
17 |                              *Declarations of Ole Haugen, Bonnie Harris,*
*Patrick J. Evans, Esq., and Patricia*
18 |                              *Worthington* ]

19 |                              Date:       December 22, 2015
                                  Time:       9:00 a.m.
20 |                              Dept.:       CX-101

21 |                              The Hon. Gail A. Andler - Dept. CX-101

22 |                              Action Filed:     November 12, 2015
                                  Trial Date:      None Set
23 |

24 |       TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

25 |       Defendant, PALM BEACH PARK ASSOCIATION ("PBPA") hereby submits its

26 | Opposition to Plaintiff's Application for a Order to Show Cause and Temporary Restraining Order

27 | To Enjoin Sal of Palm Beach Mobilehome Park to Saunders Property Co. as follows:

28 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**12/21/2015** at 04:55:00 PM
Clerk of the Superior Court
By Olga Lopez, Deputy Clerk

1 | **LEWIS BRISBOIS BISGAARD & SMITH** LLP
CARY L. WOOD, SB# 146598
2 |    E-Mail: Cary.Wood@lewisbrisbois.com
DOMINEH FAZEL, SB# 256491
3 |    E-Mail: Domineh.Fazel@lewisbrisbois.com
633 West 5th Street, Suite 4000
4 | Los Angeles, California 90071
Telephone: 213.250.1800
5 | Facsimile: 213.250.7900

6 | Attorneys for Defendant, PALM BEACH PARK
ASSOCIATION
7 |

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10 | OLE HAUGEN, an individual,       CASE NO. 30-2015-00819837-CU-BC-CJC

11 |         Plaintiff,       **DEFENDANT PALM BEACH PARK
ASSOCIATION'S OPPOSITION TO**
12 |         vs.       **PLAINTIFFS' APPLICATION FOR
ORDER TO SHOW CAUSE AND**
13 | PALM BEACH PARK ASSOCIATION, a       **TEMPORARY RESTRAINING ORDER**
California non-profit mutual benefit       **TO ENJOIN SALE OF PARK LAND;**
14 | corporation; and DOES 1-20,       **MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF**
15 |         Defendant.       **ALLEN THOMAS**

16 |       [*Filed concurrently with the Request for
Judicial Notice; Evidentiary Objections to*
17 |       *Declarations of Ole Haugen, Bonnie Harris,
Patrick J. Evans, Esq., and Patricia*
18 |       *Worthington* ]

19 |       Date:     December 2̶2̶ 28, 2015
      Time:     9:00 a.m.
20 |       Dept.:     ~~CX-101~~ CX-102

21 |       The Hon. Gail A. Andler - Dept. CX-101

22 |       Action Filed:     November 12, 2015
      Trial Date:     None Set
23 |

24 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

25 |       Defendant, PALM BEACH PARK ASSOCIATION ("PBPA") hereby submits its

26 | Opposition to Plaintiff's Application for a Order to Show Cause and Temporary Restraining Order

27 | To Enjoin Sal of Palm Beach Mobilehome Park to Saunders Property Co, as follows:

28 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4815-6097-3100.1           1

DEFENDANT PALM BEACH PARK ASSOCIATION'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR ORDER TO SHOW CAUSE AND TEMPORARY
RESTRAINING ORDER TO ENJOIN SALE OF PARK LAND; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF ALLEN THOMAS

1  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   CARY L. WOOD, SB# 146598
2    E-Mail: Cary.Wood@lewisbrisbois.com
   DOMINEH FAZEL, SB# 256491
3    E-Mail: Domineh.Fazel@lewisbrisbois.com
   633 West 5th Street, Suite 4000
4  Los Angeles, California 90071
   Telephone: 213.250.1800
5  Facsimile: 213.250.7900f

6  Attorneys for Defendant, PALM BEACH PARK
   ASSOCIATION
7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11  OLE HAUGEN, an individual,          | CASE NO. 30-2015-00819837-CU-BC-CJC

12          Plaintiff,                   | **REQUEST FOR JUDICIAL NOTICE IN
                                         | SUPPORT OF PALM BEACH PARK
13      vs.                              | ASSOCIATION'S OPPOSITION TO
                                         | PLAINTIFF OLE  HAUGEN'S EX PARTE
14  PALM BEACH PARK ASSOCIATION, a       | APPLICATION**
    California non-profit mutual benefit
15  corporation; and DOES 1-20,          | *[Filed concurrently with Opposition to
                                         | Plaintiff's Ex Parte Application and
16          Defendant.                   | Evidentiary Objections]*

17                                       | Judge:   Hon. Gail A. Andler

18                                       | Date:    December 22, 2015
                                         | Time:    9:00 a.m.
19                                       | Dept.:   CX-101

20                                       | Action Filed:    November 12, 2015
                                         | Trial Date:      None Set
21

22          TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

23          Pursuant to *California Evidence Code* sections 450 *et seq.*, with specific reference to

24  sections 452(d)(1), along with *California Rules of Court,* Rules 3.1113(l) and 3.1306(c),

25  Defendant PALM BEACH PARK ASSOCIATION ("PBPA"),  respectfully requests that in

26  support of the concurrently filed Opposition to Plaintiff OLE HAUGEN'S Ex Parte Application

27  for Order to Show Cause and Temporary Restraining Order , that this Court take Judicial Notice of

28

4823-7178-4748.1                                      1
REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PALM BEACH PARK ASSOCIATION'S OPPOSITION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   CARY L. WOOD, SB# 146598
2     E-Mail: Cary.Wood@lewisbrisbois.com
   DOMINEH FAZEL, SB# 256491
3     E-Mail: Domineh.Fazel@lewisbrisbois.com
   633 West 5th Street, Suite 4000
4  Los Angeles, California 90071
   Telephone: 213.250.1800
5  Facsimile: 213.250.7900f

6  Attorneys for Defendant, PALM BEACH PARK
   ASSOCIATION
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11  OLE HAUGEN, an individual,              CASE NO. 30-2015-00819837-CU-BC-CJC

12           Plaintiff,                      **REQUEST FOR JUDICIAL NOTICE IN**
                                             **SUPPORT OF PALM BEACH PARK**
13      vs.                                  **ASSOCIATION'S OPPOSITION TO**
                                             **PLAINTIFF OLE HAUGEN'S EX PARTE**
14  PALM BEACH PARK ASSOCIATION, a           **APPLICATION**
    California non-profit mutual benefit
15  corporation; and DOES 1-20,             *[Filed concurrently with Opposition to*
                                            *Plaintiff's Ex Parte Application and*
16           Defendant.                     *Evidentiary Objections]*

17                                          Judge:   Hon. Gail A. Andler
                                                              28
18                                          Date:    December 88, 2015
                                            Time:    9:00 a.m.
19                                          Dept.:   ꭓꭓꭓꭓꭓ   CX- 102

20                                          Action Filed:    November 12, 2015
                                            Trial Date:      None Set
21

22        TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

23        Pursuant to *California Evidence Code* sections 450 *et seq.*, with specific reference to

24  sections 452(d)(1), along with *California Rules of Court,* Rules 3.1113(l) and 3.1306(c),

25  Defendant PALM BEACH PARK ASSOCIATION ("PBPA"), respectfully requests that in

26  support of the concurrently filed Opposition to Plaintiff OLE HAUGEN'S Ex Parte Application

27  for Order to Show Cause and Temporary Restraining Order , that this Court take Judicial Notice of

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-7178-4748.1                                 1
        REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PALM BEACH PARK ASSOCIATION'S OPPOSITION

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**12/21/2015** at 04:55:00 PM
Clerk of the Superior Court
By Olga Lopez,Deputy Clerk

1 | **LEWIS BRISBOIS BISGAARD & SMITH** LLP
CARY L. WOOD, SB# 146598
2 | E-Mail: Cary.Wood@lewisbrisbois.com
DOMINEH FAZEL, SB# 256491
3 | E-Mail: Domineh.Fazel@lewisbrisbois.com
633 West 5th Street, Suite 4000
4 | Los Angeles, California 90071
Telephone: 213.250.1800
5 | Facsimile: 213.250.7900

6 | Attorneys for Defendant, PALM BEACH PARK
ASSOCIATION

7 |

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10 |

11 | OLE HAUGEN, an individual, | CASE NO. 30-2015-00819837-CU-BC-CJC

12 | Plaintiff, | **OBJECTION TO DECLARATION OF PATRICK J EVANS' IN SUPPORT OF PLAINTIFF OLE HAUGEN'S EX PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND PRELIMINARY INJUNCTION**

13 | vs.

14 | PALM BEACH PARK ASSOCIATION, a
California non-profit mutual benefit
15 | corporation; and DOES 1-20,

16 | Defendant.

17 |

18 |

19 |

20 |

21 |

22 |

23 |

*[Filed concurrently with the Opposition to Plaintiff's Ex Parte Application; Request for Judicial Notice; Evidentiary Objections to Declarations of Bonnie Harris, Ole Haugen, and Patricia Worthington ]*

Date: December 22, 2015
Time: 9:00 a.m.
Dept.: CX-101

The Hon. Gail A. Andler
[Dept. CX-101]

Action Filed: November 12, 2015
Trial Date: None Set

24 | Defendant Palm Beach Park Association ("PBPA") hereby objects to the declaration of

25 | Patrick J. Evans submitted in support of Plaintiff's Application for a Order to Show Cause and

26 | Temporary Restraining Order To Enjoin Sal of Palm Beach Mobilehome Park to Saunders

27 | Property Co. as follows:

28 | ///

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-6610-2828.1

1

OBJECTION TO DECLARATION OF PATRICK J. EVANS' IN SUPPORT OF PLAINTIFF OLE HAUGEN'S EX
PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND PRELIMINARY INJUNCTION

ELECTRONICALLY FILED
Superior Court of California,
County of Orange
12/21/2015 at 04:55:00 PM
Clerk of the Superior Court
By Olga Lopez, Deputy Clerk

1 | **LEWIS BRISBOIS BISGAARD & SMITH** LLP
CARY L. WOOD, SB# 146598
2 | E-Mail: Cary.Wood@lewisbrisbois.com
DOMINEH FAZEL, SB# 256491
3 | E-Mail: Domineh.Fazel@lewisbrisbois.com
633 West 5th Street, Suite 4000
4 | Los Angeles, California 90071
Telephone: 213.250.1800
5 | Facsimile: 213.250.7900

6 | Attorneys for Defendant, PALM BEACH PARK
ASSOCIATION

7 |

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10 |

11 | OLE HAUGEN, an individual,

12 | Plaintiff,

13 | vs.

14 | PALM BEACH PARK ASSOCIATION, a
California non-profit mutual benefit
15 | corporation; and DOES 1-20,

16 | Defendant.

17 |

18 |

19 |

20 |

21 |

22 |

23 |

CASE NO. 30-2015-00819837-CU-BC-CJC

**OBJECTION TO DECLARATION OF
PATRICK J EVANS' IN SUPPORT OF
PLAINTIFF OLE HAUGEN'S EX PARTE
APPLICATION FOR ORDER TO SHOW
CAUSE AND PRELIMINARY
INJUNCTION**

[*Filed concurrently with the Opposition to
Plaintiff's Ex Parte Application; Request for
Judicial Notice; Evidentiary Objections to
Declarations of Bonnie Harris, Ole Haugen,
and Patricia Worthington*]

Date: December ~~XX~~ 28 2015
Time: 9:00 a.m.
Dept.: ~~XXXXXX~~ CX- 102
~~XXX~~

~~XXXXXXXXXXXXXXXXXXXXXX~~
~~XXXXXXXXXXXXXXXXXX~~

Action Filed: November 12, 2015
Trial Date: None Set

24 | Defendant Palm Beach Park Association ("PBPA") hereby objects to the declaration of

25 | Patrick J. Evans submitted in support of Plaintiff's Application for a Order to Show Cause and

26 | Temporary Restraining Order To Enjoin Sal of Palm Beach Mobilehome Park to Saunders

27 | Property Co. as follows:

28 | ///

4842-6610-2828.1

1

OBJECTION TO DECLARATION OF PATRICK J. EVANS' IN SUPPORT OF PLAINTIFF OLE HAUGEN'S EX
PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND PRELIMINARY INJUNCTION

1 | **LEWIS BRISBOIS BISGAARD & SMITH LLP**
CARY L. WOOD, SB# 146598
2 |   E-Mail: Cary.Wood@lewisbrisbois.com
DOMINEH FAZEL, SB# 256491
3 |   E-Mail: Domineh.Fazel@lewisbrisbois.com
633 West 5th Street, Suite 4000
4 | Los Angeles, California 90071
Telephone: 213.250.1800
5 | Facsimile: 213.250.7900

6 | Attorneys for Defendant, PALM BEACH PARK
ASSOCIATION

7 |

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10 |

11 | OLE HAUGEN, an individual,       CASE NO. 30-2015-00819837-CU-BC-CJC

12 |      Plaintiff,       **OBJECTION TO DECLARATION OF OLE HAUGEN IN SUPPORT OF**

13 |      vs.       **PLAINTIFF OLE HAUGEN'S EX PARTE APPLICATION FOR ORDER TO SHOW**

14 | PALM BEACH PARK ASSOCIATION, a     **CAUSE AND PRELIMINARY**
California non-profit mutual benefit     **INJUNCTION**

15 | corporation; and DOES 1-20,

16 |      Defendant.      *[Filed concurrently with the Opposition to Plaintiff's Ex Parte Application; Request for Judicial Notice; Evidentiary Objections to*

17 |        *Declarations of Bonnie Harris, Patrick J. Evans, Esq., and Patricia Worthington ]*

18 |

19 |        Date:    December 22, 2015
       Time:   9:00 a.m.
       Dept.:  CX-101

20 |

21 |        The Hon. Gail A. Andler
       [Dept. CX-101]

22 |        Action Filed:   November 12, 2015
       Trial Date:    None Set

23 |

24 |     Defendant Palm Beach Park Association ("PBPA") hereby objects to the declaration of

25 | Ole Haugen submitted in support of Plaintiff's Application for a Order to Show Cause and

26 | Temporary Restraining Order To Enjoin Sal of Palm Beach Mobilehome Park to Saunders

27 | Property Co. as follows:

28 | / / /

4815-2669-8028.1         1
OBJECTION TO DECLARATION OF OLE HAUGEN IN SUPPORT OF PLAINTIFF OLE HAUGEN'S EX PARTE
APPLICATION FOR ORDER TO SHOW CAUSE AND PRELIMINARY INJUNCTION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW



ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**12/21/2015** at 04:55:00 PM
Clerk of the Superior Court
By Olga Lopez, Deputy Clerk

1  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
    CARY L. WOOD, SB# 146598
2      E-Mail: Cary.Wood@lewisbrisbois.com
    DOMINEH FAZEL, SB# 256491
3      E-Mail: Domineh.Fazel@lewisbrisbois.com
    633 West 5th Street, Suite 4000
4  Los Angeles, California 90071
    Telephone: 213.250.1800
5  Facsimile: 213.250.7900

6  Attorneys for Defendant, PALM BEACH PARK
    ASSOCIATION
7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11  OLE HAUGEN, an individual,                    CASE NO. 30-2015-00819837-CU-BC-CJC

12            Plaintiff,                           **OBJECTION TO DECLARATION OF
                                                  OLE HAUGEN IN SUPPORT OF**
13       vs.                                       **PLAINTIFF OLE HAUGEN'S EX PARTE
                                                  APPLICATION FOR ORDER TO SHOW**
14  PALM BEACH PARK ASSOCIATION, a                **CAUSE AND PRELIMINARY**
    California non-profit mutual benefit           **INJUNCTION**
15  corporation; and DOES 1-20,
                                                   *[Filed concurrently with the Opposition to*
16            Defendant.                           *Plaintiff's Ex Parte Application; Request for*
                                                   *Judicial Notice; Evidentiary Objections to*
17                                                 *Declarations of Bonnie Harris, Patrick J.*
                                                   *Evans, Esq., and Patricia Worthington ]*
18
                                                   Date:    December 28, 2015
19                                                 Time:    9:00 a.m.
                                                   Dept.:   XXXXXXX  cx- 102
20
                                                   TxxxkxxxxGxxixxxxxxxxr
21                                                 xkxxRkxxGxxkxxx

22                                                 Action Filed:   November 12, 2015
                                                   Trial Date:     None Set
23

24      Defendant Palm Beach Park Association ("PBPA") hereby objects to the declaration of

25  Ole Haugen submitted in support of Plaintiff's Application for a Order to Show Cause and

26  Temporary Restraining Order To Enjoin Sal of Palm Beach Mobilehome Park to Saunders

27  Property Co. as follows:

28  ///

4815-2669-8028.1                                  1
OBJECTION TO DECLARATION OF OLE HAUGEN IN SUPPORT OF PLAINTIFF OLE HAUGEN'S EX PARTE
APPLICATION FOR ORDER TO SHOW CAUSE AND PRELIMINARY INJUNCTION

D
146

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

1    **LEWIS BRISBOIS BISGAARD & SMITH** LLP
     CARY L. WOOD, SB# 146598
2       E-Mail: Cary.Wood@lewisbrisbois.com
     DOMINEH FAZEL, SB# 256491
3       E-Mail: Domineh.Fazel@lewisbrisbois.com
     633 West 5th Street, Suite 4000
4    Los Angeles, California 90071
     Telephone: 213.250.1800
5    Facsimile: 213.250.7900

6    Attorneys for Defendant, PALM BEACH PARK
     ASSOCIATION

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11   OLE HAUGEN, an individual,                | CASE NO. 30-2015-00819837-CU-BC-CJC

12            Plaintiff,                        | **OBJECTION TO DECLARATION OF
                                                | PATRICIA M. WORTHINGTON IN
13       vs.                                    | SUPPORT OF PLAINTIFF OLE
                                                | HAUGEN'S EX PARTE APPLICATION
14   PALM BEACH PARK ASSOCIATION, a             | FOR ORDER TO SHOW CAUSE AND
     California non-profit mutual benefit       | PRELIMINARY INJUNCTION**
15   corporation; and DOES 1-20,
                                                | *[Filed concurrently with the Opposition to
16            Defendant.                        | Plaintiff's Ex Parte Application; Request for
                                                | Judicial Notice; Evidentiary Objections to
17                                              | Declarations of Bonnie Harris, Patrick J.
                                                | Evans, Esq., and Ole Haugen ]*
18
                                                | Date:      December 22, 2015
19                                              | Time:      9:00 a.m.
                                                | Dept.:     CX-101
20
                                                | The Hon. Gail A. Andler
21                                              | [Dept. CX-101]

22                                              | Action Filed:    November 12, 2015
                                                | Trial Date:      None Set
23

24        Defendant Palm Beach Park Association ("PBPA") hereby objects to the declaration of

25   Patricia M. Worthington submitted in support of Plaintiff's Application for a Order to Show Cause

26   and Temporary Restraining Order To Enjoin Sal of Palm Beach Mobilehome Park to Saunders

27   Property Co. as follows:

28   ///

     4814-2636-2412.1                              1
     OBJECTION TO DECLARATION OF PATRICIA M. WORTHINGTON IN SUPPORT OF PLAINTIFF OLE
     HAUGEN 'S EX PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND PRELIMINARY INJUNCTION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**12/21/2015** at 04:55:00 PM
Clerk of the Superior Court
By Olga Lopez, Deputy Clerk

1   **LEWIS BRISBOIS BISGAARD & SMITH** LLP
CARY L. WOOD, SB# 146598
2      E-Mail: Cary.Wood@lewisbrisbois.com
DOMINEH FAZEL, SB# 256491
3      E-Mail: Domineh.Fazel@lewisbrisbois.com
633 West 5th Street, Suite 4000
4   Los Angeles, California 90071
Telephone: 213.250.1800
5   Facsimile: 213.250.7900

6   Attorneys for Defendant, PALM BEACH PARK
ASSOCIATION

7

8   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9   COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11   OLE HAUGEN, an individual,                      CASE NO. 30-2015-00819837-CU-BC-CJC

12            Plaintiff,                             **OBJECTION TO DECLARATION OF
                                                    PATRICIA M. WORTHINGTON IN**
13        vs.                                       **SUPPORT OF PLAINTIFF OLE
                                                    HAUGEN'S EX PARTE APPLICATION**
14   PALM BEACH PARK ASSOCIATION, a                 **FOR ORDER TO SHOW CAUSE AND**
California non-profit mutual benefit                **PRELIMINARY INJUNCTION**
15   corporation; and DOES 1-20,
                                                    *[Filed concurrently with the Opposition to*
16            Defendant.                            *Plaintiff's Ex Parte Application; Request for*
                                                    *Judicial Notice; Evidentiary Objections to*
17                                                  *Declarations of Bonnie Harris, Patrick J.*
                                                    *Evans, Esq., and Ole Haugen ]*
18
                                                                        28
19                                                  Date:    December XX, 2015
                                                    Time:    9:00 a.m.
20                                                  Dept.:   XXXXXX1 CX-102

21                                                  XXXXXXXXXXXXXXXXXXXX
                                                    XXXXXXXXXXXXX
22                                                  Action Filed:    November 12, 2015
                                                    Trial Date:      None Set
23

24        Defendant Palm Beach Park Association ("PBPA") hereby objects to the declaration of

25   Patricia M. Worthington submitted in support of Plaintiff's Application for a Order to Show Cause

26   and Temporary Restraining Order To Enjoin Sal of Palm Beach Mobilehome Park to Saunders

27   Property Co. as follows:

28   ///

4814-2636-2412.1                                        1

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   CARY L. WOOD, SB# 146598
2    E-Mail: Cary.Wood@lewisbrisbois.com
   DOMINEH FAZEL, SB# 256491
3    E-Mail: Domineh.Fazel@lewisbrisbois.com
   633 West 5th Street, Suite 4000
4  Los Angeles, California 90071
   Telephone: 213.250.1800
5  Facsimile: 213.250.7900

6  Attorneys for Defendant, PALM BEACH PARK
   ASSOCIATION
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11 OLE HAUGEN, an individual,              CASE NO. 30-2015-00819837-CU-BC-CJC

12            Plaintiff,                    **OBJECTION TO DECLARATION OF**
                                            **BONNIE HARRIS IN SUPPORT OF**
13     vs.                                  **PLAINTIFF OLE HAUGEN'S EX PARTE**
                                            **APPLICATION FOR ORDER TO SHOW**
14 PALM BEACH PARK ASSOCIATION, a           **CAUSE AND PRELIMINARY**
   California non-profit mutual benefit     **INJUNCTION**
15 corporation; and DOES 1-20,
                                            [*Filed concurrently with the Opposition to*
16            Defendant.                    *Plaintiff's Ex Parte Application; Request for*
                                            *Judicial Notice; Evidentiary Objections to*
17                                          *Declarations of Ole Haugen, Patrick J. Evans,*
                                            *Esq., and Patricia Worthington* ]
18
                                            Date:     December 22, 2014
19                                          Time:     9:00 a.m.
                                            Dept.:    CX-101
20
                                            The Hon. Gail A. Andler
21                                          [Dept. CX-101]

22                                          Action Filed:    November 12, 2015
                                            Trial Date:      None Set
23

24        Defendant Palm Beach Park Association ("PBPA") hereby objects to the declaration of

25 Bonnie Harris submitted in support of Plaintiff's Application for a Order to Show Cause and

26 Temporary Restraining Order To Enjoin Sal of Palm Beach Mobilehome Park to Saunders

27 Property Co. as follows:

28 //
   4847-8246-0972.1                              1
   _____
   OBJECTION TO DECLARATION OF BONNIE HARRIS IN SUPPORT OF PLAINTIFF OLE HAUGEN'S EX
   PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND PRELIMINARY INJUNCTION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**12/21/2015** at 04:55:00 PM
Clerk of the Superior Court
By Olga Lopez, Deputy Clerk

1  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   CARY L. WOOD, SB# 146598
2    E-Mail: Cary.Wood@lewisbrisbois.com
   DOMINEH FAZEL, SB# 256491
3    E-Mail: Domineh.Fazel@lewisbrisbois.com
   633 West 5th Street, Suite 4000
4  Los Angeles, California 90071
   Telephone: 213.250.1800
5  Facsimile: 213.250.7900

6  Attorneys for Defendant, PALM BEACH PARK
   ASSOCIATION
7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11  OLE HAUGEN, an individual,                CASE NO. 30-2015-00819837-CU-BC-CJC

12            Plaintiff,                       **OBJECTION TO DECLARATION OF
                                              BONNIE HARRIS IN SUPPORT OF**
13       vs.                                   **PLAINTIFF OLE HAUGEN'S EX PARTE
                                              APPLICATION FOR ORDER TO SHOW**
14  PALM BEACH PARK ASSOCIATION, a             **CAUSE AND PRELIMINARY
    California non-profit mutual benefit       INJUNCTION**
15  corporation; and DOES 1-20,
                                              *[Filed concurrently with the Opposition to
16            Defendant.                       Plaintiff's Ex Parte Application; Request for
                                              Judicial Notice, Evidentiary Objections to
17                                             Declarations of Ole Haugen, Patrick J. Evans,
                                              Esq., and Patricia Worthington ]*
18                                                              28
                                              Date:    December ~~22~~, 2014
19                                            Time:    9:00 a.m.
                                              Dept.:   ~~XXXXXXX~~  CX- 102
20
                                              ~~XXXXXXXXXXXXXXXXXXXXXX~~
21                                            ~~XXXXXXXXXXXXXX~~

22                                            Action Filed:    November 12, 2015
                                              Trial Date:      None Set
23

24       Defendant Palm Beach Park Association ("PBPA") hereby objects to the declaration of

25  Bonnie Harris submitted in support of Plaintiff's Application for a Order to Show Cause and

26  Temporary Restraining Order To Enjoin Sal of Palm Beach Mobilehome Park to Saunders

27  Property Co. as follows:

28  //
    4847-8246-0972.1
                                              1
    OBJECTION TO DECLARATION OF BONNIE HARRIS IN SUPPORT OF PLAINTIFF OLE HAUGEN'S EX
    PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND PRELIMINARY INJUNCTION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# EXHIBIT

# E

## Law Office Of Patrick J. Evans

**16897 Algonquin Street, Suite F**
**Huntington Beach, CA 92649**
**Tel.: (714) 594 – 5722; Fax: (714) 840 – 6861**
**E-mail: pevans@pevanslawoffice.com**

March 23, 2016

**JOHN R. SAUNDERS**                                        *BY EMAIL [Addresses]*
**SAUNDERS PROPERTY COMPANY**
**ICC 35902 LLC AND 3197 REDHILL LLC**
c/o Attorneys Indicated as their Counsel at relevant time period July 2015 – January 2016:
(Current counsel for Mr. Saunders [post events] copied as "cc", see last page)

| | | |
|---|---|---|
| Edward Susolik | Robert S. Coldren | Lisa G. Salisbury |
| Peter S. Bauman | Coldren Law Offices, APLC | Salisbury Law Group, APLC |
| Callahan & Blaine | 3 Hutton Centre Dr. Ste. 900 | 3720 S Susan St. Ste. 110 |
| 3 Hutton Centre Drive, 9th Fl. | Santa Ana, CA 92707 | Santa Ana, CA 92704 |
| Santa Ana, CA  92707 | [rcoldren@coldrenlawoffices.com] | [lsalisbury@slg.tc] |
| [ES@callahan-law.com] | | |
| [pbauman@callahan-law.com] | | |

**PALM BEACH PARK ASSOCIATION** c/o its counsel

| | |
|---|---|
| Cary L. Wood and Domineh Fazel | J. John Anderholt III |
| Lewis Brisbois Bisgaard & Smith, LLP | Anderholt Whittaker |
| 633 West 5th St., Suite 4000 | 73-525 El Paseo Drive, Suite E2516 |
| Los Angeles, CA 90071 | Palm Desert, CA 92260 |
| [woodc@lbbslaw.com] | [john@anderholtwhittaker.com] |
| [domineh.fazel@lewisbrisbois.com] | |

| | |
|---|---|
| Allen L. Thomas, Allan B. Weiss and Sivi Pederson, | Jeffry A. Miller and Arezoo Jamshidi |
| Thomas Law Firm Inc. & Allan B. Weiss & Assoc. | Lewis Brisbois Bisgaard & Smith, LLP |
| 5001 Airport Plaza Drive, Suite 240 | 701 B.  St., Suite 1900 |
| Long Beach, CA 90815 | San Diego, CA 92101 |
| [thomaslawfirm@aol.com; allan@weisslawassociates.com | [Jeff.Miller@lewisbrisbois.com] |
| sivi@weisslawassociates.com] | [Arezoo.Jamshidi@lewisbrisbois.com] |

**CHICAGO TITLE COMPANY AND FIDELITY NATIONAL TITLE COMPANY** c/o counsel

Thomas E. Dias
Fidelity National Law Group
915 Wilshire Blvd., Ste. 2100
Los Angeles, CA  90017
[Tom.Dias@fnf.com]

Re:  ***Ole Haugen  vs. Palm Beach Park Association,***   **#30-2015-00819837; NOTICE OF PROBABLE
CAUSE FOR ACCUSATION OF OBSTRUCTION OF JUSTICE, PENAL CODE §182**

Dear Counsel:

Saunders, PBPA and Fidelity, c/o counsel
Re: Accusation of Obstruction of Justice, Penal Code sec. 182
March 23, 2016
Page 2

## LETTER AND NOTICE AND REQUEST TO ADDRESSEES, c/o COUNSEL

This letter and its notices and request, directed in care of counsel, are to:

> **John R. Saunders, Saunders Property Company, ICC 35902 LLC, and 3197 Redhill LLC,** in care of attorneys who indicated they represented one or more of these parties (collectively "Saunders") in the time frame July 2015 – January 2016.   [Please note that this letter is copied to Mr. Saunders' current attorney, Mark B. Wilson.  We are informed that Mr. Wilson started Ms. Saunders' representation after the facts and events giving rise to the accusation herein.]

> **Palm Beach Park Association** ("PBPA"), in care of its counsel of record in pending litigation.

> **Chicago Title Insurance Company and Fidelity National Title Insurance Co.** (collectively "Fidelity"), in care of its in-house attorney.

This letter addresses obstruction of justice, violations of Penal Code sec. 182, arising from probable improper ex parte contact with Hon. Robert J. Moss resulting in Judge Moss having purported to grant a PBPA objection to Plaintiff Ole Haugen's C.C.P. 170.6 challenge in the captioned case, *Ole Haugen v. PBPA* 30-2015-00819837 (Filed 11/12/15; dismissed without prejudice 3/3/16).

Judge Moss was disqualified, which disqualification he acknowledged in open court on Dec. 1, 2015. However, on Dec. 21-22, 2015, while on vacation and from outside the court, Judge Moss issued orders striking Plaintiff Haugen's 170.6 challenge and reinstating himself back on the *Haugen v. PBPA.*

Plaintiffs contend there is probable cause to believe that someone, on behalf of Saunders, PBPA and Fidelity, improperly contacted Judge Moss *ex parte* for the specific purpose of requesting that Judge Moss take over *Haugen v. PBPA* by reinstating himself as the judge on the case.  This would place him in the position to continue and then deny Plaintiff's *ex parte* application for temporary restraining order ("TRO").  The TRO threatened to stop and restrain the fiduciary fraudulent sale of the Palm Beach Mobilehome Park ("Park") to Saunders, which sale would financially benefit Saunders, those in control of PBPA and Fidelity.

## PROBABLE CAUSE TO BELIEVE THERE WAS OBSTRUCTION OF JUSTICE

Please be advised I am counsel to Plaintiff Ole Haugen in this case *Haugen v. PBPA* (filed 11/12/15; dismissed without prejudice 3/3/16) to Plaintiffs in the *Chodosh* action (filed 2010), and to other interested parties.

In my capacity as Officer of the Court, it is my opinion, following a thorough investigation and fact and evidence analysis, that probable cause exists to believe that Saunders, PBPA and Fidelity engaged in conspiracy to obstruct justice within the meaning of California Penal Code §182.

Saunders, PBPA and Fidelity, c/o counsel
Re: Accusation of Obstruction of Justice, Penal Code sec. 182
March 23, 2016
Page 3

The "probable cause" standard has been met, such that a reasonable person, apprised of the facts and evidence, would believe the crime of Obstruction of Justice was committed by those accused herein. Black's Law Dictionary defines "probable cause":

> **PROBABLE CAUSE**. "Probable Cause" may be defined to be an apparent state of facts found to exist upon reasonable inquiry, (that is, such inquiry as the given case renders convenient and proper) which would induce a reasonably intelligent man to believe, in a criminal case, that the accused person had committed the crime charged, or, in a civil case, that a cause of action existed. (Citations omitted)

A Dictionary of Law, Henry Campbell Black, West Pub. Co. 1891, pg. 60.

## GRANTING OF OBJECTION TO 170.6 IMPROPER

Facts and events substantiating probable cause largely begin on Nov. 25, 2015 – and continue through Dec. 28, 2015 in this case. The key facts and events occurred in the time period Dec. 21 – 22 when a filed but unserved 12/22/15 Minute Order, purported to grant the PBPA 170.6 objection and "take back" the *Ole Haugen* case, i.e. the disqualified judge overrules the 170.6 challenge that disqualified him. A judge disqualified by 170.6 cannot "overrule" the 170.6 and keep himself or herself on the case, i.e. ignore a proper 170.6 challenge. See, e.g., Code Civ. Proc. §170.6(a)(1), §170.3(c)(5); *Davcon v. Roberts & Morgan* (2003) 110 Cal. App. 4th 1355. Accompanying this letter are a document list / matrix and documents which support probable cause. [1]

## CHRONOLOGY OF EVENTS AND DOCUMENTS; COURT'S STATEMENTS

The case was filed Nov. 12, 2015. Hon. Randall Sherman was assigned to the case. (Matrix Doc. #1)

On Nov. 16, 2015, based on Notice of Related Case, Judge Sherman reassigned the case to Judge Moss by order making the reassignment and granting the right to a 170.6 challenge. (#2)

On November 25, 2016, Plaintiff filed 170.6 challenge. (#3)

---

[1] For convenience and information, attached is a matrix listing the documents, orders and transcripts that support probable cause. Attached to the matrix are face sheets or the entire document showing filing dates for pleadings and orders in *Haugen v PBPA*, along with transcripts for hearings Dec. 1 and Dec. 28, 2015 and excerpts from the Grant Deed recorded 12/22/15 at 1:18 p.m. signed by Diana Mantelli, PBPA Board President. Also attached or provided are the Objection to PBPA [Proposed] Order and [Proposed] Alternative Order with facts and conclusions of law, along with Notice of Errata, filed in the Ole Haugen case on March 16 and 17. (Note these pleadings may be sent by separate second email).

Saunders, PBPA and Fidelity, c/o counsel
Re: Accusation of Obstruction of Justice, Penal Code sec. 182
March 23, 2016
Page 4

Presiding Judge C. Margines, on Nov. 30, 2015 reassigned the case to Dept. CX 101, Hon. Gail Andler. (#4)

On Dec. 1, 2015 Judge Moss conducted a hearing in the *Chodosh* case in which PBPA sought to expunge the *lis pendens* in this case.  [See Hearing Transcript, (#5)]

At the hearing, Judge Moss first clarified that the *lis pendens* PBPA was challenging was the *lis pendens* in this case, i.e. *Haugen v. PBPA*.

> THE COURT:  This is the defendant's ex parte to expunge the *lis pendens* that was recently recorded. I believe this *lis pendens* was recorded in the new case that was filed just this last month; correct?
>
> MR. EVANS:  That's right,  your Honor. It's a new case, deals with entirely new facts.

(*Chodosh*, Transcript 12/1/15, pg. 2, lines 12-17)

Judge Moss then stated and acknowledged:

> THE COURT: Mr. Evans has filed a 170.6 so I don't have jurisdiction to rule on this motion.

(*Chodosh*, Transcript 12/1/15, pg. 2, lines 18-19)

Although Judge Moss stated that he had been disqualified and had no jurisdiction in this case, PBPA counsel Allen Thomas was persistent.  He argued that Judge Moss had authority to expunge the *lis pendens* in the *Haugen v. PBPA* case in the ex parte application PBPA had brought in *Chodosh*:

> MR. THOMAS:  Nothing that Mr. Haugen alleges has any right, title, or interest to the property. It's all relating to this election vote that they had to sell the property. There's no causes of action that pertain to right, title, interest in the property.

(Id. pg. 3, lines 18-22)   In response, Judge Moss stated:

> THE COURT: Let me stop you, Mr. Thomas. I agree with all that. My only hang-up is this new action he filed a 170.6 against me. That means I don't have jurisdiction to rule on the new action.  All these arguments could be made to the judge to which this case is assigned, but I don't have jurisdiction if they file a 170.6.

(Id. pg. 3, lines 23-26, pg. 4, lines 1-3)

Saunders, PBPA and Fidelity, c/o counsel
Re: Accusation of Obstruction of Justice, Penal Code sec. 182
March 23, 2016
Page 5

That same day, on Dec. 1, 2015, late in the afternoon, at 5:20 p.m., PBPA filed an Objection to Plaintiff's 170.6 challenge.  The objection was filed in Dept. CX 101, Judge Andler.  (#6)

On Dec. 7, 2015, Plaintiff filed an Opposition to the PBPA Objection. The Opposition was filed in Dept. CX 101, Judge Andler.  (#7)

On Dec. 15, 2015, PBPA filed a demurrer for review and hearing before Judge Andler.  (#8)

Thus, upon and from Judge Margines' Nov. 30, 2015 reassignment of the case to Dept. CX 101, Judge Andler, the case remained in CX 101 until December 22, 2015, when Judge Moss, calling in from vacation, purported to strike Plaintiff's 170.6 and put himself back in the case.

On December 21-22, 2015, Judge Moss was on vacation and not in the courthouse.[2]  The *Haugen* case was not assigned to Judge Moss, but had been reassigned to Judge Andler.  It appears that Judge Andler was not in the court on Dec. 21-22.  In any event, the ex parte for TRO was set to be heard in her courtroom, CX 101.  In her absence, it would have been transferred to another judge, but not Judge Moss, as Plaintiff and moving party had disqualified him as ruled by Supervising Judge Margines. (#4)

On Dec. 21, 2015, Plaintiff gave PBPA notice of the *ex parte* application for TRO at 9:45 a.m. At 11:02 a.m. Plaintiff filed and served his ex parte application and related papers. (#9) They were filed and hearing set for the next day, Dec. 22, in Dept. CX 101, Hon. Gail Andler.  On Dec. 21, 2015, at 4:54 p.m.  PBPA filed an opposition to the TRO application, request for judicial notice and evidentiary objections. (#10) The opposition and accompanying pleadings were filed with cover / caption pages showing the court as Dept. CX 101, Hon. Gail Andler.

On the morning of Dec. 22, 2015, I was present for Plaintiff, Saunders and PBPA were present in court through counsel, with Ed Susolik and Peter Bauman there for John Saunders, and PBPA having in attendance three attorneys, Cary Wood, Allen Thomas and Domineh Fazel, along with PBPA President Diana Mantelli, and the PBPA Secretary and Treasurer. (#11) Fidelity was not present.  All parties were informed that the case and hearing on the TRO had been transferred back to Judge Moss.  The parties were directed to appear in Judge Moss' courtroom, Dept. CX 102.

On Dec. 22 at or around 9:00 a.m. Judge Moss, who was not in the courthouse, communicated with his Clerk, "directing" her to issue a Minute Order (12/22 9:00 a.m.) which continued the hearing on

---

[2] In the Phase IV *Chodosh* case, on the last day, Dec. 15, 2015, Judge Moss stated: "Ladies and Gentlemen, I'll take the matter under submission, and it will be a while before you get my decision, because after this week, I'll be off for two weeks and then come back, so be patient, and I'll get it to you as soon as I can." (*Chodosh* Phase IV Trial Transcript, 12/15/15, page 632, lines 23-26 and page 633, line 1)  On Dec. 22, 2015 in the morning at court, Judge Moss' Clerk in Dept. CX 102 confirmed that Judge Moss was not in the courthouse on Dec. 21-22 and that he was on vacation.

Saunders, PBPA and Fidelity, c/o counsel
Re: Accusation of Obstruction of Justice, Penal Code sec. 182
March 23, 2016
Page 6

Plaintiff's ex parte application for TRO to 12/28 and changed the court from Dept. CX 101, Judge Andler, to Dept. CX 102, Judge Moss. (#11)

Then at 9:29 a.m., Judge Moss issued a Minute Order striking the 170.6 and placing himself back on the case.  (#12)

Neither of Judge Moss' Minute Orders (12/22 9:00 a.m. and 12/22 9:29 a.m.) were served.  The Minute Orders were in reverse order, with Judge Moss taking action in the case to continue the ex parte hearing (9:00 a.m.) before he purported to place himself back on the case (9:29 a.m.)

Judge Andler did not grant PBPA's objection to Plaintiff's 170.6 objection.  CX 101 did not send the case back to Judge Moss in CX 102.   The record is that Judge Moss re-appointed himself, which was improper, unauthorized, and a void act. (See Objection filed 3/16/16 for authorities and discussion.)

After the morning session and with Judge Moss having placed himself back on the case, that afternoon, barely four (4) hours after the parties were told that Judge Moss had taken back the case, PBPA and Saunders closed the Palm Beach Park sale.  They recorded a Deed 12/22/15 at 1:18 p.m. (copy of excerpts of the Deed are included in matrix and in Plaintiff's Objection to Order filed 3/16/16, see #13)

On Dec. 22, 2015, at 2:35 p.m., even though the sale had already closed, PBPA counsel Cary Wood filed and served Notice of Continuance of the hearing on the TRO, continuing the matter from 12/22 to 12/28. (#14)   There was no reason to continue the TRO hearing, as the sale had closed 12/22.

On Dec. 23, 2015 Judge Moss issued another Minute Order.  It stated minimally that "There are no appearances by any party. Defendant's objection having been granted and peremptory challenge stricken, this case is reassigned to the Honorable Robert J. Moss for all purposes. Clerk to give notice." Judge Moss' clerk served this Minute Order. (#15)[3]

As noted, the clerk had not served the 12/22/15 9:29 Minute Order, (#12) which gave *the critically important detail that Judge Moss himself had stricken the 170.6 against him and placed himself back on the case* from which he had acknowledged (on 12/1) he was disqualified.

---

[3] With the case back in Judge Moss' courtroom, on 12/24/2015 PBPA filed a motion to expunge the *lis pendens.* (#16) However, that same day the Secretary of State had suspended PBPA for failure to comply with filing requirements.  As a result, stripped of its corporate powers, PBPA had no standing to file the motion.  On Dec. 28, 2015, Judge Moss denied Plaintiff's TRO.  (Transcript of Hearing #17, Minute Order denying TRO, #18) Aside from lack of jurisdiction for Judge Moss having been disqualified, which disqualification he could not, himself, reverse, the 12/28 TRO denial was void as PBPA, having been suspended, had no right or power to be in court that day.  Note that neither Mr. Wood nor Mr. Thomas, on 12/28, informed the court that *the sale had closed*, such that there could be no TRO to stop it.  Failure in their duty to prevent a pointless hearing is telling.  Why did they conceal the closing from the court and Plaintiff?

Saunders, PBPA and Fidelity, c/o counsel
Re: Accusation of Obstruction of Justice, Penal Code sec. 182
March 23, 2016
<u>Page 7</u>

The unserved 12/22 9:20 a.m. Minute Order provides: "There are no appearances by any party. Peremptory Challenge pursuant to C.C.P. §170.6 was filed by Plaintiff on 11/25/15, as to the Hon. Robert J. Moss. Matter was referred to Dept. C1 and case was reassigned to the Hon. Gail A. Andler in Department CX101. Defendant's Objection to the 170.6 against Judge Moss was filed on 12/01/15. The Court, having read and considered the objection, now rules as follows:  Defendant's objection is granted.  Peremptory challenge is stricken. Clerk to give e-Service notice to counsel."

The 12/23 Minute Order, (#15) which the Clerk served, for lack of detail, could be viewed to suggest that Judge Andler had stricken the 170.6.   Judge Moss' 12/22 9:29 Minute Order (#12), not served, states that Judge Moss himself struck the 170.6 against him, i.e. he ignored and quashed the 170.6 challenge already ruled effective on 11/30/15 by Minute Order of Supervising Chief Judge Charles Margines. (#4)  Judge Moss purported to override the 11/30 Order of Supervising Judge Margines.

**PROBABLE CAUSE TO INFER IMPROPER EX PARTE COMMUNICATION**

Plaintiffs contend that a reasonable person, apprised of the documents and facts, would conclude it was not coincidence that Judge Moss, out on vacation, called in to his Clerk to involve himself in *Ole Haugen v PBPA*, a case not in his court.  Informed of the facts, events and provided the Minute Orders and other documents, a person would infer and believe that Saunders, PBPA or Fidelity, or some or all of them, contacted Judge Moss *ex parte* about the TRO to request that he intervene to make sure Plaintiff Haugen's TRO did not stop the scheduled Park sale.

Because of Judge Moss' statements on Dec. 1 (#5), as of Dec. 21-22 Saunders, PBPA and Fidelity knew that Judge Moss would rule in their favor and deny the TRO.   Thus, as of Dec. 21-22, they had motive to get the case back before Judge Moss as he was on record that he would deny the TRO.

The narrow time frame, and that Judge Moss was out on vacation, further support probable cause to believe that, sometime between Dec. 21 around 10 a.m. up until Dec. 22 at 9:00 a.m., Judge Moss received an *ex parte* communication about the TRO and an improper request that he take back the case in order to deny the TRO so the Park sale could go forward as scheduled on Dec. 22.

**QUESTIONS AND INQUIRY REGARDING JUDGE MOSS ORDERS DEC. 21-22, 2015**

Questions arise, as to which Plaintiffs believe they know the answers, based on information in this letter and other evidence they have obtained, including:

1.  How did Judge Moss, who was on vacation and not in the court, learn of the 12/21/15 TRO application, which was not filed in a case in his court?

2.  Between 12/21 10 a.m. (time of ex parte notice) and 9:00 a.m. on 12/22 (first Judge Moss Order continuing TRO hearing #11), when did Judge Moss learn of the application for TRO?

Saunders, PBPA and Fidelity, c/o counsel
Re: Accusation of Obstruction of Justice, Penal Code sec. 182
March 23, 2016
<u>Page 8</u>

3.  Who contacted him and told him about the TRO?    What did the person(s) say to Judge Moss?

4.  Once apprised of the TRO, how and why did Judge Moss suddenly issue a Minute Order (#12) placing himself back on the case, i.e. striking the 170.6 challenge that had disqualified him?

5.  How could Judge Moss suddenly grant the PBPA Objection to the 170.6 three (3) weeks after the objection had been filed during which time it was in another court and not granted?

6.  Why was there a second Minute Order, dated and served 12/23/15 (#15), which stated only that the PBPA objection to Plaintiff's 170.6 had been granted and that Judge Moss was back on the case?

7.  Why did the 12/23 Minute Order (#15) provide scant information and not state which court had stricken the 170.6, while the 12/22 9:29 a.m. Minute Order (#12) recited the 170.6 history and indicated Judge Moss had stricken Plaintiff's 170.6 and put himself back on the case?

8.  Why did the Court Clerk not serve the 12/22 9:29 a.m. Minute Order (#12) stating Judge Moss had ruled on the objection, but did serve the 12/23 Minute Order (#15) with its minimal information not including that Judge Moss himself had placed himself back on the case?

We believe there is probable cause to assume that the answers to these and similar questions are that Saunders, PBPA or Fidelity acted to have ex parte communication with Judge Moss and that whomever of the three had the ex parte communication it was with the knowledge and consent of the others.   We believe it is most probable that Saunders communicated wrongfully with Judge Moss, with PBPA's and Fidelity's knowledge, support and complicity.   We make these conclusions based on the court record, communications, events and interactions on Dec. 21 – 22, and other investigation and information, only part of which is revealed in this letter.

## CONSPIRACY TO OBSTRUCT JUSTICE – VIOLATION OF PENAL CODE §182

Penal Code sec. 182, establishes the crime of conspiracy to obstruct justice.  It states in relevant part: "(a) If two or more persons conspire: (5) To commit any act injurious to the public health, to public morals, <u>or to pervert or obstruct justice, or the due administration of the laws</u>."   (Emphasis added)

It is probable that only one (1) of Saunders, PBPA or Fidelity wrongfully communicated *ex parte* with Judge Moss on 12/21 or 12/22 to inform him that the TRO could obstruct the scheduled sale and making the request that he intervene to take over the case as he had already stated his view (Transcript in *Chodosh*, 12/1) that he would deny Plaintiff Ole Haugen's TRO and that he believed Ole Haugen had no rights at the Park.   We have probable cause to suspect that Saunders made the *ex parte* communication, with the knowledge and consent and support of PBPA and Fidelity.

Saunders, PBPA and Fidelity, c/o counsel
Re: Accusation of Obstruction of Justice, Penal Code sec. 182
March 23, 2016
Page 9

There is probable cause to believe that all and each of Saunders, PBPA and Fidelity sought and wanted Judge Moss to be placed back on the case, as he already indicated he would rule against Plaintiff and deny the TRO, so that Plaintiff would lose, and that all and each of them communicated with each other about the communication made and action taken by or more of them to contact and communicate *ex parte* to request and have Judge Moss put himself back on the case.

Saunders, PBPA and Fidelity each had financial motive to close the sale. For Saunders, the sale would yield many millions of dollars in real estate equity taken from PBPA members by use of fiduciary breaches, fraud and self-dealing perpetrated largely by PBPA President Diana Mantelli.

The sale was not in PBPA's interest, but its interests were cast aside by its Board President Diana Mantelli and its attorneys Allen Thomas and Allan Weiss. They used PBPA to achieve their personal interests. Ms. Mantelli wanted the below market sale to go through to benefit buyer Saunders and his broker Hensley Realty Corp., with whom she had a prior relationship, and we are informed and believe, to earn an undisclosed commission. PBPA was to pay PBPA attorneys Messrs. Thomas and Weiss $300,000 in outstanding legal fees upon closing. For Fidelity the sale would cause its insured lender Thrivent Financial for Lutherans to have its loan paid off, thereby relieving Fidelity of liability and exposure on the lender's title insurance policy it had issued to Thrivent for its $16,100,000 loan.[4]

Saunders, PBPA and Fidelity were all provided and given notice of the ex parte papers on Dec. 21, 2015.  They all knew about the TRO application on Dec. 21. Probable cause is supported by the timing, as after receiving Plaintiff's TRO ex parte papers, there was ample time to wrongfully communicate with Judge Moss in order to request that he intervene to prevent the TRO from stopping the sale.  Further, there is probable cause to assume that whomever communicated ex parte with Judge Moss, after the ex parte communication, such person advised the others that the ex parte contact with Judge Moss had occurred.  There is probable cause to believe that Saunders, PBPA and Fidelity were all informed and involved in the wrongful effort to make ex parte contact with Judge Moss for the purpose of unfairly denying Plaintiff Haugen his right to a hearing on his TRO before the judge assigned to the case and to avoid, as was his right, the judge he had disqualified for prejudice.

## ACCUSATION OF OBSTRUCTION OF JUSTICE BASED ON PROBABLE CAUSE

In summary, please be advised that it is our position and view that there is probable cause to believe that Saunders, PBPA and Fidelity, and each of them, engaged in conspiracy to obstruct justice within the meaning of Penal Code §182.

---

[4] The Chicago Title Co. Insurance policy held by Thrivent insured enforceability of the deed of trust for its loan, which deed of trust was invalid and void because of violation of the Subdivided Lands Law and other real estate laws. (The violations and reasons the Deed of Trust was void were set forth in numerous pleadings provided to Chicago / Fidelity, e.g. the [Proposed] Fifth Amended Consolidated Complaint in *Chodosh* lodged December 2013.)

Saunders, PBPA and Fidelity, c/o counsel
Re: Accusation of Obstruction of Justice, Penal Code sec. 182
March 23, 2016
Page 10


**REQUEST FOR RESPONSE**

Plaintiffs request that each of Saunders, PBPA and Fidelity respond to the accusation (a) individually as to each of them; and (b) provide any explanation or facts that they believe indicate they did not conspire as accused herein and that they did not violate Penal Code §182.

We would appreciate any and all explanation or clarification or denial or documents that Saunders, PBPA, Fidelity or any of them provide.  If there are facts or documents that they or any of them believe would diminish or counter the probable cause we reasonably perceive, please apprise and provide us with such information and documents.

Plaintiffs request the courtesy of any response within five (5) days, i.e. on or before Monday, March 28, 2016 at 5:00 p.m.


Sincerely,

PATRICK J. EVANS

Attachments:

- Matrix / Grid showing pleadings and Orders filed in *Haugen v. PBPA*, Nov. – Dec. 2015 Attached to Matrix: face / caption pages for pleadings in *Ole Haugen v. PBPA*, showing filing dates and times, 12/1/15 transcript from *Chodosh v. PBPA*, 12/28 transcript in this case; and excerpts of Grant Deed and Deed of Trust for the Park sale, Deed recorded 12/22/15 1:18 p.m.

- Objection to [Prop.] Order, [Alt. Prop.] Order and Notice of Errata filed 3/16-17/2016 (Note these will be emailed separately in second email)

cc.  (With attachments)

Current Counsel to John R. Saunders. Counsel that we are informed were retained after conspiracy and obstruction of justice alleged herein):  (copied by email)

Mark B. Wilson
Klein Wilson
4770 Von Karman Avenue
Newport Beach, CA 90071
[wilson@kleinandwilson.com]


*Chodosh* Plaintiffs (w/ attachments), including Ole Haugen

# Law Office Of Patrick J. Evans

**16897 Algonquin Street, Suite F**
**Huntington Beach, CA 92649**
**Tel.: (714) 594 – 5722; Fax: (714) 840 – 6811**
**E-mail: pevans@pevanslawoffice.com**

March 24, 2016

**PALM BEACH PARK ASSOCIATION** c/o its counsel:

Cary S. Wood                                              *By email*
Domineh Fazel
Lewis Brisbois Bisgaard & Smith, LLP                      [woodc@lbbslaw.com]
633 West 5th St., Suite 4000                              [domineh.fazel@lewisbrisbois.com]
Los Angeles, CA 90071

Re:  *Ole Haugen  vs. Palm Beach Park Association*,  #30-2015-00819837; FOLLOW UP ON
     NOTICE OF PROBABLE CAUSE FOR ACCUSATION OF OBSTRUCTION OF JUSTICE,
     PENAL CODE §182; 12/21/22 EX PARTE COMMUNICATION THROUGH COURT
     ALTERED TRO OPPOSITION FILED BY PBPA

Dear Mr. Wood and Ms. Fazel:

This letter is directed to Palm Beach Park Association ("PBPA") counsel Mr. Cary Wood and Ms.
Domineh Fazel, and is copied to PBPA's other counsel and counsel for John R. Saunders, Saunders
Property Company, ICC 35902 LLC, and 3197 Redhill LLC, (collectively "Saunders") and
Chicago Title Insurance Company and Fidelity National Title Insurance Co. (collectively
"Fidelity"), in care of its in-house attorney.   This letter follows up on our letter of yesterday
regarding probable cause to find obstruction of justice, violations of Penal Code sec. 182, arising
from what we contend are probable improper ex parte contacts with Hon. Robert J. Moss.

On Dec. 21, 2015, at 9:45 a.m. Plaintiff Ole Haugen gave notice of his application for temporary
restraining order "(TRO)" to stop the sale of the Park to Saunders on the basis that PBPA Board
President Diana Mantelli had an undisclosed relationship with Saunders and given the overall
complete breach of fiduciary duties (e.g. selling the Park without marketing or listing it for sale,
use of 2 year old appraisal, ignoring other offers, etc.)   At 11:00 a.m. Mr. Haugen filed and served
his ex parte papers for the TRO.

That same day, Dec. 21, 2015, at 4:54 a.m., we received service copies of the PBPA opposition to
Plaintiff Ole Haugen's ex parte application for TRO.  Accompanying the Opposition were a
Request for Judicial Notice ("RJN") and four (4) objections to the declarations in support of the
TRO, i.e. objections to the TRO application supporting declarations of Bonnie Harris, Ole Haugen,
Patricia M. Worthington, and Patrick Evans.

PBPA Counsel C. Wood and D. Fazel
Re: Follow Up On Accusation of Obstruction of Justice, Penal Code sec. 182
March 24, 2016
<u>Page 2</u>

A true and correct copy of the caption / face page of each of these pleadings, received by 12/21/15 electronic service, are attached hereto.  Appended to the back of the six (6) caption / face pages are the electronic service email from One Legal.

Earlier this week we downloaded the filed TRO Opposition documents from the court website.   A true and correct copy of the caption / face pages of each of these pleadings, received by download from the court "case access" web site earlier this week, on March 21-22, 2016, are attached hereto. Appended to the back of the six (6) caption / face pages are the payment confirmation and document download screens from the OCSC website.

Please compare the <u>served</u> documents' face pages with those for the <u>filed</u>, i.e. downloaded copies. Obviously the filed copies have the court stamp in the upper right hand corner, showing the filing date and time of 12/21/15 at 4:55 p.m. (one minute after the time on the served copies email transmittal).   Normally the court stamp on the filed document would be the only difference when compared to the served document.   When filed, usually the Clerk does nothing to the document except to stamp it "filed".

However, as the attachments reveal, as of 12/21/15 at 4:55 p.m., the filed TRO Opposition documents had been altered to change the judicial officer and courtroom for the hearing from Hon. Gail A. Andler in Dept. CX 101 to Hon. Robert J. Moss in CX 102 and to change the hearing date from 12/22/15 before Judge Andler to 12/28/15 before Judge Moss.   The filed Opposition and RJN have the hearing courtroom and dates changed, but no striking of Judge Andler's name.  The four (4) filed objections to the four (4) declarations have the courtroom and hearing date changed, and Judge Andler's name is crossed out.  None of the documents have a change inserting Judge Moss' name.

We reviewed this matter with the Clerk's office.  We are advised that the Clerk, on instruction from the court, changed the judicial officer and court and the hearing date and that the Clerk made such changes <u>before filing the documents</u>.  Once documents are filed, they are court records and cannot be altered.

However, it is possible for the clerk, in this case we are told the E-filing clerk, to change hearing places, dates and times on the face of a document before filing it, where the hearing place, date has changed <u>and the clerk has received instructions from the court to make the changes</u> on the submitted document before filing it.  Therefore, in this situation, the Clerk, based on instructions from the court, changed the court hearing the matter and continued the hearing date by making changes to the document face pages, then filed the altered documents.

PBPA Counsel C. Wood and D. Fazel
Re: Follow Up On Accusation of Obstruction of Justice, Penal Code sec. 182
March 24, 2016
<u>Page 3</u>

The filed documents, compared to the served documents, provide probable cause to believe that, on 12/21/15, Judge Moss or someone acting at his direction, told the E filing Clerk to make the change of judicial officer, courtroom and hearing date. Thus, it appears and there is probable cause to believe that on Dec. 21 one or more of Saunders, PBPA or Fidelity (using the names and definitions from yesterday's letter 3/23/15) engaged in the unlawful ex parte communication with Judge Moss to request that he take back the case and continue the 12/22 a.m. TRO hearing, so as to prevent the TRO from affecting the already scheduled 12/22 closing of the Park sale to Saunders.

As the attorneys' filing and serving the documents, you received confirmation that the court filed the documents. Through the One Legal filing facility, you received an email stating that the documents were "accepted" and a Notice of Confirmation of the filing.

Further, after the clerk filed the documents, copies of the documents <u>as filed</u> were transmitted to One Legal and made available to the filing party, in this case Lewis Brisbois, Bisgaard & Smith LLP, its attorneys Mr. Cary Wood and Ms. Domineh Fazel. It appears that you received confirmation of the filed "accepted" documents, and the filed documents themselves sometime in the evening of Dec. 21, 2015, along with the "Notice of Confirmation of Filing".

In this highly unusual situation, you did not get back the same documents you filed with just a court file stamp added. You received from the court documents that were not identical to those you filed and served, and which had the critical and basic information that the judicial officer and court hearing the matter had changed and that the hearing date had been continued. What you served was not what was filed. As of 12/21 you know what you served was not what was filed.

There is probable cause to believe that your receipt of these altered filed documents, with the information from the alternation, exhibits an improper ex parte communication with the court and in particular Judge Moss. In fact, your receipt of the altered documents appears to have constituted an ex parte communication from Judge Moss to PBPA. You received altered documents indicating a changed court and hearing date, which documents were not simultaneously served on Plaintiff.

Perhaps you could have obviated the ex parte communication somewhat by immediately serving Plaintiff with the changed documents, or at least the cover pages. However, at no time did you serve the altered filed documents on Plaintiff so that Plaintiff had the same information as Defendant about the changed courtroom and hearing date.

Rather, after the Clerk had already, on the morning of 12/22, informed the parties of the changed court and continuance, you then, at 2:35 p.m., gave notice of the change in court from Judge Andler to Judge Moss and the continued hearing date. You knew the previous day on 12/21 of the courtroom change and the continuance, but you did not communicate what you had learned ex parte from the court to the Plaintiff. Moreover, your "notice" came after the sale closed.

PBPA Counsel C. Wood and D. Fazel
Re: Follow Up On Accusation of Obstruction of Justice, Penal Code sec. 182
March 24, 2016
Page 4

Also telling is that the clerk filed your Opposition Documents with changed judicial officer, court and hearing date, on Dec. 21, 2015, before there had been any order purporting to place Judge Moss back on the case. Judge Moss did not put himself back on the case until the next day, Dec. 22, when he entered the Order (albeit void) at 9:29 a.m. stating he had granted the three (3) week old (filed 12/1) PBPA Objection to Plaintiff's 170.6 disqualification of him. (Yesterday's letter provided you detail about that order and had an attachment that included a copy of the order).

Your TRO Opposition documents were filed with changed court and hearing date BEFORE Judge Moss' invalid Orders transferring the case from Judge Andler to himself and continuing the hearing. (12/22/15 Orders, 9:00 and 9:29 a.m.; see letter of yesterday and attachments for copies of the Orders.)

The Clerk's alteration and sending back to you the changed Opposition documents provide probable cause to believe that:

>  (1) The initial unlawful ex parte communication(s) with Judge Moss, requesting that he intervene to prevent the TRO from stopping the Park sale scheduled for 12/22, occurred on 12/21;

>  (2) On 12/21, through the altered Opposition, Judge Moss communicated to PBPA, (and through it with Saunders and Fidelity, as all were alleged conspirators) that he had taken back the case and continued the hearing;

>  (3) Saunders, PBPA and Fidelity had full knowledge, as of 12/21, that the objective of their alleged conspiracy had been and would be met, i.e. that the fiduciary fraudulent sale of the Park would not be impeded by the threatened TRO hearing on 12/22;

>  (4) On 12/21 they knew that Plaintiff had been denied the information that Judge Moss had taken back the case and continued the TRO hearing.

LBBS associate attorney Ms. Fazel prepared and signed the PBPA TRO Opposition documents with Mr. Wood as the supervising partner. You received the filed and altered documents from the court. There is probable cause to believe that both of you, Mr. Wood and Ms. Fazel, as PBPA attorneys and agents, engaged in conspiracy to obstruct justice. Based on current investigation and information, it does not appear that either of you initiated the unlawful ex parte communications. However, it is our view that the altered filed Opposition documents, which you received back through One Legal on 12/21, along with other facts, provide ample evidence of probable cause to believe that each of you, for PBPA, engaged in conspiracy in violation of Penal Code sec. 182.

PBPA Counsel C. Wood and D. Fazel
Re: Follow Up On Accusation of Obstruction of Justice, Penal Code sec. 182
March 24, 2016
<u>Page 5</u>

Keep in mind that we have requested a response from Saunders, PBPA and Fidelity by 5:00 p.m. Monday, 3/28/16.  If you have a response, comment, explanation, denial or other information that you contend helps to absolve you of our charges herein that there is probable cause to believe you, as PBPA attorneys and agents,  personally engaged in conspiracy to obstruct justice, please provide it by that deadline.

Meanwhile, we request that by noon 12:00 p.m. tomorrow, March 25, 2016, that you provide the date and time that you received the Notice of Confirmation of filing for the PBPA TRO Opposition from the Clerk, i.e. the date and time that the court "accepted" the TRO opposition documents.

There is nothing privileged about the date and time that counsel received confirmation of a court document filing.  Again, please provide the information and a copy of the "Notice of Confirmation" of filing from One Legal by Noon tomorrow.

Be advised that our investigation into these serious matters continues.  Therefore, our views and statements are subject to change based on new information.  Nothing herein or in any correspondence shall be viewed or construed as a waiver or concession of any right or remedy.

Sincerely,

PATRICK J. EVANS

Attachments:

- PBPA Opposition to TRO application in *Haugen v. PBPA*, served 12/21/15, 4:54 p.m.

- PBPA Opp. to TRO application as filed in the court, with changes, 12/21/15, 4:55 p.m.

cc.  (with attachments, by email; see next page)

PBPA Counsel C. Wood and D. Fazel
Re: Follow Up On Accusation of Obstruction of Justice, Penal Code sec. 182
March 24, 2016
Page 6


cc:

JOHN R. SAUNDERS, SAUNDERS PROPERTY COMPANY,
ICC 35902 LLC AND 3197 REDHILL LLC  (collectively "Saunders")

c/o attorneys indicated as their Counsel at relevant time period July 2015 – January 2016:
(Current counsel for Mr. Saunders [post events] copied as "cc", see below)

| | | |
|---|---|---|
| Edward Susolik | Robert S. Coldren | Lisa G. Salisbury |
| Peter S. Bauman | Coldren Law Offices, APLC | Salisbury Law Group, APLC |
| Callahan & Blaine | [rcoldren@coldrenlawoffices.com] | [lsalisbury@slg.tc] |
| [ES@callahan-law.com] | | |
| [pbauman@callahan-law.com] | | |

Current Counsel to John R. Saunders:

Mark B. Wilson
Klein Wilson
[wilson@kleinandwilson.com]


PALM BEACH PARK ASSOCIATION, OTHER COUNSEL:

| | |
|---|---|
| Allen L. Thomas, Allan B. Weiss and Sivi Pederson, | Jeffry A. Miller and Arezoo Jamshidi |
| Thomas Law Firm Inc. & Allan B. Weiss & Assoc. | Lewis Brisbois Bisgaard & Smith, LLP |
| [thomaslawfirm@aol.com; | [Jeff.Miller@lewisbrisbois.com] |
| allan@weisslawassociates.com | [Arezoo.Jamshidi@lewisbrisbois.com] |
| sivi@weisslawassociates.com] | |

J. John Anderholt III
 [john@anderholtwhittaker.com]

CHICAGO TITLE COMPANY AND FIDELITY NATIONAL TITLE COMPANY c/o counsel

Thomas E. Dias
Fidelity National Law Group
[Tom.Dias@fnf.com]


*Chodosh* Plaintiffs (w/ attachments), including Ole Haugen

LAW OFFICES

# ALLAN B. WEISS
## AND ASSOCIATES

ALLAN B. WEISS
PROFESSIONAL LAW CORPORATION

SIVI G. PEDERSON
ATTORNEY AT LAW

ALLEN L. THOMAS
ATTORNEY AT LAW
OF COUNSEL

5001 AIRPORT PLAZA DRIVE,
SUITE 240
LONG BEACH, CALIFORNIA 90815-1270

TELEPHONE   (562) 421- 6333
FACSIMILE    (562) 421- 6903

In reply refer to Allen L. Thomas

March 25, 2016

Patrick J. Evans
Law Office of Patrick J. Evans
16897 Algonquin Street, Suite F
Huntington Beach, California 92649

**VIA E-MAIL & CERTIFIED MAIL**
**pevans@pevanslawoffice.com**
**70082810000243328446**

### RE: FLOYD CHODOSH, ETC. VS. PALM BEACH PARK ASSOCIATION

Dear Mr. Evans:

You are being provided a response to your letter dated March 23, 2016, concerning your libelous accusations that I made an *ex parte* communication with the Honorable Robert J. Moss, judge then presiding in Department CX-102 or was informed by someone else that he or she made such a communication. Before specifically addressing your libelous accusations, let me at the onset categorically deny each and every accusation in your letter. The accusations against me are false and constitute libel per se. You have communicated anger and hostility toward me and my client including Diana Mantelli over several years of litigation. Such conduct and behavior has manifested itself in pursuing and/or condoning complaints to state agencies consisting of the Bureau of Real Estate, the Department of Business Oversight, the State Attorney General, the Secretary of State, the California Coastal Commission, the City of San Clemente, and the Department of Housing and Community Development. This conduct and behavior establishes actual malice on your part that impacts both your ability to objectively discern the truth or falsity of the accusations contained in your letter.

To fully appreciate the seriousness of your false accusations that you have apparently fabricated out of thin air by making a deliberate decision to ignore the probable falsity of your accusations, I want to summarize the various accusations in your letter so we are very clear about what you claim to avoid any ambiguity about your letter's defamation.

    1. In your letter, you assert that "[p]laintiffs contend there is probable cause to believe that someone, on behalf of Saunders, PBPA and Fidelity, improperly contacted Judge Moss *ex parte* for the specific purpose of requesting that Judge Moss take over *Haugen v. PBPA* by reinstating himself as the judge on the case." You go on to write "[i]n my capacity as Officer of the Court, it is my opinion, following a thorough investigation and fact and evidence analysis, that probable cause exists

**E**
**168**

Patrick J. Evans, Esq.
March 25, 2016
Page 2

to believe that Saunders, PBPA and Fidelity engaged in conspiracy to obstruct justice within the meaning of California Penal Code § 182."

**2.** You claim that "[t]he 'probable cause' standard has been met, such that a reasonable person, apprised of the facts and evidence, would believe the crime of Obstruction of Justice was committed by those accused herein." You then present an inaccurate chronology of events and documents and comments made by Judge Moss with the obvious intent to use those "documents and facts" to make the bold contention that "a reasonable person . . . would infer and believe that Saunders, PBPA or Fidelity, or some or all of them, contacted Judge Moss *ex parte* about the TRO to request that he intervene to make sure Plaintiff Haugen's TRO did not stop the scheduled Park sale."

**3.** You assert that because of Judge Moss's comments on December 1, 2015, concerning the motion to expunge the *lis pendens* recorded by Ole Haugen, Saunders, PBPA and Fidelity "had motive to get the case back before Judge Moss as he was on record that he would deny the TRO." You further claim that the "narrow time frame, and that Judge Moss was out on vacation, further support probable cause to believe that, sometime between Dec. 21 around 10 a.m. up until Dec. 22 at 9:00 a.m., Judge Moss received an *ex parte* communication about the TRO and an improper request that he take back the case in order to deny the TRO so the Park sale could go forward as scheduled on Dec. 22."

**4.** You poise a series of questions that you proceed to self answer by claiming "Saunders, PBPA or Fidelity acted to have ex parte communication with Judge Moss and that whomever of the three had the ex parte communication it was with the knowledge and consent of the others." You assert the belief that "it is most probable that Saunders communicated wrongfully with Judge Moss, with PBPA's and Fidelity's knowledge, support and complicity." You claim the basis for your assertions are "the court record, communications, events and interactions on Dec. 21 - 22, and other investigation and information, only part of which is revealed in this letter."

**5.** In your roundup about what you claim constitutes a violation of Penal Code section 182, you claim that "[i]t is probable that only one (1) of Saunders, PBAP or Fidelity wrongfully communicated *ex parte* with Judge Moss . . .." You further repeat the allegations referenced above that you "have probable cause to suspect that Saunders made the *ex parte* communication, with the knowledge and consent and support of PBPA and Fidelity." You further claim that Saunders, PBPA, and Fidelity "all and each of them communicated with each other about the communication made and action taken by or more of them to contact and communicate *ex parte* to request and have Judge Moss put himself back on the case."

**6.** You further assert that Allan Weiss and myself "used PBPA to achieve their personal interests" by having PBPA pay legal bills that you claim were outstanding.

Patrick J. Evans, Esq.
March 25, 2016
Page 3

   **7.** Notwithstanding the fact that you believe Saunders was the person who communicated with Judge Moss, you express uncertainty about who communicated with Judge Moss by writing, "there is probably cause to assume that whomever communicated *ex parte* with Judge Moss, after the ex parte communication, such person advised the others that the *ex parte* contact with Judge Moss had occurred. There is probable cause to believe that Saunders, PBPA and Fidelity were all informed and involved in the wrongful effort to make ex parte contact with Judge Moss . . .."

California law recognizes the charge of a commission of a crime as libel per se. "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned avoided, or which has a tendency to injure him in his occupation." (Cal. Civ. Code, § 45.) "[F]alse statements charging the commission of crime, or tending directly to injure a plaintiff in respect to his or her profession by imputing dishonesty or questionable professional conduct are defamatory per se." (*Burrill v. Nair* (2013) 217 Cal.App.4th 357, 383; Cal. Civ. Code, § 45a.) Clearly, your accusations made against me that I exchanged in *ex parte* communications with Judge Moss or exchanged in a conspiracy with others to communicate with Judge Moss is libel per se particularly because you make the very serious accusation that such a communication constitutes "obstruction of justice". Although not directly asserted, such a communication would also obviously violate the California Professional Rules of Conduct applicable to attorneys.

You have obviously couched your letter in such a manner to hope that California's litigation privilege protects you from a lawsuit for libel. However, under the facts and law applicable to the litigation privilege, you will not be able to hide beyond the privilege in a defamation lawsuit. The accusations in your letter have no relationship to the lawsuit in which the TRO was filed because you dismissed the lawsuit on behalf of Ole Haugen. The litigation privilege is qualified with regards to prospective litigation, but only if contemplated in good faith and under serious consideration. (*Laffer v. Levinson, Miller, Jacobs & Phillips* (1995) 34 Cal.App.4th 117.) You are not acting in good faith and no reasonable attorney would give serious consideration to a lawsuit without any scintilla of evidence to support the bald face claim that I or others engaged in *ex parte* communications with Judge Moss –accusations that by implication malign not just the reputations of the attorneys and persons against whom they are made, but the integrity and reputation of Judge Moss.

Rather you are making an extra judicial statement, consistent without other threats you have made in other communications, with the intent to intimidate Palm Beach Park Association or others to obtain an advantage over them without any litigation purpose or to create a communication that you will submit to the court at some point in time to attempt to pervert justice in this case while Judge Moss has under consideration Floyd Chodosh's, etc. motion for a new trial, the proposed statement of decision, and the proposed judgment. Your letter evidences a pattern of nasty, vindictiveness on your part engaged in throughout this litigation. Now that you and your clients have lost the final Phase IV trial after you led them down a path that was not promontory, but purgatory, you are engaging in one final effort to threaten criminal charges to obtain an advantage in a civil dispute.

Patrick J. Evans, Esq.
March 25, 2016
Page 4

You are not acting in good faith and engaging in another tactical ploy to negotiate some type of resolution of the sizable judgments against your clients who walked away from a $4.7M offer some time ago apparently on your advice.

I would note that any report of your false accusations against me or others to a government agency would constitute a criminal act. (Pen. Code, § 148.5.) I would also note that the litigation privilege does not extend to an attorney who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." (Busi. & Prof. Code, § 6128, subd. (a).) Thus, a person may be prosecuted for a misdemeanor for reporting to a peace officer, deputy attorney general, district attorney, or other specified official "that a felony or misdemeanor has been committed, knowing the report to be false." (Pen. Code, § 148.5, subd. (a).)   Further, the litigation privilege will not shield you from a malicious prosecution action that would be immediately filed upon successful conclusion of any lawsuit against me or others based upon the false accusations that I made an *ex parte* communication to Judge Moss.

Be that as it may, **you are hereby being placed on notice** that your letter clearly establishes that you do not have reasonable, probable cause to believe the accusations are true.  The accusations contained in your letter are not in good faith, there is no logical connection with what transpired and the almost paranoid belief that an *ex parte* communication occurred with Judge Moss, and your accusations are nothing other than another attempt to extract money from Palm Beach Park Association to settle meritless claims made by you.

Lest there be any misunderstanding about what I am telling you, you well know that Palm Beach Park Association can only appear in court through counsel. Thus, even though you couch your letter with accusations against "Saunders, PBPA and Fidelity", it is quite clear that you are accusing Cary Wood and myself of making an *ex parte* communication or we are the persons who you claim were informed of such a communication.  Your accusations are false:  *I have never had an ex parte communication with Judge Moss as you describe in your letter or at any other time during the pendency of the lawsuits filed by you and your clients.*  Let me repeat myself.  *I did not contact, communicate, or otherwise have any ex parte communications with Judge Moss during the time described in your letter or at any other time.  I also have never been informed by anyone, be it an attorney, party, officer, or third party that they had any such ex parte communications with Judge Moss.*  In short, the accusations made by you in your letter dated March 23, 2016, are false. They are libelous per se because they accuse me and others of a crime and unethical conduct.

In your letter, you make reference to your "thorough investigation", "fact and evidence analysis", and "other investigation and information" to apparently support your accusations.  You are requested within 72 hours to provide me with the documents, facts, and evidence to support your accusations. I will consider any refusal or failure on your part to furnish me with said evidence a gross admission by you and your clients that you have no evidence to prove any of your accusations.

Patrick J. Evans, Esq.
March 25, 2016
Page 5

Your letter was obviously written to send to government agencies no doubt to attempt to gain an unfair civil advantage in the ongoing litigation between our clients. Even if you could claim a litigation privilege as to communicating your letter to the persons to whom it is addressed, the litigation privilege does not afford you any protection for republication to nonparticipants of the litigation. As such, I am requesting that you immediately identify to me the agencies and/or governmental entities to whom you have transmitted your letter. I am further requesting that you inform your clients that they are not to publish your letter to any agency, governmental entity, or person as the statements in your letter are false and malicious.

Lastly, I am requesting a retraction within five days of the false accusations contained in your letter. I also expect the retraction to be communicated to all parties, agencies, and/or third parties to whom you have published your March 23, 2016, letter and provide me with written verification of such. Even though you have engaged in mean spirited, bombastic letters in the past, this time you have out done yourself and gone too far. You have exceeded all bounds of common decency. You are now on notice that any lawsuit filed naming me, my firm, Allan Weiss's firm, Palm Beach Park Association, Diana Mantelli, John Saunders, or anyone else under the claim that we conspired to make an *ex parte* communication to Judge Moss will be met with a counter suit against you and your clients for libel and we will further assert various other causes of action including civil rights violations and a RICO claim.

Very truly yours,

Allen L. Thomas

ALT:dh

cc: Cary Wood, Esq.
    J. John Anderholt, Esq.
    Tom Dias, Esq.
    Mark B. Wilson, Esq.

# Law Office Of Patrick J. Evans

**16897 Algonquin Street, Suite F**
**Huntington Beach, CA 92649**
**Tel.: (714) 594 – 5722; Fax: (714) 840 – 6861**
**E-mail: pevans@pevanslawoffice.com**

March 29, 2016

**JOHN R. SAUNDERS**                                      *BY EMAIL [Addresses]*
**SAUNDERS PROPERTY COMPANY**
**ICC 35902 LLC AND 3197 REDHILL LLC**
c/o Attorneys Indicated as their Counsel at relevant time period July 2015 – January 2016:
(Current counsel for Mr. Saunders [post events] copied as "cc", see last page)

| | | |
|---|---|---|
| Edward Susolik | Robert S. Coldren | Lisa G. Salisbury |
| Peter S. Bauman | Coldren Law Offices, APLC | Salisbury Law Group, APLC |
| Callahan & Blaine | 3 Hutton Centre Dr. Ste. 900 | 3720 S Susan St. Ste. 110 |
| 3 Hutton Centre Drive, 9th Fl. | Santa Ana, CA 92707 | Santa Ana, CA 92704 |
| Santa Ana, CA  92707 | [rcoldren@coldrenlawoffices.com] | [lsalisbury@slg.tc] |
| [ES@callahan-law.com] | | |
| [pbauman@callahan-law.com] | | |

**PALM BEACH PARK ASSOCIATION** c/o its counsel

| | |
|---|---|
| Cary L. Wood and Domineh Fazel | J. John Anderholt III |
| Lewis Brisbois Bisgaard & Smith, LLP | Anderholt Whittaker |
| 633 West 5th St., Suite 4000 | 73-525 El Paseo Drive, Suite E2516 |
| Los Angeles, CA 90071 | Palm Desert, CA 92260 |
| [woodc@lbbslaw.com] | [john@anderholtwhittaker.com] |
| [domineh.fazel@lewisbrisbois.com] | |

| | |
|---|---|
| Allen L. Thomas, Allan B. Weiss and Sivi Pederson, | Jeffry A. Miller and Arezoo Jamshidi |
| Thomas Law Firm Inc. & Allan B. Weiss & Assoc. | Lewis Brisbois Bisgaard & Smith, LLP |
| 5001 Airport Plaza Drive, Suite 240 | 701 B.  St., Suite 1900 |
| Long Beach, CA 90815 | San Diego, CA 92101 |
| [thomaslawfirm@aol.com; allan@weisslawassociates.com | [Jeff.Miller@lewisbrisbois.com] |
| sivi@weisslawassociates.com] | [Arezoo.Jamshidi@lewisbrisbois.com] |

**CHICAGO TITLE COMPANY AND FIDELITY NATIONAL TITLE COMPANY** c/o counsel

Thomas E. Dias
Fidelity National Law Group
915 Wilshire Blvd., Ste. 2100
Los Angeles, CA  90017
[Tom.Dias@fnf.com]

Re: ***Ole Haugen  vs. Palm Beach Park Association,***  **#30-2015-00819837; NOTICE OF SAUNDERS,**
     **PBPA AND FIDELITY ADOPTIVE ADMISSION TO ACCUSATION OF OBSTRUCTION**
     **OF JUSTICE, PENAL CODE §182; REQUEST FOR RESPONSE FROM THEIR COUNSEL**

Dear Counsel:

Saunders, PBPA and Fidelity and their counsel (counsel specified on first page)
Re: Saunders, PBPA and Fidelity Adoptive Admission of Accusation of Obstruction of Justice, P. C. §182;
Request for Response from their Counsel
March 29, 2016
Page 2

This letter and its notices and request, are directed to the following entities and counsel for the
following entities, with such counsel being specifically identified on the first page hereof:

**John R. Saunders, Saunders Property Company, ICC 35902 LLC, and 3197 Redhill LLC**,
in care of attorneys who indicated they represented one or more of these parties (collectively
"Saunders") in the time frame July 2015 – January 2016.  [Please note that this letter is copied
to Mr. Saunders' current attorney, Mark B. Wilson.  We are informed that Mr. Wilson started
Ms. Saunders' representation recently, weeks after the facts and events at issue.]

**Palm Beach Park Association** ("PBPA"), in care of its counsel of record in pending litigation.

**Chicago Title Insurance Company and Fidelity National Title Insurance Co.** (collectively
"Fidelity"), in care of its in-house attorney.

Please be reminded that I am counsel to Plaintiff Ole Haugen in this case *Haugen v. PBPA* 30-2015-
00819837 (filed 11/12/15; dismissed without prejudice 3/3/16) to Plaintiffs in the consolidated action
*Chodosh v. PBPA* 30-2010-00423544 (filed 2010), and to other interested parties.

On March 23, 2016 Saunders, PBPA and Fidelity received our letter and its attachments concerning
Plaintiffs' assertion of probable cause to allege obstruction of justice, violations of Penal Code §182,
arising from alleged improper ex parte contact with Hon. Robert J. Moss resulting in Judge Moss
having purported to grant a PBPA objection to Plaintiff Ole Haugen's C.C.P. 170.6 challenge in *Ole
Haugen v. PBPA*.

The March 23 letter requested that the Saunders, PBPA and Fidelity entities respond, including any
denial or refutation, by 5:00 p.m. on Monday, March 28, 2016.   They did not respond.

Please be advised that, for failure to deny the serious accusation of probable cause to believe they
committed the crime of conspiracy to obstruct justice, that Plaintiffs contend each and all of <u>Saunders,
PBPA and Fidelity, the legal entities as defined herein, have adoptively admitted their commission of
the crime of conspiracy to obstruct justice</u>.

In the context of accusations of crime or probable cause to believe the accused committed a crime, the
failure of the accused to deny can be an adoptive admission. Evid. Code §413.  See, *Salinas v. Texas*
570 U.S. __, 133 S. Ct. 2174 (2013), *People v. Tom* (2014) 59 Cal. 4th 1210 (Defendant's silence as
evidence of guilt).  In *People v. Riel* (2000) 22 Cal. 4th 1153, 1187-1189, the California Supreme Court
held that a failure to deny when a "reasonable person would speak out" is an adoptive admission.   By
not denying the charge of probable cause to believe they committed and conspired to commit
conspiracy to obstruct justice, we contend the specified legal entities defined above as Saunders, PBPA
and Fidelity, have adoptively admitted to conspiracy to obstruct justice, violation of P.C. §182.

Saunders, PBPA and Fidelity and their counsel (counsel specified on first page)
Re: Saunders, PBPA and Fidelity Adoptive Admission of Accusation of Obstruction of Justice, P. C. §182;
Request for Response from their Counsel
March 29, 2016
Page 3

While the legal entities Saunders, PBPA and Fidelity did not deny the charge of probable cause to believe they committed the crime, and we contend therefore have adoptively admitted to the charges, purported PBPA attorney Allen Thomas[1] sent a letter dated March 25, 2016 in which he denied the accusation as to himself personally and no one else.   (Copy of letter attached)[2]

Mr. Thomas correctly points out that PBPA, as a corporation, can only appear in court through counsel.[3]  However, his denial is not made for or on behalf of PBPA, but only as to himself personally. In any event, Plaintiffs contend that he and his colleagues never had and do not have any authority or right to act for PBPA.  (See footnote 1)

In that Mr. Thomas, for himself as an attorney, saw fit to deny the accusation of probable cause to believe that he personally engaged in conspiracy for obstruction of justice, we believe it appropriate to

---

[1] Please note that Plaintiffs have stated and maintained throughout the *Chodosh* and related litigation that Mr. Thomas, his colleagues Mr. Allan Weiss, and Ms. Sivi Pederson, and their firms, Allan B. Weiss & Associates and the Thomas Law Firm, do not and have never represented PBPA. Individual directors J. Wiley et al., sued by PBPA member Ole Haugen as derivative plaintiff in the action *Haugen v. Wiley*, et al. 30-2010-00432259, retained such counsel in 2011.  Later as of Sept. 2012 such counsel purported to represent PBPA, filing on its behalf a cross complaint, even though doing so made them adverse to their original clients J. Wiley et al.  By representing the former Board and PBPA they represented both sides in the same litigation.  The record shows that (i) such counsel never obtained a conflict waiver, assuming but not conceding that such waiver would remedy the conflict and (ii) that counsel takes the position there was no conflict such that they could represent derivative action defendants J. Wiley et al. and at the same time represent PBPA.   For convenience, in this and other correspondence and in pleadings, such counsel are referred to as counsel to PBPA. However, Plaintiffs have previously stated and asserted in many pleadings and in open court, and hereby repeat, that it has always been and remains their position that Mr. Thomas and colleagues have not and do not effectively and actually represent PBPA due to fatal conflicts of interest that they refuse to acknowledge, must less rectify by ceasing the representation and withdrawing from the litigation. Plaintiffs' position has been asserted and preserved in numerous times.  For the record, Plaintiffs' objection to such counsel purporting to act or contending they act for PBPA is repeated and reaffirmed.

[2] Plaintiffs do not respond to the self-serving and misguided factual inaccuracies and misstatements of law set forth in Mr. Thomas' letter, but may do so in the near future if necessary or appropriate.  Except for the letter's communication of Mr. Thomas' denial for himself personally, (letter page 1, lines 4-6 and pg. 4, *italics*) and the correct statement that PBPA must appear in court through counsel, Plaintiffs dispute and refute and deny everything Mr. Thomas' letter states or asserts.

[3] Mr. Thomas states: ". . . you well know that Palm Beach Park Association can only appear in court through counsel." (pg. 4, 4th paragraph, 1st sentence)

Saunders, PBPA and Fidelity and their counsel (counsel specified on first page)
Re: Saunders, PBPA and Fidelity Adoptive Admission of Accusation of Obstruction of Justice, P. C. §182;
Request for Response from their Counsel
March 29, 2016
<u>Page 4</u>

afford the same opportunity to deny to other counsel for PBPA and to counsel for Saunders and Fidelity.  While the legal entities have already adoptively admitted to conspiracy to obstruct justice, and while we contend it could be argued that their counsel also adoptively admitted for failure to deny, for clarification and to establish the record Plaintiffs believe that such entities' counsel, identified on the first page of this letter, and subject to the footnotes 1 and 3 caveats, should be afforded the right and opportunity to deny the charge of probable cause to believe that such counsel engaged in conspiracy to obstruct justice as described in the March 23, 2016 letter and its attachments and the March 24 letter.

Mr. Thomas' putative PBPA counsel colleagues, together with Mr. Wood, Ms. Fazel, Mr. Miller, Ms. Jamshidi and Mr. Anderholt (whose status as counsel to PBPA Plaintiffs do not challenge) must keep in mind that the PBPA Opposition to the TRO which PBPA attorney Ms. Fazel filed and served on 12/21/15, which was returned to her in her altered state and through her to all PBPA counsel, was an ex parte communication from Judge Moss.  The filed Opposition included handwritten changes that purported (i) to reflect removal of the case from Hon. G. Andler and reassignment of it to already 170.6 disqualified Hon. R. Moss; (ii) to change the hearing from court dept. CX 101 to CX 102 and (iii) to grant continuance of hearing date from 12/22 to 12/28.  Court Clerk return of the altered documents to PBPA counsel constituted an ex parte communication from Judge Moss to PBPA counsel.  My letter of March 24, 2016 to Ms. Fazel and Mr. Wood, copied to other counsel, provides detail and documents about this improper ex parte communication between Judge Moss and PBPA.  It should be noted that Ms. Fazel and Mr. Wood have not refuted or denied the content and charges of the March 24, 2016 letter, which we take as another adoptive admission.  Meanwhile, they have refused to indicate when, on Dec. 21, they received the Opposition with the court's changes and to provide the email with Notice of Confirmation of Filing.  We have renewed our request for the information and Notice.

Therefore, when Mr. Thomas says in his letter that "*I have <u>never</u> had an ex parte communication with Judge Moss . .*" (pg. 4, 4th par. underline added) such statement is false because through his co-counsel to PBPA, who he asserts to represent along with his colleagues and Mr. Wood, Ms. Fazel, et al., there was an ex parte communication when Judge Moss caused the PBPA Opposition to the ex parte TRO application to be modified on 12/21 and communicated only to PBPA through its counsel.

Apart from such ex parte communication, established by the court record and not denied by Saunders, PBPA or Fidelity, Plaintiffs request that each of Mr. Weiss, Ms. Pederson, Mr. Wood, Ms. Fazel, Mr. Miller and Ms. Jamshidi assert and state, if they can, denial of having committed or participated in any other ex parte communication or act that was part of the alleged conspiracy to obstruct justice.

Similarly, Plaintiffs request that each of Edward Susolik, Peter Bauman, Robert Coldren, Lisa Salisbury, counsel to Saunders, and Tom Dias, counsel to Fidelity, state and assert their denial, if they can, as to any involvement or participation in the alleged conspiracy to obstruct justice as described in the March 23, 2016 letter and its attachments and the follow up March 24 letter.

Saunders, PBPA and Fidelity and their counsel (counsel specified on first page)
Re: Saunders, PBPA and Fidelity Adoptive Admission of Accusation of Obstruction of Justice, P. C. §182;
Request for Response from their Counsel
March 29, 2016
Page 5


Plaintiffs request that each of such counsel for Saunders, PBPA and Fidelity respond (a) individually as to each of them; and (b) provide any explanation or facts that they believe indicate they or any of them did not participate in a conspiracy to obstruct justice under Penal Code §182 as described in the March 23, 2016 letter and its attachments and our letter dated March 24.

We would appreciate any and all explanation or clarification or denial or documents that counsel to Saunders, PBPA, Fidelity or any of them care to provide.

Moreover, in general, if there are facts or documents that Saunders, PBPA, Fidelity or their counsel or any of them believe would diminish or counter the probable cause we believe we reasonably perceive of conspiracy to obstruct justice, please apprise and provide us with such information and documents.

Plaintiffs request the courtesy of receiving any denial, refutation, comment or documents within three (3) days, i.e. on or before this Friday, April 1, 2016 at 5:00 p.m.


Sincerely,


PATRICK J. EVANS


Attachment:  PBPA Counsel Allen L. Thomas' letter dated March 25, 2016 to Patrick J Evans

cc.  (Sent separately; with attachment, by email)

　　　Current Counsel to John R. Saunders:

　　　Mark B. Wilson
　　　Klein Wilson
　　　4770 Von Karman Avenue
　　　Newport Beach, CA 90071
　　　[wilson@kleinandwilson.com]


　　　*Chodosh* Plaintiffs (w/ attachment), including Ole Haugen

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: 213.250.1800
Fax: 213.250.7900
www.lewisbrisbois.com

**CARY L. WOOD**
DIRECT DIAL: 213.680.5101
CARY.WOOD@LEWISBRISBOIS.COM

April 6, 2016

File No.
50013.905

Via U.S. Mail/E-Mail pevans@pevanslawoffice.com

Patrick J. Evans, Esq.
Law Offices of Patrick J. Evans
16897 Algonquin Street, Suite F
Huntington Beach, CA 92649

      Re:   Ole Haugen vs. Palm Beach Park Association

Dear Mr. Evans:

      We are in receipt of your March 24, 2016 letter wherein you accused our office of having improper ex parte communications with Honorable Judge Moss. We deny each and every accusation in your letter. No one from our office has had any ex parte communications with Honorable Judge Moss.

                        Very truly yours,

                        /s/ Cary L. Wood

                        Cary L. Wood of
                        LEWIS BRISBOIS BISGAARD & SMITH LLP

CLW/

cc:   Allen L. Thomas, Esq. (Via E-Mail Only thomaslawfirm@aol.com)
      Mark B. Wilson, Esq.(Via E-Mail Only Wilson@kleinandwilson.com)
      J. John Anderholt III, Esq.(Via E-Mail Only john@anderholtwhittaker.com)
      Thomas E. Dias, Esq. (Via E-Mail Only tom.dias@fnf.com)
      Domineh Fazel, Esq.

4812-7371-7808.1

# EXHIBIT F

# Law Office Of Patrick J. Evans

**16897 Algonquin Street, Suite F**
**Huntington Beach, CA 92649**
**Tel.: (714) 594 – 5722; Fax: (714) 840 – 6861**
**E-mail: pevans@pevanslawoffice.com**

April 26, 2016

**DELIVERED TO DEPT. C01**

**Honorable Charles Margines**
**Presiding Judge**
**Orange County Superior Court, Dept. C01**
700 Civic Center Drive West
Santa Ana, California 92701

Re:  **STATEMENTS OF DISQUALIFICATION AND COMPLAINT**
   **AGAINST ORANGE COUNTY SUPERIOR COURT JUDGE**
   **THE HONORABLE ROBERT J. MOSS, ARISING IN THE CASE:**
   *Ole Haugen  vs. Palm Beach Park Assoc.*, #30-2015-00819837
   **and related cases; WILLFUL JUDICIAL MISCONDUCT - TAKING**
   **<u>BACK CASE ON WHICH JUDGE WAS DISQUALIFIED</u>**

To:    The Honorable Charles Margines,
        Presiding Judge, Orange County Superior Court:

I represent Floyd Chodosh and others in several cases concerning the Palm Beach Mobilehome Park.   Hon. Nancy Wieben Stock (Ret.) was the trial judge through 2013.  Honorable Robert J. Moss took over the cases January 2014.  We write to make you aware of our complaint against Honorable Robert J. Moss.

On Friday, April 22, 2016, we filed Statements of Disqualification, Memorandum of Points and Authorities and Requests for Judicial Notice.   Accompanying this letter is a small 3 ring binder with the Statements and Statement Appendix of Exhibits and Memorandum (and copy of proof of service).   The Requests for Judicial Notice are in three large binders.  Judge Moss was served yesterday.

.

Letter to OCSC Presiding Judge, Hon. Charles Margines
April 26, 2016
<u>Page 2</u>

On Nov. 12, 2015 Ole Haugen filed suit to stop his HOA from selling the "seniors only" mobilehome park where he lives.  He contends the sale arranged by the Board President was void for having fiduciary breach, fraud and self-dealing.  The Park is about 13.5 acres of valuable coastal property in Orange County.

The case was initially assigned to Judge Randall Sherman.   On Nov. 16, 2015 Judge Sherman reassigned the case to Judge Moss as a related case to the Palm Beach Park litigation.  Mr. Haugen filed a 170.6 challenge against Judge Moss.

On Nov. 30, 2015 your Honor the Presiding Judge granted Plaintiff Ole Haugen's 170.6 peremptory challenge and reassigned the case.  (Dept. C01, 11/30/15 Minute Order, copy attached, one page).

On Dec. 21, 2015, Mr. Haugen filed for a TRO to stop the sale of the Palm Beach seniors only mobilehome park ("Park"). The HOA seller and buyer had scheduled to close the sale on Dec. 22, 2015.  The TRO application, filed Dec. 21, threatened the closing.

On Dec. 21-22, Judge Moss, who was on vacation (App. Exh. B, pg. P pg. 141, lines 23-26), called in to the court and intervened in the *Haugen* case; a case where the Presiding Judge had ruled he was disqualified.

Acting through his clerk, Judge Moss took back and took over the *Haugen* case. On Dec. 22, 2015 he entered two (2) Minute Orders.  The first Order continued the TRO hearing to Monday 12/28 in his courtroom. (Ent. 12/22 9:00 a.m.).

In the second Minute Order, Judge Moss purported to grant an objection (filed 12/1) to the 170.6 (filed 11/25, granted 11/30) to strike the 170.6 and place himself back on the *Haugen* case.  (Ent. 12/22, 9:29 a.m., copy attached).  Also, Judge Moss, or someone acting at his direction, on Dec. 21, caused the filing clerk to alter pleading cover pages to move the TRO hearing to Judge Moss' courtroom and to continue the hearing to 12/28.  (Appendix of Exhibits C, D, E)

Four hours after Judge Moss' 12/22 9:29 a.m. Minute Order (copy attached) that put him back on the case, the Park sale closed.  The Grant Deed recorded 12/22/15 at 1:18 p.m.  (Copy of Deed face sheet attached)

Letter to OCSC Presiding Judge, Hon. Charles Margines
April 26, 2016
Page 3

On Dec. 1, 2015 Judge Moss admitted on the record that he was disqualified in the *Haugen* case. (App. Exh. B, pg. 24, lines 18-19, pg. 25, lines 23-26). Three (3) weeks later, on Dec. 22, he took back the *Haugen* case. (12/22 9:29 a.m. Minute Order attached) We contend his action was unlawful and willful judicial misconduct under cited California Supreme Court cases.

The Presiding Judge has the "ultimate authority to make judicial assignments", . . . including assigning and reassigning cases. (CRC, Rule 10.603, subd. (b) &(c)) Judge Moss had no power or authority to override your Honor's 11/30/15 Minute Order (copy attached) that granted Mr. Haugen's 170.6.

On the authority of Calif. Judges Association Op. No. 64 (2009) and Canons 3D(1) and 3(c)(3) et al., we submit this matter to you as Presiding Judge for investigation.

Sincerely,

PATRICK J. EVANS

Attached:  11/30 and 12/22/15 Minute Orders, 1st page of Grant Deed 12/22/15
Encl.:  Four (4) 3 ring binders, one small binder and 3 large binders

cc.  (By email, with attachments, w/o encls.)

Palm Beach Park Cases' Opposing Counsel:

Allen Thomas
Allan Weiss
Sivi Pederson
Cary Wood
Domineh Fazel

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 11/30/2015                    TIME: 03:03:00 PM          DEPT: C01

JUDICIAL OFFICER PRESIDING: Supervising Judge Charles Margines
CLERK: L. Labrador
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT:

CASE NO: **30-2015-00819837-CU-BC-CXC** CASE INIT DATE: 11/12/2015
CASE TITLE: **Haugen vs. Palm Beach Park Association**
CASE CATEGORY: Civil - Unlimited          CASE TYPE: Breach of Contract/Warranty

EVENT ID/DOCUMENT ID: 72275651
**EVENT TYPE**: Chambers Work

**APPEARANCES**

There are no appearances by any party.

A Peremptory Challenge under C.C.P.§170.6 as to the Honorable Robert J. Moss having been filed on 11/25/15, by Plaintiff, and this matter having been transferred to C1 for reassignment, the Court now rules as follows:

This case is reassigned to the Honorable Gail A. Andler in Department CX101 for all purposes.

Counsel to contact clerk in Department CX101 within 15 days of receipt of this order to reschedule any pending hearings.

The Court determines that for purposes of exercising C.C.P.§170.6 rights, there are two sides to this matter unless the contrary is brought to the attention of the Court, by Ex-Parte motion. Counsel has 15 days from the date of the enclosed certificate of mailing in which to exercise any rights under C.C.P.§170.6.

Court orders Clerk to give notice. Plaintiff to give notice to any parties not listed and to file proof of service with the court within 10 days.

DATE: 11/30/2015                    MINUTE ORDER                              Page 1
DEPT: C01                                                                Calendar No.

404

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CIVIL COMPLEX CENTER**

**MINUTE ORDER**

DATE: 12/22/2015          TIME: 09:29:00 AM          DEPT: CX102

JUDICIAL OFFICER PRESIDING: Robert J. Moss
CLERK: Betsy Zuanich
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT: None

CASE NO: **30-2015-00819837-CU-BC-CXC** CASE INIT DATE: 11/12/2015
CASE TITLE: **Haugen vs. Palm Beach Park Association**
CASE CATEGORY: Civil - Unlimited          CASE TYPE: Breach of Contract/Warranty

EVENT ID/DOCUMENT ID: 72288789
**EVENT TYPE**: Chambers Work

**APPEARANCES**

There are no appearances by any party.

Peremptory Challenge pursuant to C.C.P. §170.6 was filed by Plaintiff on 11/25/15, as to the Hon. Robert J. Moss.

Matter was referred to Dept. C1 and case was reassigned to the Hon. Gail A. Andler in Department CX101.

Defendant's Objection to the 170.6 against Judge Moss was filed on 12/01/15.

The Court, having read and considered the objection, now rules as follows:

Defendant's objection is granted.

Peremptory challenge is stricken.

Clerk to give e-Service notice to counsel.

DATE: 12/22/2015                    MINUTE ORDER                    Page 1
DEPT: CX102                                                         Calendar No.

850

F
184

Branch :A14.User :BHAR                     Comment:                          Station Id :RWF1

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

**RECORDING REQUESTED BY**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 18.00
* $ R 0 0 0 8 0 4 2 6 9 6 5 *

**AND WHEN RECORDED MAIL TO:**

2015000644197 1:18 pm 12/22/15

ICC 35902 LLC and 3187 Redhill LLC
4040 MacArthur Boulevard, Suite 300
Newport Beach, CA 92660

65 405 G02   5 10
20350.00 20350.00 0.00 0.00 12.00 0.00 0.00 0.00

Title and Escrow No. 23057972
Parcel No.(s):
691-311-14, 691-341-02, 691-341-03

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**GRANT DEED**

THE UNDERSIGNED GRANTOR(s) DECLARE(s)             Documentary Transfer Tax is $40,700.00
☐ unincorporated area                            ☑ computed on full value of interest or property conveyed, or
☑ the city of San Clemente                       ☐ full value less value of liens or encumbrances remaining at the
                                                   time of sale

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**PALM BEACH PARK ASSOCIATION, a California Nonprofit Mutual Benefit Corporation**

hereby GRANT(s) to

**ICC 35902 LLC, a Delaware limited liability company, as to an undivided 26% tenancy-in-common interest, and**

**3187 Redhill LLC, a Delaware limited liability company, as to an undivided 74% tenancy-in-common interest**

the following real property in the County of Orange, State of California:

**Legal Description attached hereto as Exhibit "A" and made a part hereof.**

MAIL TAX STATEMENTS AS DIRECTED ABOVE

Page 1 of 2
gGRANTDEE (DSI Rev. 11/03/14)

ORANGE,CA                          Page 1 of 5                    Printed on 1/13/2016 1:40:09 PM
Document: DD 2015.644197

1212

# EXHIBIT
# G

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CIVIL COMPLEX LITIGATION CENTER

**APR 29 2016**

ALAN CARLSON, Clerk of the Court

BY _B ZUANICH_

1
2
3
4
5
6
7         SUPERIOR COURT OF THE STATE OF CALIFORNIA
8         COUNTY OF ORANGE – CENTRAL JUSTICE CENTER
9

| | |
|---|---|
| IN RE: | **LEAD CASE NO.** |
| | **30-2010-00423544** |
| PALM BEACH PARK ASSOCIATION CASES: | **Consolidated With Case Nos.:** |
| LEAD CASE: | 30-2010-00423807 |
| | 30-2010-00425213 |
| FLOYD M. CHODOSH, ETC., ET AL. | 30-2010-00425173 |
| | 30-2010-00425206 |
| Plaintiffs, | 30-2010-00432261 |
| | 30-2010-00425323 |
| v. | 30-2010-00425331 |
| | 30-2010-00425291 |
| PALM BEACH PARK ASSOCIATION, | |
| ET AL. | **ORDER STRIKING** |
| | **STATEMENT OF** |
| Defendants. | **DISQUALIFICATION AND, IN** |
| | **THE ALTERNATIVE, VERIFIED** |
| | **ANSWER OF** |
| | **JUDGE ROBERT J. MOSS** |

On April 22, 2016, Patrick J. Evans, counsel for plaintiffs Floyd M. Chodosh et al.

filed a Statement of Disqualification asserting the following:

(A) On December 22, 2015, the Court reassumed jurisdiction of a related case,

*Haugen v. Palm Beach Park Association* (OCSC Case No. 30-2015-00819837),

by sustaining defendant's objection to plaintiff's peremptory challenge;

-1-

ORDER STRIKING STATEMENT OF DISQUALIFICATION
AND, IN THE ALTERNATIVE, VERIFIED ANSWER

## VERIFIED ANSWER OF JUDGE ROBERT J. MOSS

I, Robert J. Moss, declare as follows:

1.      I am a Judge of the Superior Court of California, County of Orange. If called upon as a witness, I could and would competently testify to the matters stated herein.

2.      The judicially noticeable case file reflects that the lead case, *Chodosh vs. Palm Beach Park Association* (OCSC Case No. 30-2010-00423544 ) was filed on December 13, 2010. In early 2011 it was consolidated with the other Palm Beach Cases including:

      a.  *Eicherly vs. Palm Beach Park Association* 30-2010-00423807

      b.  *Harris vs. Palm Beach Park Association* 30-2010-00425213

      c.  *Schowalter vs. Palm Beach Park Association*    30-2010-00425173

      d.  *Moore vs. Palm Beach Park Association* 30-2010-00425206

      e.  *McLaughlin vs. Palm Beach Park Association* 30-2010-00432261

      f.  *Peterson vs. Palm Beach Park Association* 30-2010-00425323

      g.  *Kane vs. Palm Beach Park Association* 30-2010-00425331

      h.  *Haugen vs. Palm Beach Park Association* 30-2010-00425291

3.      These consolidated cases were tried in four phases. Phase I was tried as a bench trial before the Honorable Nancy Wieben Stock in 2013. Judge Stock subsequently retired, and these consolidated cases were assigned to me on January 6, 2014. Since then, I have presided over the final three phases. I presided over Phase II commencing on September 22, 2014, and Phase III commencing on April 13, 2015. I presided over a bench trial of Phase IV between December 7, 2015 and December 15, 2015. I took the matter under submission and issued a tentative ruling on February 18, 2016. I issued a written statement of decision on March 30, 2016. Judgment was entered on the consolidated cases

-7-

ORDER STRIKING STATEMENT OF DISQUALIFICATION
AND, IN THE ALTERNATIVE, VERIFIED ANSWER

1  on April 14, 2016.

2      4.    On April 25, 2016, Attorney for Plaintiffs filed a Statement of Disqualification

3  contending that I should be disqualified based on the following allegations:

4         a.  On December 22, 2015, I reassumed jurisdiction of a related case,

5             *Haugen v. Palm Beach Park Association* (OCSC Case No. 30-2015-

6             00819837), by sustaining Defendant's objection to Plaintiff's peremptory

7

8             challenge;

9         b.  My rulings and decisions in these consolidated proceedings have been

10            based on bias or a person aware of the facts might reasonably entertain a

11            doubt that I am biased;

12        c.  I criticized Plaintiffs' counsel in a tentative ruling, and commented on

13            Plaintiffs' possibility of success on an issue or possibility of settlement.

14

15     5.    I specifically deny that I am biased or prejudiced for or against any attorney or

16 party in these consolidated proceedings or in *Haugen*. I specifically deny that any of my rulings

17 have been based on bias or prejudice. I am not prejudiced or biased against or in favor of

18 any attorney party in these proceeding actions, nor am I unable to act impartially. I have no

19 personal interest in these proceedings and know of no reason why I cannot be fair and

20 impartial.

21

22     6.    Plaintiff dismissed the *Haugen* case on March 9, 2016. I specifically deny that I

23 engaged in any *ex parte* contacts in the *Haugen* case. I further deny that I interjected myself

24 into that suit or took any unauthorized action in that proceeding in order to frustrate plaintiffs'

25 success. Rather, I reassumed jurisdiction in *Haugen* after sustaining the defendant's

26 objection to plaintiff's peremptory challenge. The objection established that the peremptory

27 challenge had been untimely asserted. The numbering of the Register of Actions reflects the

28

-8-

ORDER STRIKING STATEMENT OF DISQUALIFICATION
AND, IN THE ALTERNATIVE, VERIFIED ANSWER

1   correct order in which documents were filed in the *Haugen* case. With respect to the filing

2   times listed in the Register of Actions, I do not believe all of them are accurate. As far as I

3   am aware, no issue concerning my jurisdiction or the propriety of my presiding over the

4   proceedings in *Haugen* was raised until after plaintiff dismissed the case.

5

6       7.    I specifically deny that I have acted improperly in *Haugen* or in these

7   proceedings. All statements made, all actions taken, and all of my rulings have been based

8   on my understanding of the facts and law, and have been in furtherance of what I believe to be

9   my judicial duties.

10      8.    I do not believe that my recusal would serve the interests of justice.

11      9.    I know of no facts or circumstances which would require my disqualification or

12   recusal in this case.

13   I declare under penalty of perjury that the foregoing is true and correct. Executed on

14   April 29 , 2016, at Santa Ana, California.

15

16

17                                          Judge Robert J. Moss

18

19

20

21

22

23

24

25

26

27

28

-8-

ORDER STRIKING STATEMENT OF DISQUALIFICATION
AND, IN THE ALTERNATIVE, VERIFIED ANSWER

# EXHIBIT
# H

**From:** Patrick Evans
**Sent:** Monday, December 21, 2015 3:28 PM
**To:** 'Ed Susolik' <ES@callahan-law.com>
**Subject:** FW: Notice of Claims and Contentions re: Fiduciary Wrongdoing in PBPA Saunders Sale

Dec. 21, 2015

Hello Ed,

RE: <u>Palm Beach Park – the "Saunders Sale" – Product of Fiduciary
Wrongdoing, etc.</u>

I understand that you are counsel to Mr. John Saunders. If that is not so,
please advise immediately.

With this email and attachment sent to your attention, Mr. Saunders and his
company and affiliates are on notice of my clients' view and position.

The Saunders sale is the product of fiduciary wrongdoing and self-dealing. It is
invalid and cannot proceed, both for the reasons stated in the attached
pleading, the complaint filed in this action, and other reasons.

All parties responsible for Palm Beach Park fiduciary wrongdoing or who have
assisted or participated in the wrongdoing will be held accountable for all loss
and damage.

Please advise Mr. Saunders that if he and his lender(s), and the 18 or so PBP
residents who are "investing" with him in the Park purchase, close the
transaction, that I expect they will lose their money paid for the Park, (around
$30,000,000). It will be difficult if not impossible to recover the money once it
is distributed to the elders at the Park. I believe these elders have offsets and
claims against Mr. Saunders, et al. At the same time, I believe that Mr.
Saunders and culpable parties will be sued for damages, including punitive
damages if appropriate based on level of knowledge and culpability.

This is my assessment of the situation, based on fact, evidence and law. If you
disagree, please feel free to let me know and provide the how and why.

Thank you for your attention to these matters.

Sincerely,

Patrick Evans
For Plaintiff Ole Haugen, et al.

1

**From:** Patrick Evans
**Sent:** Monday, December 21, 2015 3:15 PM
**To:** 'Dias, Tom' <Tom.Dias@fnf.com>
**Cc:** Broersma, Kevin <Kevin.Broersma@fnf.com>
**Subject:** Notice of Claims and Contentions re: Fiduciary Wrongdoing in PBPA Saunders Sale

Dec. 21, 2015

Thomas Dias
Fidelity Financial Law Group
Fidelity Financial
Chicago Title Insurance Company


Thrivent Financial for Lutherans
c/o  Thomas Dias, its counsel

RE:   *Ole Haugen v. Palm Beach Park Assoc.* 30-2015-00819837 – Ex Parte for
       TRO – Fiduciary Wrongdoing; Self-Dealing
       <u>NOTICE THAT SAUNDERS SALE IS WRONGFUL AND UNLAWFUL</u>

Dear Mr. Dias,

I write to you in your capacity as counsel to Fidelity and Chicago Title Insurance
Companies and their affiliates, and as counsel to Thrivent Financial for Lutherans
in the related litigation, *F. Chodosh v. Palm Beach Park Association* 30-2010-
00423544.

Attached is Mr. Haugen's Application for Temporary Restraining Order and Order
to Show Cause which seeks to enjoin and stop the "Saunders Sale", i.e. stop Palm
Beach Park Association ("PBPA") from selling the Park to Mr. John Saunders, his
company or affiliate.

As I mentioned to you at court on Dec. 16, 2015, I find it odd and troubling that
Chicago Title / Fidelity and Thrivent apparently, or so it appears thus far,
cooperate with the Saunders Sale, and it appears take action to assist and further
the Saunders Sale.

2

We understand that Chicago Title would like to extricate Thrivent and itself from the Palm Beach Park litigation morass.  It appears that they hope to do so by placing the cost of the Palm Beach Park real estate debacle on the backs of the elderly people in the Park, and that they chose the Saunders Sale as the newest mechanism to achieve the goal of making the elderly residents pay rather than the parties responsible for the wrongdoing, and their insurers.

Please be advised that, as detailed by the attached application and the complaint in this action, and as will be shown by additional forthcoming evidence, the Saunders Sale is an unlawful and fraudulent transaction which Board President Diana Mantelli and others, by breach of their fiduciary duties and other wrongdoing, strive and hope to perpetrate on the Park members and residents, most of whom are elders within the meaning of applicable law.

By this email to you, Fidelity and Chicago Title Companies and their affiliates, and Thrivent Financial for Lutherans are given notice and made aware of the claims and contentions of the attached application.

If Fidelity or Chicago or Thrivent, or one or more of them, in any way assist or lend support to the PBPA Saunders Sale, it will be our view and position that they have participated in financial elder abuse and other wrongdoing, for which they can and will be held accountable and subject to punitive and exemplary damages.

Thrivent is on notice that any funds it receives from a Saunders Sale Escrow will be subject to all claims, rights and privileges of Plaintiff Mr. Haugen and the members at the Park, all of whom are harmed by the documented fiduciary wrongdoing.

Sincerely,

Patrick J. Evans
For Plaintiff Mr. Haugen, and Plaintiffs in *Chodosh v. PBPA*

# EXHIBIT
# I

November 30, 2015



PALM BEACH PARK ASSOCIATION
c/o Diana Mantelli, President
101 Palm Dr.
San Clemente, CA 92672-3647

Dear Diana:

We have become aware that you are considering a sale of Palm Beach Park and want to express our strong interest in acquiring the community. Hometown America is a well-known and respected manufactured housing community owner and operator in several states. We own 15 properties in California, including Laguna Terrace not too far from you in Laguna Beach. As an introduction, below is a brief history and overview of Hometown America (www.hometownamerica.com).

Founded in 1997, Hometown is a private real estate investor based in Chicago. Since 2002, the company has been owned and operated by the management team with Washington State Investment Board ("WSIB") as our sole investor. We operate under a long-term operating agreement with WSIB which has committed more than $1 billion of equity to our enterprise. Today, our portfolio is comprised of 50 communities valued at more than $2 billion. Our assets are primarily high quality, age-restricted communities concentrated in California, the Northeast, Florida, and Chicago. As evidence of Hometown America's aggressive acquisition appetite, we have purchased seven communities in California thus far in 2015.

Once Hometown America became aware that Palm Beach Park was for sale, we did our research. Based on current market conditions and our understanding of the prior offer the HOA considered, we are presenting the enclosed offer to purchase Palm Beach Park. As illustrated in the letter of intent, our offer will net the resident association $2.275 million (approximately $20,000 per member) more than the other offer under consideration. As you review, please take notice that ours is an all-cash offer which enhances surety of a quick closing. We are aware of the current litigation, and have experience with these types of issues. After reviewing the publically available information, we expect to resolve the litigation in conjunction with the sale.

We know that time is of the essence, and that a sale is a priority for the members and residents. We pledge to move as rapidly as possible to bring the sale to a conclusion that will benefit all involved and allow the residents to enjoy and live in a community that is well run and well maintained by a professional management company.

Please contact me with any questions. I am also free to meet you at the community to present our offer in more detail and answer any questions you might have. I look forward to hearing from you.

Best regards,

Doug Minahan
Vice President, Acquisitions
(312) 604-7574
dminahan@hometownamerica.com



November 30, 2015

PALM BEACH PARK ASSOCIATION
c/o Diana Mantelli, President
101 Palm Dr.
San Clemente, CA 92672-3647

RE: Palm Beach Park, San Clemebte, CA (the "Property")

Dear Diana:

The purpose of this letter is to confirm the interest of Hometown America, L.L.C. or one of its affiliates ("Purchaser") in acquiring the entire fee simple and leasehold interests in the Property, a manufactured housing community with 126 sites in San Clemente, CA. The Purchaser would be buying the improvements thereon, all easements and appurtenances thereto, and all personal property including inventory homes used or useful in connection with the operation and maintenance of the improvements (collectively, the "Property").

The following is a summary of some of the major points of the Purchaser's expression of interest in purchasing the Property:

1.  Purchase Price: $38,250,000, less a $2,000,000 credit to cover litigation issues ("Indemnification Credit") and a $605,000 credit for three months of free rent. These credits mirror your prior offer. In addition, Hometown will pay 100% of the prepayment penalty associated with the payoff of the existing loan and the association will not be responsible for a sales commission since Hometown is not represented by a broker. Therefore, our net purchase price of $35,645,000 exceeds your previous offer by $2,275,000, or approximately $20,000 per member. Below is a table summarizing Hometown's offer and the net proceeds payable to the community:

| | |
|---|---|
| Gross Purchase Price | $38,250,000 |
| Less: Litigation Credit | ($2,000,000) |
| Less: Three Months Free Rent | ($605,000) |
| Less: Debt Repayment Fee (Hometown to pay this) | $0 |
| Less: Broker Fee (no broker involved) | $0 |
| Net Purchase Price to the Community | $35,645,000 |

2.  Earnest Money Deposit: $350,000 will be paid at time of signing the Purchase Agreement (as defined below).

3.  Contract and Closing: Upon Seller's acceptance of this letter, Purchaser will commence preparation of a definitive purchase and sale agreement in a form customary for a transaction of this size and type (the "Purchase Agreement").

4.   <u>Inspection Period</u>:  Purchaser shall have thirty (30) days after execution and delivery of the Purchase Agreement to cause one or more attorneys, engineers, auditors, architects and other experts of its choice and at Purchaser's expense to (i) inspect the Property and any documents related to the Property, and (ii) inspect, examine, survey, obtain engineering inspections, appraise and otherwise do that which, in the opinion of Purchaser, is necessary to determine the condition and value of the Property for the uses intended by Purchaser.  Purchaser understands and agrees that the information obtained pursuant to such inspection shall be kept in confidence and shall not be revealed to outside parties other than to its lenders, attorneys, accountants, investors, principals, affiliates or clients or as otherwise required by law or for any valid business purpose of Purchaser.

5.   <u>Closing Date</u>:  The closing date of the purchase and sale of the property shall be twenty (20) days after the Inspection Period.

6.   <u>Real Estate Commission</u>:  Seller and Purchaser acknowledge that Seller is responsible for commissions payable in this transaction, if any.  Purchaser has not engaged a broker in conjunction with this transaction.

7.   <u>Closing Costs</u>:  Seller shall be responsible for all transfer taxes, closing fees and other expenses due from or incurred by Seller in connection with the transaction.

8.   <u>Certain Warranties</u>:  The Purchase Agreement shall contain customary representations, warranties, indemnities or other satisfactory assurances.

9.   <u>Prorations</u>:  Purchaser will receive a credit against the purchase price to be paid at closing on account of security deposits, prepaid rents, property taxes and assessments, and other items of income and expense as of midnight on the day preceding closing.

10.  <u>Documents to be Delivered</u>:  The Purchase Agreement shall contain a list of requested documents, copies of which Seller shall promptly furnish Purchaser within 5 days of the execution date of the Purchase Agreement.

Purchaser and Seller each acknowledge that (i) a transaction of this type involves many essential and nonessential terms and conditions and that there has not yet been a definite statement of all the terms and conditions of the proposed transaction, (ii) this letter is not intended to constitute an offer or an acceptance of an offer, and (iii) this letter is not intended to constitute an agreement to execute the Purchase Agreement or any real estate agreement in the future.  It is the intention and understanding of Purchaser and Seller that the only instrument executed between Purchaser and Seller with respect to the Property shall be the Purchase Agreement and that the Purchase Agreement, if executed, will contain all the terms and conditions deemed essential by Purchaser and Seller with respect to the purchase and sale of the Property as contemplated by this letter.

Notwithstanding (a) anything contained in this letter to the contrary, (b) subsequent negotiations, (c) any action taken hereafter by either Purchaser or Seller, or (d) any actual or claimed reliance, it is understood that, except for the obligations set forth in the immediately preceding paragraph, which shall survive termination of this letter, neither Purchaser nor Seller will be legally bound in any

- 2 -

manner unless and until the Purchase Agreement has been prepared, executed and delivered by both Purchaser and Seller.

Please confirm that the foregoing accurately sets forth Seller's understanding with Purchaser by signing a copy of this letter below where noted and returning the same to me within seven (7) days of the date of this letter of intent.


Very truly yours,

HOMETOWN AMERICA, LLC
By:  Hometown Communities Limited Partnership


Doug Minahan
Vice President

ACCEPTED AND AGREED TO THIS _____ DAY OF _____, 2015.

BY:        _____

NAME:     _____

TITLE:    _____
("Seller")

# EXHIBIT
# J

Filed 7/13/15  Certified for publication 8/5/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT S. COLDREN, as Trustee, etc., et al., | |
| | G050202 |
| Plaintiffs, Cross-defendants and Respondents, | |
| | (Super. Ct. No. 30-2014-00697576) |
| v. | O P I N I O N |
| HART, KING & COLDREN, INC., et al., | |
| Defendants, Cross-complainants, and Appellants. | |

        Appeal from an order of the Superior Court of Orange County, Frederick P. Horn, Judge.  Reversed.

        Grant, Genovese & Barratta, David C. Grant and Ronald V. Larson, for Defendants, Cross-complainants and Appellants.

        Pistone Law Group, Thomas A. Pistone; Salisbury Group, Lisa G. Salisbury; Law Office of William J. Kopeny and William J. Kopeny for Plaintiffs, Cross-defendants and Respondents.

**FOR IMMEDIATE RELEASE**
**January 29, 2016**

**CONTACT:**
Spencer Engler-Coldren
949.874.8449
spencer@pacificcurrentpartners.com



### Pacific Current Partners Acquires Oceanfront Palm Beach Mobile Home Park

### - Pacific Current Partners Acquires 126 Unit Ocean Front Mobile Home Park in San Clemente, California Santa Ana, CA (December 30, 2015) -

Pacific Current Partners, a manufactured housing investor group led by industry veteran Mike Cirillo, and Saunders Property Company recently partnered to acquire Palm Beach Mobile Home Park in San Clemente, California for an undisclosed amount. The seller of the oceanfront property was San Clemente based Palm Beach Park Association. The 126-space park has scenic ocean views and offers residents roughly two acres of private beach.

This transaction represents the eighth manufactured housing acquisition for this team in the last two years. According to information on their website, they focus on coastal mobile home and RV parks, including those with apparent legal and managerial challenges that require specialized expertise to navigate:

"Whereas most other buyers of manufactured housing communities in premium California markets have aimed to convert their properties to 'higher and better use,' Pacific Current Partners and John Saunders share a commitment to owning and operating our properties as manufactured housing communities for the long term and to realizing value by improving community experience for residents. Our recent purchase of Palm Beach Park is a validation of our acquisition process, and we are more encouraged and excited than ever to acquire more assets like it as we enter 2016." The website also describes the improvements made under their ownership at the other properties, improvements "such as new or updated gyms and clubhouses with community kitchens, new landscaping and luxury two-story rental units, themed street names and designs, and state of the art solar systems."

In an interview with John Saunders and Spencer Engler-Coldren of PCP, the buyers stated that the transaction "demanded extraordinary patience and collaboration." The deal had been over two years in the making. "We are all elated to say the least. A whole host of principals, brokers, and legal advisors on both sides worked together for many months to get it across the finish line. Once under contract close of escrow was smooth and

timely."

The buyer was represented by Philip Anshutz as broker and Pete Roth and Natalie Ferrall of Allen Matkins as legal counsel. The seller team was led by park resident and HOA president Diana Mantelli and was represented by Salisbury Law Group.

About Pacific Current Partners

Pacific Current Partners acquires and operates mobile home and RV park properties, mainly in the western US, that stand to benefit from the group's operational excellence, legal expertise, and industry presence. Fund managers Rob Coldren and Mike Cirillo have worked together for three decades as a legal-managerial team and boast an extraordinary track record of unlocking value in MH and RV park properties. Together with junior partners Brad Hill, Spencer Engler-Coldren and Thom Niederkofler, the group has a combined 80 years of experience in real estate asset management and development. PCP has acquired eight MHRV parks in the past 24 months.

For more information about the Palm Beach Mobile Home Park please visit www.palmbeachMHpark.com. For more information on Pacific Current Partners please visit their website at pcpequity.com

# EXHIBIT K

October 6, 2014

Dear PBP Members,

I have attached the court rulings I received this am.

There were six (6) issues to be decided.

# CONGRATULATIONS WE HAVE A VICTORY ON ALL SIX ISSUES.



K
205

# EXHIBIT
# L

COURT OF APPEAL-4TH DIST DIV 3
FILED

JUN 2 6 2014

Deputy Clerk _____

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FLOYD M. CHODOSH et al., | |
| Petitioners, | |
| v. | G050238 |
| | (Super. Ct. No. 30-2010-004235444) |
| THE SUPERIOR COURT OF ORANGE COUNTY, | O R D E R |
| Respondent; | |
| PALM BEACH PARK ASSOCIATION, | |
| Real Party in Interest. | |

THE COURT:*

    Petitioners' motion for leave to file a corrected petition for writ of mandate is GRANTED. The clerk of this court is directed to accept for filing the corrected petition for writ of mandate which has been submitted as an exhibit to the motion.

    The petition for writ of mandate is DENIED.

    Real party has submitted two preliminary responses in opposition to the petition, one purportedly in its capacity as a defendant and the second in its capacity as a real party in interest. Ordinarily, the clerk of this court would be directed to return the opposition to real party with directions to real party to file a single informal response within a specific



period of time.  Such a direction is MOOT in view of the finality of this order denying the writ petition.  (Cal. Rules of Court, Rule 8.490(b)(1).)


<u>RYLAARSDAM, J.</u>
RYLAARSDAM, ACTING P. J.

\* Before Rylaarsdam, Acting P. J., Ikola, J. and Thompson, J.


RYLAARSDAM, Acting P.J., concurring:

In addition to denying the petition, I would issue an order to show cause why sanctions should not be imposed for the filing of a manifestly frivolous writ.  (Cal. Rules of Court, Rule 8.276; see, e.g., *Los Angeles County Dept. of Children etc. Services v. Superior Court* (1995) 37 Cal.App.4th 439, 456-457.)  "This court may find a writ petition to be frivolous and order sanctions if we conclude the petition was prosecuted for an improper motive or the petition is indisputably without merit, i.e., any reasonable attorney would agree the petition is completely without merit."  (*In re White* (2004) 121 Cal.App.4th 1453, 1479.)


<u>RYLAARSDAM, J.</u>
RYLAARSDAM, ACTING P. J.




2

G050238
Chodosh et al. v. The Superior Court of Orange County

Superior Court of Orange County

Patrick J. Evans
Law Office of Patrick J. Evana
16897 Algonquin St., Suite F
Huntington Beach, CA 92649

The Superior Court of Orange County
Attn: Hon.  Robert Moss
700 Civic Center Dr. West
Santa Ana, CA 92701

Jeffry A. Miller
Lewis Brisbois Bisgaard & Smith LLP
221 N. Figueroa St., Ste. 1200
Los Angeles, CA 90021

Allen L. Thomas
Allen B. Weiss & Associates
5001 Airport Plaza Dr., Ste. 240
Long Beach, CA 90815

# EXHIBIT
# M



4040 MacArthur Blvd., Suite 300
Newport Beach, CA 92660
Tel: (949) 251-0444
Fax: (949) 251-0888

John R. Saunders
President

May 1, 2015

Palm Beach Park Association ("PBPA")
35902 Coast Highway
San Clemente, CA

Re: *Non-Binding Letter of Intent regarding that certain real property located in San Clemente, California consisting of a mobile home park with 126 spaces*

Dear Ladies and Gentlemen:

For your consideration, Mr. John Saunders and a New Ownership Entity ("NOE"), a California limited liability company or similar entity to be formed and controlled by Mr. John Saunders (jointly, "Buyer") send this Letter of Intent to PBPA with respect to the purchase and sale of that certain real property all as described on Exhibit "A" to this Letter of Intent (the "Property") upon the terms and conditions set forth below.

The parties contemplate the preparation of a more detailed purchase and sale agreement ("PSA") containing additional terms and conditions that are customary for a transaction of the nature contemplated in this Letter of Intent, and they do not intend this Letter of Intent to constitute a binding agreement for purchase and sale of the Property.

Further efforts by either party to perform due diligence, arrange or obtain financing, or carry out other acts in contemplation of the possible purchase and sale of the Property may not be deemed evidence of intent by either party to be bound by this letter of intent

1. **Purchase Price**: The purchase price for the Property shall be Thirty-Seven Million Dollars ($37,000,000.00) payable all cash at the Close of Escrow:

   A. **Initial Deposit**: Buyer will make a One Million Dollar ($1,000,000) cash deposit ("Initial Deposit") into escrow when the escrow has been opened and PBPA has been authorized by its Shareholders to execute this Letter of Intent and the PSA. The Initial Deposit shall remain refundable to Buyer until the expiration of the

1

SAUNDERS REVISED LETTER OF INTENT DATED 5-22-15

344

Due Diligence Period defined below.  At the close of escrow, the Initial Deposit and the interest on any escrow deposits shall be applied against the purchase price.

B.   **Cash Due at Close of Escrow**:  On or before the Close of Escrow, Buyer will deposit into Escrow the balance of the Purchase Price in cash and all additional funds necessary to close the Escrow pursuant to the PSA;

2.   **Property**:  PBPA is the owner of that certain real property described on Exhibit "A" attached hereto which is a mobile home park with 126 spaces and approximately 1.8 acres across Pacific Coast Highway on the oceanfront which is undeveloped land.

3.   **Escrow and Close of Escrow**:  Escrow shall be opened within two (2) business days after mutual execution of the PSA, between Buyer and PBPA, with Fidelity National Title Company, Newport Beach, California, Jody Kelly, Escrow Officer.  The Escrow Period is 90 days following the execution of a PSA ("Close of Escrow").

4.   **Due Diligence Period**:  Buyer shall have 45 days after opening escrow in which to make at Buyer's sole cost and expense an independent analysis of the condition of the Property and suitability of the Property for Buyer's intended purposes (the "Due Diligence Period").  During the Due Diligence Period, PBPA will permit Buyer and its consultants to enter upon the Property to perform soils and other tests on the Property upon presentation to PBPA of proof of liability insurance and indemnity.  The liability insurance is a minimum of Two Million Dollars ($2,000,000) per occurrence and shall name PBPA as an additional insured.

   a.  The inspections, testing or other entry by Buyer unto the Property shall only occur during business hours at reasonable times on advanced notice to PBPA. All activities undertaken by or on behalf of Buyer in connection with the inspections, testing or other entry shall fully comply with applicable laws and regulations, and Buyer shall promptly restore, at its sole cost and expense, any damage arising in connection therewith. ☐

   b.  Buyer may not conduct any intrusive or destructive inspections, testing or borings without PBPA's prior written consent, which consent shall be at PBPA's sole and absolute discretion ☐

   c.  Buyer agrees to keep confidential and not to disseminate to any third party, and to cause its agents or representatives to keep confidential and not disseminate to any third party, any information Buyer (and/or its agents or representatives) obtains as a result of the inspections, except to the extent disclosure is required by law. This paragraph shall survive the termination of this letter of intent. ☐

   d.  During the Due Diligence Period, Seller agrees to cooperate with Buyer to provide all relevant information, including but not limited to, court filings and other pleadings, related to the litigation and other legal matters set forth in Exhibit "C".

2

SAUNDERS REVISED LETTER OF INTENT DATED 5-22-15

345



5.   **Title**:  At the Close of Escrow, PBPA will execute and deliver to escrow holder a Grant Deed conveying fee simple title to the Property, as evidenced by a standard ALTA owner's policy of title insurance issued by Fidelity National Title Company.  The title policy shall show title vested in Buyer subject only to those matters disclosed by a preliminary title report delivered to and approved by Buyer during the Due Diligence Period.

6.   **Proration and Costs**:  All items of income and expense relating to the Property, including real property taxes and rents, shall be prorated as of the COE. All costs incurred in connection with the Escrow will be allocated as is customary in Orange County, California, i.e., PBPA shall pay the documentary transfer taxes and the cost of the standard ALTA owner's policy of title insurance.  Escrow costs shall be split 50/50, and other costs allocated as aforesaid.

7.   **Broker's Commission**:  The only Broker involved in the transaction is Hensley Realty Corporation whose commission upon the consummation of the purchase and sale transaction contemplated in this Letter or Intent shall be paid by PBPA pursuant to the PSA.

8.   **Contingencies**:
     a.  PBPA agrees to conduct a vote seeking an approval by its members to sell the Property pursuant to the terms of this Letter of Intent.  The transaction contemplated hereunder shall be contingent upon the approval by at least 2/3rds (66.66%) of the members in good standing of PBPA.

     b.  There is no financing contingency.

9.   **Indemnification and Purchase Price Credit**:
     a.  Indemnity.  Upon the Close of Escrow, Buyer shall indemnify, defend, and hold harmless PBPA, and its officers, directors, shareholders, members, employees, agents, and representatives (collectively, "Indemnitee"), against all liability, demands, claims, costs, losses, damages, recoveries, settlements, and expenses (including interest, penalties, attorney fees, accounting fees, and expert witness fees) incurred by Indemnitee ("Losses"), known or unknown, contingent or otherwise, directly or indirectly arising from or related to (a) the suits, actions, and claims described in Exhibit C; and (b) any third party claims arising out of the sale of the Property; provided however, Seller's attorney fees arising from or related to the suits, actions, and claims described in Exhibit C which accrued, became due or arose prior to the Close of Escrow shall be paid by Seller.
     b.  Purchase Price Credit.  At the Close of Escrow and in exchange for the indemnifications obligations of Buyer which shall thereby be triggered as described in section 9a. above, Buyer shall receive a credit against the Purchase Price for the Property in the amount of $2,000,000.00.

3

10. **Prepayment Penalty**: Buyer and PBPA both acknowledge that there is current debt on the Property which debt must be paid in full at the close of escrow and which payment will include an approximately $1.7 Million defeasance fee which shall be paid as follows:
   a. Buyer shall pay the first $850,000.00 of defeasance fee;
   b. Buyer to pay half of the balance of the defeasance fees up to $425,000.00
   c. PBPA to pay the balance of the defeasance fee.
   d. Buyer shall have the ability to negotiate directly with the lender regarding a reduction or discount of the defeasance fee.

11. **New Ownership Entity**: John Saunders shall form the NOE to own the Park. John Saunders shall have at least seventy-five percent (75%) ownership in the NOE (not including existing preferred investors described on Exhibit "B" below).

12. **Leaseback**: Buyer agrees to enter into a Leaseback to all of the Members of PBPA who are in good standing at the COE. The basic terms and conditions of the Leaseback Agreement are idenfield and set forth on Exhibit "B" to this Letter of Intent.

13. **Letter of Intent**: This Letter of Intent shall remain in effect until 10 days after PBPA conducts a member vote for the approval of the execution of this Letter of Intent and a purchase and sale of the Property pursuant to the terms herein. This Letter of Intent shall not constitute a legally binding contract to purchase the Property, but rather an agreement to the basic terms and conditions, which will be incorporated into a mutually acceptable PSA to be drafted by PBPA. Only a fully executed PSA shall bind the parties and said PSA will contain additional contingencies which may cause the transaction not to occur. Upon execution of this Letter of Intent, PBPA shall take the Property off the market in order to negotiate in good faith a legally binding PSA with the Buyer. During the time between execution of this Letter of Intent and execution of a PSA, PBPA agrees that it will not negotiate with other buyers. Efforts by either party to complete Due Diligence, conduct further negotiations, or prepare a PSA shall not be considered as evidence of intent by either party to be bound by this Letter of Intent. The performance, by either party prior to execution of a formal PSA, of any of the obligations which may be included in the PSA between the parties when negotiations are completed, shall not be considered as evidence of intent by either party to be bound by this Letter of Intent.

[This section is left intentionally blank]

4

SAUNDERS REVISED LETTER OF INTENT DATED 5-22-15

347

14.   **Confidentiality**. Buyer and PBPA agree not to disclose the content of this letter of intent or of any negotiations or information received from the other party regarding the Property or the financial condition of the other party to any unrelated third parties without first obtaining the prior written consent of the other party.

If the foregoing terms and conditions are acceptable, please execute the enclosed copy of this Letter of Intent and return it to me via email at the above address.

Very truly yours,

SAUNDERS PROPERTY COMPANY

By: _____

    John R. Saunders, President


The foregoing Letter of Intent is agreed to and accepted by PBPA.

PALM BEACH PARK ASSOCIATION, a
California non-profit mutual benefit corporation

By:_____
               , President

By:_____
               , Secretary

5

348

b. Distribution Exemplar:

| Estimated Personal Distrubution Recap | |
|---|---|
| Member: John Doe | |
| | |
| **Estimated Assets:** | |
| Palm Beach Park Sale Price | $37,000,000 |
| Indemnification Credit | ($2,000,000) |
| Free Rent Price Adjustment | ($604,800) |
| Adjusted Sale Price | $34,395,200 |
| | |
| Assessments Owed By Members In Good Standing 3/31/15* | $9,300,000 |
| **Total Assets** | **$43,695,200** |
| | |
| **Estimated Liabilities:** | |
| Thrivent Loan Pay Off | ($12,100,000) |
| Capital Gains Tax | ($3,000,000) |
| Reserve | ($1,000,000) |
| Thrivent Pre Payment Penalty | ($325,000) |
| Broker Fee | ($700,000) |
| Legal Fees | ($300,000) |
| Closing Costs | ($125,000) |
| Escrow Fees | ($25,000) |
| Total Liabilities | ($17,575,000) |
| **Total Funds for Disbursement** | **$26,120,200** |
| | |
| Members In Good Standing | 112 |
| | |
| **Estimated Individual Disbursement of Funds:** | |
| Gross Distribution Estimate | $233,216 |
| Assessment Owed** | ($150,000) |
| **Total Disbursement** | **$83,216** |

\* This amount will be adjusted at the close of escrow
\*\* Assumes that John Doe has paid $50,000 of the principle
on his $200,000 assessment. The actual amounts owed to
PBPA will be adjusted for each individual member

Since the precise amount of all of the corporation's assets and its debts and liability cannot be know until after the close of escrow, it is important to note that the above example is meant for illustration and estimation purposes only and is not a specific representation or guaranty of the precise amount any member will receive. PBPA will rely on its accountants and other professionals to determine the final distribution amounts.

2

308

# EXHIBIT N

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

 123.00

* $ R 0 0 0 8 0 4 2 6 9 8 $ *

**2015000644199** 1:18 pm 12/22/15
65 405 D11 A36 A34 S02 F16  30
0.00 0.00 0.00 0.00 87.00 0.00 0.00 0.00

23057972-JV

PREPARED BY AND WHEN RECORDED,
RETURN TO:

Kaye Scholer LLP
250 West 55th Street
New York, New York 10019-9710
Attention: Stephen Gliatta, Esq.

**ICC 35902 LLC**
And
**3187 REDHILL LLC**
(Trustor)

To

**FIDELITY NATIONAL TITLE COMPANY**
(Trustee)

for the Benefit of

**JEFFERIES LOANCORE LLC**
(Beneficiary)

---

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS
AND SECURITY AGREEMENT**

---

Dated:     As of December 22, 2015

Location:  101 Palm Drive, San Clemente, California

County     Orange

APN:       891-341-02

THIS DEED OF TRUST SECURES OBLIGATIONS WHICH MAY CONTAIN PROVISIONS FOR ADJUSTMENTS IN THE INTEREST RATE AND PAYMENT AMOUNTS AND/OR A BALLOON PAYMENT.

THIS DEED OF TRUST CONSTITUTES A SECURITY AGREEMENT AS THAT TERM IS DEFINED IN THE CALIFORNIA UNIFORM COMMERCIAL CODE. PORTIONS OF THE COLLATERAL ARE GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE LAND DESCRIBED IN EXHIBIT A HERETO. THIS INSTRUMENT IS INTENDED TO SERVE AS A FIXTURE FILING AND IS TO BE RECORDED IN THE REAL ESTATE RECORDS OF EACH COUNTY IN WHICH SAID LAND OR ANY PORTION THEREOF IS LOCATED AND INDEXED AS BOTH A DEED OF TRUST AND A FIXTURE FILING. TRUSTORS ARE THE OWNER OF A RECORD INTEREST IN THE LAND DESCRIBED IN EXHIBIT A HERETO. THE

65217290

ADDRESS OF TRUSTORS (DEBTORS) AND BENEFICIARY (SECURED PARTY) ARE SET FORTH ON THE FIRST PAGE OF THIS DEED OF TRUST.

This **DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT** (this "*Deed of Trust*"), made as of December 22, 2015, by **ICC 35902 LLC** and **3187 REDHILL LLC**, each a Delaware limited liability company, each having an office at c/o Saunders Property Company, 4040 MacArthur Blvd., Suite 300, Newport Beach, California 92660 (individually or collectively (as tenants-in-common), in each case as the context requires "*Trustor*"), to **FIDELITY NATIONAL TITLE COMPANY**, a California corporation, having an address at 1300 Dove Street, Suite 310, Newport Beach, California 92660 ("*Trustee*"), as Trustee, for the benefit of **JEFFERIES LOANCORE LLC**, a Delaware limited liability company (together with its successors and assigns, hereinafter referred to as "*Beneficiary*"), having an address c/o LoanCore Capital, 55 Railroad Avenue, Suite 100, Greenwich, Connecticut 06830.

Trustor and Beneficiary have entered into a Loan Agreement dated as of the date hereof (as amended, modified, restated, consolidated or supplemented from time to time, the "*Loan Agreement*") pursuant to which Beneficiary is making a secured loan to Trustor in the aggregate original principal amount of \$35,797,500 (the "*Loan*"). Capitalized terms used herein without definition are used as defined in the Loan Agreement. The Loan is evidenced by a Note dated the date hereof made by Trustor to Beneficiary in such principal amount (as the same may be amended, modified, restated, severed, consolidated, renewed, replaced, or supplemented from time to time, the "*Note*").

To secure the payment of the Note and all sums which may or shall become due thereunder or under any of the other documents evidencing, securing or executed in connection with the Loan (the Note, this Deed of Trust, the Loan Agreement and such other documents, as any of the same may, from time to time, be modified, amended or supplemented, being hereinafter collectively referred to as the "*Loan Documents*"), including (i) the payment of interest and other amounts which would accrue and become due but for the filing of a petition in bankruptcy (whether or not a claim is allowed against Trustor for such interest or other amounts in any such bankruptcy proceeding) or the operation of the automatic stay under Section 362(a) of Title 11 of the United States Code (the "*Bankruptcy Code*"), and (ii) the costs and expenses of enforcing any provision of any Loan Document (all such sums being hereinafter collectively referred to as the "*Debt*"), Trustor has given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed, warranted, pledged, assigned and hypothecated and by these presents does hereby give, grant, bargain, sell, alien, enfeoff, convey, confirm, warrant, pledge, assign and hypothecate unto Trustee, in trust for the benefit of Beneficiary, **WITH POWER OF SALE**, the land described in Exhibit A (the "*Premises*"), the Owned Mobile Homes, and the buildings, structures, fixtures and other improvements now or hereafter located thereon (the "*Improvements*");

**TOGETHER WITH:** all right, title, interest and estate of Trustor now owned, or hereafter acquired, in and to the following property, rights, interests and estates (the Premises, the Owned Mobile Homes, the Improvements, and the property, rights, interests and estates hereinafter described are collectively referred to herein as the "*Trust Property*"):

63217290

2

**IN WITNESS WHEREOF,** Trustor has executed this instrument as of the day and year first above written.

TRUSTOR:

**ICC 35902 LLC,**
a Delaware limited liability company

By: _____
     John R. Saunders, its Manager

**3187 REDHILL LLC,**
a Delaware limited liability company

By: _____
     John R. Saunders, its Manager

63217290

ORANGE,CA                         Page 24 of 30                  Printed on 1/13/2016 1:40:17 PM
Document: TD 2015.644199

12/19/2016                          Lending Program - Jefferies LoanCore LLC



JLC's fixed and floating rate lending programs are flexible but generally adhere to the parameters outlined below:

| Fixed Rate Lending Program | |
|---|---|
| | **Indicative Terms:** |
| **Loan Amount:** | $5 million to $100+ million |
| **Loan-to-Value:** | Up to 75% |
| **Amortization:** | 25 - 30 Years, IO considered based on asset and leverage |
| **Loan Term:** | 5, 7,10 Years |
| **Non-Recourse:** | Loans shall be non-recourse except for standard carve-outs |
| **Reserves:** | Appropriate reserves shall be required |
| **Prepayment Option:** | Lockout / Defeasance |

| Floating Rate and Bridge Lending Program | |
|---|---|
| | **Indicative Terms:** |
| **Loan Amount:** | $15 million to $100+ million |
| **Loan-to-Value:** | Up to 75% |
| **Amortization:** | Interest Only |
| **Loan Term:** | 6 Months to 3 Years |
| **Loan Term Extension:** | Extension options available |
| **Non-Recourse:** | Loans shall be non-recourse except for standard carve-outs |
| **Reserves:** | Appropriate reserves shall be required |
| **Prepayment Option:** | Loans subject to lock out, spread maintenance and/or exit fees[1] |

| Mezzanine and Preferred Equity Program | |
|---|---|
| | **Indicative Terms:** |
| **Loan Amount:** | $5 million to $75 million |
| **Loan-to-Value:** | Up to 90% |
| **Amortization:** | Structured |
| **Loan Term:** | 3,5,7,10 years |
| **Non-Recourse:** | Loans shall be non-recourse except for standard carve-outs |

[1] Exit fees on floating rate loans may be waived for refinancing with Jefferies LoanCore LLC.

# EXHIBIT
# O

```
            SUPERIOR COURT OF THE STATE OF CALIFORNIA

                 FOR THE COUNTY OF ORANGE

                   COMPLEX JUSTICE CENTER

                    DEPARTMENT CX-102


IN RE:                                    )
                                          )
PALM BEACH PARK ASSOCIATION CASES         )
                                          )
                                          )
LEAD CASE:                                )
                                          )   NO. 30-2010-
CHODOSH V. PALM BEACH PARK ASSOCIATION,)       00423544
ET AL.,                                   )
                                          )
                                          )
                                          )
_____  )


       THE HONORABLE ROBERT J. MOSS, JUDGE PRESIDING

        REPORTER'S DAILY TRANSCRIPT OF PROCEEDINGS

                    DECEMBER 7, 2015


APPEARANCES OF COUNSEL:


   FOR PLAINTIFFS      PATRICK J. EVANS, ESQ.
                       LAW OFFICE OF PATRICK J. EVANS

   FOR DEFENDANT       CARY L. WOOD, ESQ.
                       DOMINEH FAZEL, ESQ.
                       LEWIS BRISBOIS BIGAARD & SMITH, LLP


                       ALLEN L. THOMAS, ESQ.
                       ALLAN B. WEISS & ASSOCIATES




            STEPHANIE A. KLINGAMAN, CSR# 12391
                 OFFICIAL COURT REPORTER
```

<u>WITNESS INDEX</u>

<u>PLAINTIFFS' WITNESS:</u>  <u>DIRECT</u> <u>CROSS</u>  <u>REDIRECT</u> <u>RCROSS</u> <u>VOL</u>,


**MANTILLI, DIANA**
PURSUANT TO 776
BY MR. EVANS:          37/81

**CONTRERAS, JOHN**
BY MR. EVANS:          105

**FIORI, GEORGE**
BY MR. EVANS:          131

1    Q.   IT'S CORRECT, IS IT NOT, THAT WHEN PALM BEACH

2  PARK TERMINATED MR. HAUGEN AND TOOK HIS MEMBERSHIP AND

3  MEMBER LEASE THAT HE GOT NO FINANCIAL CREDIT FOR THOSE

4  ITEMS TAKEN, ISN'T THAT RIGHT?

5    MR. THOMAS:  OBJECTION.  COMPOUND.  IRRELEVANT.

6    THE COURT:  WELL, IT IS COMPOUND.  WHY DON'T YOU

7  REPHRASE YOUR QUESTION.

8  BY MR. EVANS:

9    Q.   NOW, YOU WERE ON THE BOARD WHEN THE PARK

10  PURPORTED TO TERMINATE, SAYS IT TERMINATED MR. HAUGEN'S

11  MEMBERSHIP AND MEMBER LEASE, RIGHT?

12    MR. THOMAS:  OBJECTION.  ARGUMENTATIVE BY THE

13  COMMENTARY ON THE WORD "PURPORTED."

14    THE COURT:  OVERRULED.

15    THE WITNESS:  YES.

16  BY MR. EVANS:

17    Q.   IN FACT, TO YOUR UNDERSTANDING, THE PARK DID

18  TERMINATE MR. HAUGEN'S MEMBERSHIP AND MEMBER LEASE AND

19  TOOK POSSESSION OF THOSE ESSENTIALLY, ISN'T THAT RIGHT?

20    A.   YES.

21    Q.   NOW, AFTER THE PARK TOOK THOSE TWO ITEMS FROM

22  HIM, THE MEMBERSHIP AND THE MEMBER LEASE, WHAT DID IT

23  GIVE, WHAT DID THE PARK GIVE HIM IN RETURN?

24    MR. THOMAS:  OBJECTION.  CALLS FOR A LEGAL OPINION.

25    THE COURT:  OVERRULED.

26    THE WITNESS:  NOTHING.

THIS IS A ROUGH TRANSCRIPT NOT CERTIFIED