PATRICK J. EVANS - State Bar No. 110535
pevans@pevanslawoffice.com
LAW OFFICE OF PATRICK J. EVANS
16897 Algonquin Street, Suite F
Huntington Beach, CA 92649
Tel.: (714) 594-5722; Fax: (714) 840-6861
Counsel to all Plaintiffs,
Sue Eicherly, et al.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUE EICHERLY, an individual, et al.,<br><br><br>Plaintiffs,<br><br>vs.<br><br>ROBERT J. MOSS, individually and in his capacity as Judge of the Orange County Superior Court, et al.,<br><br>.<br><br>Defendants. | CASE NO.: 8:16-cv-02233-CJC (KESx)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT JUDICIAL OFFICERS' MOTION TO DISMISS THE COMPLAINT**<br><br>[REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY]<br><br>[Hon. Cormac J. Carney, Judge Presiding]<br><br>Hearing Date: April 3, 2017<br><br>Hearing Time: 1:30 p.m.<br><br>Courtroom No.:  9B, Ninth Floor<br><br>[Action filed Dec. 21, 2016] |

## TO THE HONORABLE COURT, DEFENDANTS AND THEIR COUNSEL:

All Plaintiffs, Sue Eicherly, et al. by and through their counsel, hereby oppose the Motion of the judicial officer defendants to dismiss the complaint.

# **TABLE OF CONTENTS**

**I.** OPPOSITION SUMMARY ..................................................................... 1

**II.** COMPLAINT STATEMENTS AND ALLEGATIONS ...................................... 3

    **A.**    The Motion's Mis-Statements of the Complaint; No Citations ............ 3

    **B.**    Complaint Statements and Allegations; with Citations ........................ 3

    **C.**    The Complaint's Actual Requests and Prayer; with Citations ............. 5

**III.** REVIEW STANDARD– NO FACT OR ELEMENT GAP – AMPLE FACTS ................................................................................................ 6

**IV.** SECTION 1983 CLAIMS –COURT'S ORIGINAL JURISDICTION ............. 7

**V.** THE ORDERS AND RULINGS PROVE THE CASE; JUDICIAL DEFENDANTS WERE FULLY APPRISED OF BUT IGNORED AND DELIBERATELY UPHELD AND ENFORCED ILLEGAL LEASES, CONTRACTS, AND TRANSACTIONS ....................................................... 9

    **A.**    Judgment, Motion, Orders, Oral Argument Prove Defendants Ignored Crime ................................................................... 10

    **B.**    Orders, Statement of Decision of Defendant Judge Robert J. Moss .. 12

    **C.**    Calif. DBO Finds the Illegality that Defendants Ignored ................. 13

**VI.** JUDICIAL DEFENDANTS' ORDERS AND RULINGS WERE VOID *AB INITIO*; PROSPECTIVE RELIEF FOR COLLATERAL ATTACK ..... 14

**VII.** NO IMMUNITY ISSUE – NO DAMAGE CLAIM – PROSPECTIVE RELIEF ........................................................................................... 16

**VIII.** *ROOKER FELDMAN* DOES NOT APPLY ................................................ 19

**IX.** ABSTENTION IS EXTRAORDINARY; ITS FACTORS NOT MET ........... 21

**X.** STATE NOT DEFENDANT; 11th AMENDMENT NOT APPLICABLE ....... 22

**XI.** SECOND CAUSE OF ACTION – JUDGE MARGINES ............................... 23

**XII.** CASE STATED; MUCH MORE FACTUAL DETAIL AVAILABLE ......... 24

**XIII.** CONCLUSION ............................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009)..................................24

4

*Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986) (en banc) ........................16

5

*Barrow v. Hunton*, 99 U.S. (9 Otto) 80, 25 L. Ed. 407 (1878)....................20

6

*Bell Atlantic Corp. v. Twomby*, 550 U.S. 544, 127 S. Ct. 1955 (2007).....................24

7

*Bennett v. Hibernia Bank*, 47 Cal. 2d 540 558 (1956) ...............................14

8

*Bianchi v. Rylaarsdam,* 334 F. 3d. 895 (9th Cir. 2003)..................................8

9

*Cahill v. Liberty Mutual Ins. Co*., 80 F.3d 336 (9th  Cir. 1996)....................6

10

*Caperton v. A. T. Massey Coal Co,* 556 U.S. 868 (2009) ...........................24

11

*Colorado River Water Conserv. Dist. v. U.S.*, 424 U.S. 800 (1976)........................21

12

*Del E. Webb Corp. v. Structural Materials Co*., (1981) 123 Cal.App.3d 593 .............25

13

*Dubinka v. Judges of Superior Court*, 23 F.3d 218 (9th Cir. 1994)...........................19

14

*Ex parte Virginia*, 100 U.S. 339 (1880)........................................................17

15

*Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908) ...................................23

16

*Forrester v. White*, 484 U.S. 219 (1988) .....................................................24

17

*Holder v. Home Savings & Loan Assn. of Los Angeles* (1968) 267 Cal.App.2d 91 ....25

18

*Jesinoski v. Countrywide Home Loans, Inc*., 574 U.S. _; 135 S. Ct. 790 (Jan. 2015) ...8

19

*Kentucky v. Graham*, 473 U. S. 167, 105 S. Ct. 3099 (1985) ........................22

20

*Kougasian v. TMSL, Inc*., 359 F. 3d. 1136 (9th Cir. 2004)………………………8, 19

21

*MacKay v. Nesbett*, 285 F. Supp. 498 (D. Alaska 1968), aff'd,

22

    412 F.2d 846 (9th Cir.), cert. denied, 396 U.S. 9 .....................................16

23

*Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286 (1991) ....................................17

24

*Mirin v. Justices of the Supreme Court*, 415 F. Supp. 1178 (D. Nev. 1976) ..............16

25

*Moore v. Brewster*, 96 F.3d 1240 (9th Cir. 1996) ......................................16

26

*Mullis v. Bankruptcy Court for District of Nevada*, 828 F.2d 1385 (9th  Cir. 1987)...16

27

*Neubrand v. Superior Court (Lytle)*, 9 Cal.App. 3d 313 (1970) ................................14

28

*Noel v. Hall,* 341 F. 3d 1148 (9th Cir. 2003)..................................................19

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 100,

104 S.Ct. 900 (1984)........................................................................................23

*Pierson v. Ray*, 386 U.S. 547 (1967) .............................................................17

*Pulliam v. Allen*, 466 U.S. 522, 104 S. Ct. 1970  (1984) .............................16

*Ricotta v. State of California*, 4 F. Supp.2d 961 (S.D. Cal. 1998) ...............18

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413  44 Sup. Ct. 149 (1923) ...........19

*Schucker v. Rockwood*, 846 F.2d 1202 (9th Cir. 1988) ................................18

*Updike v. City of Gresham*, 62 F. Supp. 3d 1205 ........................................16

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004)......................................19

*Worldwide Church of God v. McNair*, 805 F.2d 888 (9th Cir. 1986) ..........19

**Statutes**

42 U.S.C. §1983.................................................................................................7

Calif. Bus. & Prof. Code sec. 11010.8...........................................................13

Calif. Code Civ. Proc. sec. 473(d) .................................................................15

Federal Court Improvements Act of 1996 amended § 1983.

(Public Law 104–317—Oct. 19, 1996 110 Stat. 3847, Sec. 309) ................18

**Constitutional Provisions**

Eleventh Amendment ………………………………………………………2,  23

# I. <u>OPPOSITION SUMMARY</u>

Plaintiffs sue the defendant justices and judges under §1983 for declaratory relief on their unlawful agreement and conspiracy and acts thereon to deprive plaintiffs of an impartial judiciary, due process and federal statutory rights. Defendants' agreement and conspiracy had the objective and purpose to harm Plaintiffs by ensuring they would lose in state court, which meant upholding illegal contracts-- powers the judicial officers did not have as no court can sanctify crime.

Plaintiffs sue not because a state court judgment is wrong or an order incorrectly entered.  The defendants' orders and judgments, which are void in trying to uphold and support fiduciary real estate fraud on seniors, are not the complaint's gravamen or basis for relief.  Plaintiffs seek not reversal of orders, but a declaration of defendants' deliberate and intentional deprivation, under color of state law, of Plaintiffs' United States constitutional and federal statutory rights.

Nowhere does the Motion have a complaint page and line citation for its assertion the complaint seeks to "overturn" the state court "orders and judgments". There are no citations because the complaint alleges direct violation of federal constitutional rights, not consequences from a state court order it seeks to invert.

The Motion starts with reference to defendants' "orders and judgments entered against plaintiffs in two cases . . .*Chodosh* . . . and *Haugen*."  (Motion Memo. pg. 1 line 5, case names omitted) The Motion does not list or indicate what "orders and

judgments" it posits to exist as supposed subjects the complaint seeks to reverse. The Motion ignores that rulings that purport to uphold and enforce illegal leases, contracts and real estate transactions, are void *ab initio*, i.e. a legal nullity.

Although void, the orders and judgments upholding illegality serve to prove the defendants' agreement and conspiracy to deprive Plaintiffs' rights.  In sequence, the orders and rulings show that defendants, knowing all about the illegality, acted to evade it and worse, purported to enforce it, i.e. sanctify illegality.

There are two (2) key things the Motion purports to have relied upon but does not supply: (A) complaint page and line citation and (B) defendants' orders and rulings.  As citations below show, the complaint is for §1983 rights deprivation as to which this court has original jurisdiction.   A sample of defendants' rulings and orders are provided in the Request for Judicial Notice.  These documents are evidence that the defendants, in their agreement and conspiracy, did knowingly and intentionally enforce leases, HOA memberships, and residential loans they knew were illegal, i.e. violation of state statutes.   (See Request for Judicial Notice, "RJN")

Following factual lay out of complaint allegations and the court documents, Plaintiffs review the Motion contentions that the complaint must be dismissed for: (1) Immunity; (2) *Rooker-Feldman*; (3) Abstention; and (4) 11th amendment.  None apply.

Immunity is no bar.  The complaint does not seek damages or personal remedy. A 1983 plaintiff is entitled to prospective relief against a judge and can seek it by declaratory judgment.   *Rooker- Feldman* arises on valid but disputed judicial

decisions.  Here, there are none.   The case is for direct constitutional claim; not state court overturn.  Abstention factors are absent.  No state entity is sued; the Eleventh Amendment is not implicated.   The Motion should be denied.  If amplifying factual or cause of action revisions are indicated, Plaintiffs respectfully request leave to amend.

## II. COMPLAINT STATEMENTS AND ALLEGATIONS

### A.      The Motion's Mis-Statements of the Complaint; No Citations

The Motion inaccurately describes the complaint without any citation to it: "The instant complaint concerns plaintiffs' dissatisfaction with the adverse orders and judgments. . ." [Motion pg. 1, lines 4-5]; ". . . Orders which Plaintiffs' contend were erroneous." [Id. pg. 1, lines 24-26] and "[P]laintiffs contend that they complained to [Judge Margines] about the erroneous orders of Judge Moss."   [Id. pg. 2, lines 9-11] The complaint does not so state.

### B.       Complaint Statements and Allegations; with Citations

The Complaint asserts direct claim for judicial defendants' purposeful and intentional denial of Plaintiffs' due process and federal statutory rights:

[Complaint, pg. 1, lines 8-18]:

[The complaint is brought] . . . [F]or [Defendants'] committing acts, under color of law, with the intent and for the purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the United States.

[Complaint, pg. 14, ¶47, lines 21-26]:

Plaintiffs are informed and believe, and thereon allege, that Judge Moss and

Justices O'LEARY, RYLAARSDAM and BEDSWORTH conspired and agreed to shirk and breach their duty to uphold the law in order to hurt and harm Plaintiffs and their counsel because they [Plaintiffs] had sued Justice Trotter and JAMS.

[Complaint, First Cause of Action, pgs. 61-62, ¶244-246]

244.   As alleged herein, the judicial officer defendants, Judge MOSS and Justices  O'LEARY, RYLAARSDAM and BEDSWORTH  entered into a prior agreement, and a conspiracy, to deprive Plaintiffs of their due process rights, by deliberate disregard of law, imposition of illegal contracts, and misuse of the judicial system, including allowing and supporting Judge MOSS in his wrongful "re-assumption" of jurisdiction in the *Haugen* case – just in time to unlawfully suppress Plaintiff Haugen's TRO application intended to stop the fiduciary fraudulent sale for the benefit of himself and all Plaintiffs, which sale closed to the detriment of Plaintiffs and all PBPA members.

245.   Plaintiffs are informed and believe, and thereon allege, that Judge MOSS and Justices O'LEARY, RYLAARSDAM and BEDWORTH entered into their prior agreement and conspiracy to deprive Plaintiffs of their United States constitutional rights to due process and an impartial tribunal and adjudicator in or about mid-2014, after Plaintiffs had refused to accede to Justice Trotter's forced settlement and perhaps before but more likely after Plaintiffs sued Justice Trotter and JAMS . . . and sought to disqualify Judge MOSS, as to which Justice RYLAARSDAM threatened Plaintiffs' counsel with sanctions for a "frivolous" petition. (Exh. L).

246.   Plaintiffs are informed and believe, and thereon allege, that aware of Plaintiffs having sued Justice Trotter and JAMS, Judge MOSS and Justices O'LEARY, RYLAARSDAM and BEDWORTH agreed and conspired to ignore and defy the law and in all respects act and rule against Plaintiffs, even though Plaintiffs were in the right and the law was clearly on their side, all for the purpose of hurting and harming Plaintiffs in retaliation and retribution for their having sued Justice Trotter and JAMS and on the motivation of obtaining a post-retirement JAMS job.

[Complaint, Third Cause of Action, pgs. 68-69, ¶273, 275, 276]

273.   Plaintiffs are informed and believe, and thereon allege, that Judge Moss failed to enforce TILA as part of the agreement and conspiracy with the Defendant Justices . . . .

275.   Judge MOSS and Justices O'LEARY, RYLAARSDAM and BEDSWORTH denied Plaintiffs their rights to enforcement of federal law by denying to enforce TILA and by ignoring on point dispositive federal authority.

276.   Plaintiffs are informed and believe, and thereon allege, that Defendants Judge MOSS and the Justices O'LEARY, RYLAARSDAM and BEDSWORTH denied Plaintiffs their rights to reimbursement under TILA in order to inflict financial harm on them as part of the agreement and conspiracy to make Plaintiffs lose by ignoring and failing to follow the law. . . .

**C.**     **The Complaint's Actual Requests and Prayer; with Citations**

Again without page, paragraph or line reference, moving parties falsely state that the complaint requests overturn of state court judgments and orders.   It does not. The complaint seeks determination and declaration that judicial officers deliberately deprived Plaintiffs of their due process and other rights, with a specific request for determination of the time frame for defendants' wrongdoing.  But the Motion states:

The complaint prays for a judicial declaration that all of the judicial actions taken by these judicial defendants during the pendency of Chodosh and Haugen, and all of the orders issued by these judicial defendants, violated plaintiffs'' rights.  [Motion Pg. 2, lines 11-14]

To that end, plaintiffs have specifically requested a declaration from this Court to the effect that the orders, judgment and decisions rendered in the Superior Court and the Court of Appeal by moving defendants were unconstitutional and invalid.   [Motion pg. 5, lines 4-7]

The complaint makes no such request and has no such prayer.

In its prayer, on the first and sixth causes of action, the complaint seeks:

[Complaint, Prayer for First Cause of Action, pg. 85, ¶A, B, C]

A. For determination that defendants Judge Moss and Justices O'Leary, Rylaarsdam and Bedsworth at all relevant times since early 2014 acted under

a prior agreement and conspiracy to deprive Plaintiffs of their due process rights under the United States Constitution;

B. That Judge Moss and the defendant Justices, by agreement and conspiracy, did purposefully deprive Plaintiffs of their constitutional rights;

C. For determination that the LLCs had an agreement and engaged in a conspiracy with Judge Moss and the Justices to deprive Plaintiffs of their due process rights with Judge Moss acting under color of state law;

In its prayer, on the 6th cause of action, the complaint seeks:

 [Complaint, Prayer for Sixth Cause of Action, pg. 86, ¶A, B]

A. For a declaration that the rulings, orders and judgments made and entered against Plaintiffs by or with the assistance of Judge Moss and the Justices were made and entered at a time when Judge Moss and the Defendant Justices were engaged in an agreement and conspiracy to deprive Plaintiffs of their due process and other rights under the United States Constitution, Amendments V and XIV, and under federal law.

B. For a declaration that Judge Moss and the Defendant Justices, at the time they entered orders directing that Plaintiffs lose to PBPA all their property and rights as members of PBPA, which property and rights and related privileges were thereby taken, were denying and did deny Plaintiffs' their due process rights either intentionally by agreement and conspiracy or by generating events and facts that were extreme such that the appearances of impropriety became and were constitutionally intolerable;

No prayer asks for "a judicial declaration that all of the judicial actions taken . . . violated Plaintiffs' rights", or "specifically requested a declaration . . that the orders . . . were unconstitutional and invalid." [Memo. pg. 2, lines 11-12; pg., lines 4-7]

## III. REVIEW STANDARD– NO FACT OR ELEMENT GAP – AMPLE FACTS

On a motion to dismiss "[a]ll allegations and material facts are taken as true and construed in the light most favorable to the non-moving party. *Cahill v. Liberty*

*Mutual Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996) (Memo. pg. 10, lines 22-25).  The

complaint pleads ample facts as to the motive and operation for the defendants'

agreement and conspiracy.  It covers JAMS' job and friendship motives; (Complaint

pgs. 9, 15, 48, 49, 50); the manner employed to carry out the wrongdoing, i.e. enforce

illegal contracts (pgs. 10 ¶28, pg. 37, 41); formation of the conspiracy (pg. 17) written

evidence (court documents; complaint Exhibits C, D, G and L) and the conspirators'

communications (justices make plaintiffs lose; making illegality the law of the case,

(pg. 45) for Judge Moss to follow, which he does.  (RJN Exhibits D - G)

      The Motion does not specify a missing fact, fact set, or element of a cause of

action.  It has inaccurate generalities, e.g.:

> Here, plaintiffs have failed to set forth any facts to show that any defendant
> violated plaintiffs' constitutional rights.  Although plaintiffs characterize the
> orders as being wrongful or unconstitutional, plaintiffs' wholly conclusory
> characterization does not demonstrate a plausible claim for relief.

[Memo. pgs. 11, lines 26-28]   Moving parties ignore the complaint's facts, events and

documents.  Amorphous protestation does not defeat the complaint.

## IV. <u>SECTION 1983 CLAIMS –COURT'S ORIGINAL JURISDICTION</u>

      The complaint is for deprivation of federal rights under 42 U.S.C. §1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes
> to be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress, except that
> in any action brought against a judicial officer for an act or omission taken in

such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Plaintiffs sue the judicial officer defendants for depriving Plaintiffs of constitutional rights and federal "truth in lending" statutory rights.[1]   They do not seek monetary or injunctive relief, only declaratory relief as to the existence and time frame of defendants' agreement and conspiracy to deprive Plaintiffs' rights.

The court has original jurisdiction under §1983.  *Kougasian v. TMSL, Inc.*, 359 F. 3d. 1136, 1139 (9th Cir. 2004), on analogous facts, considered the attack on state court judgment compared to complaint of wrongful defendant's conduct, stating:

> Kougasian does not seek to set aside the judgments of the California courts in *Kougasian* I and II based on alleged legal errors by those courts.  Rather, she seeks to set aside these judgments based on the alleged extrinsic fraud by defendants that produced those judgments.  Nor does she Kougasian seek damages based on any alleged legal error by the state courts.

Plaintiffs sue for defendants' deliberate wrongdoing that produced void judgments and orders that uphold illegality.    Plaintiffs do not "seek to set aside the judgments."

Relying on *Bianchi v. Rylaarsdam,* 334 F. 3d. 895 (9th Cir. 2003), moving parties contend the complaint seeks to overturn state court actions.   (Memo. at 7)

Plaintiff Bianchi sought reversal of the state court with an identical "second bite" in

---

[1] The Motion (pg. 12, lines 5-12) assails Plaintiffs' right to federal statutory "truth in lending" remedies to rescind and have restitution of the $125,000 Plaintiffs paid on the TILA violating loans. *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. ___; 135 S. Ct. 790 (Jan. 2015)(15 U.S.C. §1635 establishes a federal statutory right and remedy to rescission and restitution of money paid.  The complaint alleges (pgs. 66-69) defendants' purposeful denial of these rights.  In the face of *Jesinoski*, Judge Moss had to and did find TILA violation.  But he did not enforce TILA, thereby furthering the agreement and conspiracy, in this instance by failing to enforce federal law so as to deny Plaintiffs restitution of their substantial illegal loan payment monies.

federal court.  *Rooker-Feldman* barred his repeat of state claims.

Plaintiffs did not assert or adjudicate their federal claims in state court.  In this action they claim that the defendants deprived them of their rights by wrongfully enforcing illegal agreements.[2]  Concurring justice, Fletcher, J. noted that if plaintiff Bianchi had alleged judge bias and wrongdoing, and not litigated his federal claims in state court, then his case would have been a proper Section 1983 action.  (Id. at 904) The case is about deliberate judicial officer wrongdoing to effectively deny due process, i.e. extreme bias.  The case is not about reversal of the state court.

**V. THE ORDERS AND RULINGS PROVE THE CASE; JUDICIAL DEFENDANTS WERE FULLY APPRISED OF BUT IGNORED AND DELIBERATELY UPHELD AND ENFORCED ILLEGAL LEASES, <u>CONTRACTS, AND TRANSACTIONS</u>**

Moving parties request judicial notice of *Chodosh* and *Haugen* case dockets.  Dockets reference court documents.  For the Motion to have weight, it must identify the "orders and judgments".  It does not.  There are orders, rulings, and a judgment and an opinion in the *Chodosh* case.  There is nothing in the *Haugen* case.  Plaintiff voluntarily dismissed it without prejudice.  (<u>Def.</u> RJN, Exh. 2, ROA#118, 119)

The "orders and judgments", lined up, show that the justice defendants and Judge Moss purposefully ignored and upheld blatant real estate and HOA illegality.

_____

[2] The complaint (pgs. 37-38) and pleadings (RJN Exh. D) canvass California law that a court cannot ignore illegality, must investigate it, and that the pleadings, parties' assertion of illegality, or lack thereof, are not material.  A court must ferret out illegality whenever it comes up. In *Rooker*, <u>supra</u>, plaintiff sought review of a state court judgment.  In contrast, this case arises on judicial officer deliberate wrongdoing – the ignoring and suppressing of illegality, and the wrongful enforcement of illegal leases, contracts and transactions against Plaintiffs and dozens of senior citizens.

They enforced illegal transactions to carry out their agreement and conspiracy to harm Plaintiffs.  Their orders and rulings prove it.  (See RJN, Exhibits A - H)

## A.    <u>Judgment, Motions, Orders, Oral Argument - Defendants Ignored Crime</u>

The RJN begins with the order of Judge Moss entered April 2014 dismissing the derivative lawsuit; which dismissal was wrongly entered in the consolidated individual *Chodosh* case, an error that caused confusion but made for law of the case. Judge Moss dismissed the derivative action, ruling that Plaintiff HAUGEN could not serve as derivative plaintiff because his HOA, by a Board vote, had "terminated" his HOA membership.   (RJN Exh. 1; dismissal in "related" *Haugen* case)

HAUGEN appealed the dismissal, arguing that Judge Moss had ignored illegality and had acted unlawfully by upholding what was summary eviction, strict foreclosure, abhorrent contractual forfeiture and illegality.  Before Judge Moss, at the 2013 Phase I trial, Palm Beach Park illegality had been proven. (Complaint, pg. 13, ¶41)   In 2014 Plaintiffs complained to the California Department of Business Oversight ("DBO"; formerly Dept. of Corporations).  Judge Moss' Minute Orders show court attendance of DBO counsel (RJN Exh. B, C).

On Nov. 25, 2015, in the appeal captioned *Haugen v. Wiley*, G045145 (same case as *Chodosh),* Plaintiff HAUGEN, astonished by Judge Moss' continual refusal to recognize illegality, filed a motion (RJN Exh. D) with the appellate court to augment the record, have it take notice of the illegality, and conduct a hearing on illegality all because the trial court was refusing to confront and stop blatant illegality.

The appellate court motion includes pleadings and orders and transcripts for proceedings before Judge Moss.  As one example, the defendant HOA filed a motion in limine to keep out evidence of its violations of securities and real estate laws. (RJN, Exh. D, pg. 064) Plaintiffs opposed the motion. (pg. 079) Judge Moss granted the motion in limine, i.e. ruling that fiduciary illegality could be kept out of trial.

Because Judge Moss ignored illegality, on Nov. 25, 2015, Plaintiffs made the motion to the appellate court that it deal with the crime.  The motion detailed the Palm Beach Park real estate, securities, and other illegality.[3]  (RJN Exh. D, pgs. 23-30) Within a week, on Dec. 2, 2015, the court denied the motion. (RJN Exh. E)

On Dec. 16, 2015 the appellate court conducted oral argument on the *Haugen v. Wiley*, i.e. *Chodosh* appeal.  Plaintiffs' counsel emphasized illegality, including the absurd and wrongful Judge Moss "ruling" that the HOA, by mere Board of Directors vote, could take Mr. Haugen's lease and home for nothing.   RYLAARSDAM and BEDSWORTH stated there was "only one issue", whether Mr. Haugen could serve as derivative plaintiff, having been terminated.   The defendant justices confronted illegality in the motion and at oral argument (RJN, Exh. D, F). They wrongly stated it was not before them. (RJN Exh. F, [pg.: line]: 139: 21-25; 142:18-25;145: 10-13)

On Jan. 7, 2016 defendants RYLAARSDAM and BEDSWORTH signed on the

---

[3] Palm Beach illegality is detailed in Complaint Exhibit B. (See also RJN Exh. D)  Homes were "bootleg" and substandard, i.e. illegal as existing without permit. Leases were unlawful.  HOA memberships were unpermitted securities. (RJN Exh. H) The unlicensed lender HOA made loans that violated TILA.  Palm Beach Park was an unlawful subdivision with additional illegality of substandard housing, unauthorized HOA memberships, unlawful lending. All such illegality was enforced against seniors.

opinion that HAUGEN could not serve as derivative plaintiff, because he had been "terminated."    They suppressed the plain facts of illegality before them, and sanctioned the absurdity of an HOA taking a member's home by a Board vote.   The rulings and their timing were instrumental to carry out the defendants' agreement and conspiracy to make Plaintiffs lose, no matter what the facts or law, and in particular to deny Plaintiffs redress in the face of proven illegality.

Motion denial (RJN Exh. E) communicated to Judge Moss that the appellate justices would ignore illegality.  The complaint alleges the motion denial served to signal co-defendant and co-conspirator Judge Moss that the "law of the case" was to suppress and uphold illegality in order to make Plaintiffs lose.  (Comp. pg. 45 et seq.)

Plaintiffs twice sought to disqualify Judge Moss.  Each time he and the appellate court denied.  The second disqualification was founded largely on Judge Moss' willful judicial misconduct in calling in from vacation to fix the fiduciary fraudulent sale of the Palm Beach Mobilehome park. (Comp. pg. 19 et seq.) Defendant justices ignored evidence that Judge Moss' had put himself, albeit disqualified, back on the *Haugen* case and then had stifled the TRO just in time for the fiduciary fraud park sale to close – which it did just four (4) hours after Judge Moss – from vacation - intervened.  The Justices did not wait for a Reply Brief, summarily dismissing the writ on Judge Moss' misconduct May 26, 2016.  (Comp., pg. 33, ¶125)

**B.**   **Orders, Statement of Decision of Defendant Judge Robert J. Moss**

Judge Moss denied Plaintiffs the right to amend their complaint and answer in

order to assert claims and defenses of illegality. (Def. RJN. Exh. 1, ROA# 907 and 1137) Judge Moss granted the HOA's Motions *in Limine* to exclude illegality.

In late 2014, Judge Moss was made aware that Plaintiffs had filed a complaint with the DBO. Plaintiffs asserted their HOA had issued memberships without a DBO permit, and had violated the securities and other laws as part of the botched "conversion" to "resident ownership" (Comp., pg. 12, ¶37; RJN Exh. B, pg. 099)

DBO senior legal counsel Kirk Wallace attended settlement proceedings conducted by Judge Moss on December 5, 2014. (RJN Exh. B, pg. 011) Mr. Wallace attended trial as a witness Nov. 9, 2015. (Id. Exh. C, pg. 014)

During this time, in numerous pleadings and proceedings, Plaintiffs, through counsel, declared and asserted that HOA Palm Beach Park Association had issued illegal memberships in violation of the securities laws, and had violated the "conversion" law, Calif. Bus. & Prof. Code sec. 11010.8 (See, e.g., RJN, Exh. D, pgs. 027, 038, 079, 097, 111 et seq.)

## C.  <u>Calif. DBO Finds the Illegality that Defendants Ignored</u>

DBO counsel attendance in Judge Moss' court is evidence that illegality was before Judge Moss. Instead of recognizing the DBO was in his court because of securities illegality, Judge Moss ignored DBO. Months later, in his Statement of Decision, he chastised Plaintiffs for having brought in the executive branch to enforce the laws that he was deliberately refusing to enforce. The complaint alleges:

Pg. 39, ¶159 "Plaintiff introduced evidence that the Department of Business

> Organizations (sic) is currently investigating this issue (because the plaintiff or their lawyer invited an investigation) but the fact that there is an investigation in progress proves nothing.  It is just an investigation."  (Judge MOSS' Written Statement of Decision, entered in *Chodosh* 03/30/2016, pg. 5, lines 16-20)

(See SOD, in RJN, Exh. G, pg. 153) complaint Exhibit B outlines the illegality the DBO describes in its Consent Order.  (RJN Exh. H)   Judge Moss and the justices knew Palm Beach Park was entirely illegal.  If the Park were in compliance with the securities laws, DBO counsel would not have traveled – at taxpayers' expense - and twice -  from the DBO San Francisco office to Judge Moss' court in Orange County.

## VI. JUDICIAL DEFENDANTS' ORDERS AND RULINGS WERE VOID *AB INITIO*; PROSPECTIVE RELIEF FOR COLLATERAL ATTACK

The orders, rulings, opinion and judgment are void as no judicial officer has the power to legitimize and sanctify illegality.  In the complaint and RJN memoranda, California law and authority that a court (1) must heed evidence of illegality despite parties not pleading it; (2) ferret out and follow evidence of illegality to ascertain if there is illegality; and (3) be sure not to directly or inadvertently, utilize the court's powers to uphold, enforce, or in any way assist illegality.  (Complaint pgs. 34-4; RJN Exh. D, pgs. 027, 038, 079, 097, 111 et seq.)

Judgment obtained through extrinsic fraud may be set aside either by a lawsuit or by motion to the court where the judgment issued.  *Neubrand v. Superior Court (Lytle)*, 9 Cal.App. 3d 313, 317-318 (1970); *Bennett v. Hibernia Bank*, 47 Cal. 2d 540,

558 (1956) (declaratory relief). The challenger must prove the extrinsic fraud.[4]

Plaintiffs seek prospective relief to vindicate their federal rights against the offending state judicial officers.  With a declaration that defendants violated their due process and other rights, Plaintiffs could file a motion to have the state court judgments and orders declared void.  Calif. Code Civ. Proc. sec. 473(d) (Court can "set aside any void judgment or order.")

Going to state court to set aside the void judgments can mean going back to the same courts where Plaintiffs allege they have been denied their rights.   In *Bianchi v. Rylaarsdam*, <u>supra</u>, plaintiff sued on federal claims in state court and lost.  He re-filed the same claims; his "his federal complaint is a mirror image  …" (334 F.3d. at 899) The concurring opinion referred to Bianchi's wrong path:

> [I]f Bianchi had come directly to federal court in a §1983 action . . . his claim could not be dismissed under Rooker Feldman.  Bianchi, however, did not come straight to federal court, but sought to vindicate his federal rights in state court. He sought relief from the same court that allegedly violated his rights. . ."

(Id. at 904) Plaintiffs do not follow Bianchi's path of mistakes.

Plaintiffs recognize they have no practical remedy in state court.  They pursue prospective relief on their federal claims <u>in federal court</u>.  They seek not to re-hash a

---

[4] "Ordinarily equity will not interfere with a judgment on the ground of extrinsic fraud or mistake unless the one whose interests were infringed can present a meritorious case; the plaintiff must plead and prove facts from which it appears, at least prima facie, that if the judgment were set aside and the proceedings were reopened, a different result would probably follow." (*Bennett*, <u>supra</u>, 47 Cal. 2d at 554)

state court judgment. In this meritorious case they seek to secure a declaration that

defendants violated their federal rights.  The case is not about the state court actions.

## VII. <u>NO IMMUNITY ISSUE – NO DAMAGE CLAIM – PROSPECTIVE RELIEF – FEDERAL COURT REMEDY</u>

Citing non-sec. 1983 cases, the Motion boldly asserts that the complaint must

be dismissed with prejudice because the judicial officer defendants are entirely

immune.  There is no absolute liability in a 1983 action.  The Motion (pg. 4) relies on

*Moore v. Brewster*, 96 F.3d 1240 (9th Cir. 1996), where the judicial defendant was a

District Court Judge.   *Moore* relied on *Mullis v. Bankruptcy Court for District of*

*Nevada*, 828 F.2d 1385 (9th Cir. 1987), where the plaintiff sued bankruptcy judges.

Cases about federal judge immunity in federal court do not concern §1983.[5]

Fortunately, *Mullis* states the applicable law that a judge in a §1983 action has

no immunity for injunctive and declaratory, i.e. prospective relief.   The court states:

> The district court, relying on *Mirin v. Justices of the Supreme Court*, 415 F.
> Supp. 1178 (D. Nev. 1976), and *MacKay v. Nesbett*, 285 F. Supp. 498 (D.
> Alaska 1968), aff'd, 412 F.2d 846 (9th Cir.), cert. denied, 396 U.S. 960, 90 S.
> Ct. 435, 24 L. Ed. 2d 425 (1969), held that absolute judicial and quasi-judicial
> immunity barred declaratory and injunctive relief.

> These cases, both brought under Sec. 1983, have been overruled. ***It is now***
> ***established that judicial immunity does not bar declaratory or injunctive relief***
> ***in actions under Sec. 1983***. *Pulliam v. Allen*, 466 U.S. 522, 541-42, 104 S. Ct.
> 1970, 1980-81, 80 L. Ed. 2d 565 (1984); *Ashelman v. Pope*, 793 F.2d 1072,
> 1075 (9th Cir. 1986) (en banc). However, whether the *Pulliam* exception

---

[5] Moving parties cite *Updike v. City of Gresham*, 62 F. Supp. 3d 1205  (D. Or. 2014)  Updike sued Oregon and a county, not a judge, and not under §1983.

applies or whether judicial immunity bars equitable relief in a Bivens action, such as the case at hand, is an issue of first impression in this Circuit.

*Mullis*, supra, 828 F. 2d at 1391 (emphasis added). According to *Mullis,* prospective relief, injunctive and declaratory, were available in a §1983 action.

A §1983 defendant judge is not subject to a damages claim. *Pierson v. Ray*, 386 U.S. 547, 553 (1967)("Judge Spencer is immune from liability for damages." emphasis added) However, in a §1983 action, a judge is subject to injunction and declaratory relief. *Pulliam v Allen*, 466 U.S. 522, 524 (1984) was a "civil suit that seeks injunctive and declaratory relief". The Supreme Court concluded that at common law judges did not have immunity for claims for prospective relief, (Id. at 529 et seq.), stating: "[I]njunctive relief against a judge raises concerns different from those addressed by the protection of judges from damages awards." (Id. 537)

The court found no indication that under §1983 "Congress intended to insulate judges from prospective collateral injunctive relief." (Id. 540) The court declared:

[I]nterpretations of the Civil Rights Acts by this Court acknowledge Congress' intent to reach unconstitutional actions by all state actors, including judges. *Ex parte Virginia*, 100 U.S. 339 (1880)" (emphasis added)

We remain steadfast in our conclusion, nevertheless, that Congress intended 1983 to be an independent protection for federal rights and find nothing to suggest that Congress intended to expand the common-law doctrine of judicial immunity to insulate state judges completely from federal collateral review. We conclude that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity.

[Id. at 541-542]   No Supreme Court case overrules or contradicts *Pulliam*.[6]

*Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986, en banc), where a judge was sued for agreement and conspiracy, held that immunity barred recovery of money damages, but "does not extend, however, to actions for prospective injunctive relief." [*Pulliam* citation omitted]. See also, *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988)(Judges immune from <u>damage</u> actions, citing *Ashelman*). Also citing *Ashelman*, a District Court held that while there was no damage claim against a judge, under *Pulliam*, "A Judge is not immune if a plaintiff seeks prospective injunctive relief." *Ricotta v. State of California*, 4 F. Supp.2d 961, 972 (S.D. Cal. 1998).

In 1996, Congress amended §1983 to remove injunctive relief as a remedy against judicial officers (with certain exceptions)[7].  The amendment made judges not subject to injunctive relief.   However, §1983 retained its declaratory relief remedy. To secure rights where judges have done wrong, Plaintiffs only need, and have only asserted, declaratory relief.

---

[6] The motion (at 3) quotes immunity rationale dicta from *Mireles v. Waco*, 502 U.S. 9, 11, 112 S. Ct. 286 (1991). The motion leaves out the court's language before and after the **quoted dicta**: "A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages. (citations omitted) . . . . . **[motion quoted dicta]** . . . . "The Court, however, has recognized that a judge is not absolutely immune from criminal liability, (citation omitted), or from a suit for prospective injunctive relief, *Pulliam*. . ."  *Mireles* upholds *Pulliam.*

[7] The Federal Court Improvements Act of 1996 amended § 1983.   (Public Law 104–317—Oct. 19, 1996 110 Stat. 3847, Sec. 309) The Act made injunctive relief unavailable against a judicial officer, adding §1983 text that "injunctive relief shall not be granted" in a § 1983 action against "a judicial officer for an act or omission taken in such officer's judicial capacity unless a declaratory decree was violated or declaratory relief was unavailable." The Act did not limit declaratory relief. .

Indeed, without declaratory relief there could be no §1983 claim at all, rendering the statute completely toothless as to judicial officers, a result not in accord with Congress' intent or Supreme Court holdings that §1983 applies to everyone, including judges.  *Pulliam*, supra, 466 U.S. at 542, 104 S. Ct. at 1981.

## VIII. *ROOKER FELDMAN* DOES NOT APPLY

*Rooker-Feldman* has no place in this case.  There are no valid judgments or orders or rulings.[8]   The complaint does not seek state court overturn.  It alleges violation of due process and federal statutory rights.    Ninth Circuit *Rooker-Feldman* tests demonstrate its non-application.   See, e.g., *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986) (*Rooker- Feldman* not applicable where the determination to be made "does not require review" of a state court judgment.) The District Court has jurisdiction over a constitutional challenge that does not require review of a final state court decision.  *Dubinka v. Judges of Sup. Court*, 23 F.3d 218, 221 (9th Cir. 1994); *Wolfe v. Strankman*, 392 F.3d 358, 363 (9th Cir. 2004), citing *Noel v. Hall,* 341 F. 3d 1148, 1163 (9th Cir. 2003)("[W]here the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party, *Rooker-Feldman* does not bar jurisdiction.")

---

[8] In *Rooker v. Fidelity Trust Co*., 263 U.S. 413, 415, 44 Sup. Ct. 149, 150 (1923) the court stated: "If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding" and [Plaintiff's] "bill . . . . is merely an attempt to get rid of the judgment for alleged errors of law. . ."  In this case the orders and judgments are void. There is no attempt to "get rid" or state actions for "errors of law."

*Kougasian v. TMSL, Inc.* supra, 359 F3d. at 1140,  posited the *Rooker- Feldman* test: "The critical inquiry is "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment."    In this case the injury cause is distinct from the judgment.  The injury cause is not the judgment, but defendants' intentional violation of Plaintiffs' rights.

Plaintiffs do not seek any relief in the nature of reversal or overturn of a state court judgment, order or ruling.   *Kougasian* states: "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court."   The court explained that "*Rooker Feldman* thus applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment. *Kougasian*, Id. at 1140-1141 (emphasis in original) The court stated:

> It has long been held that a plaintiff in federal court can seek to set aside a state court judgment obtained through extrinsic fraud. In *Barrow v. Hunton*, 99 U.S. (9 Otto) 80, 25 L. Ed. 407 (1878), the Supreme Court distinguished between errors by the state court, which could not be reviewed in federal circuit court, and fraud on the state court, which could be the basis for an independent suit in circuit court.  . . .. Extrinsic fraud on a court is, by definition, not an error by that court.  It is, rather, a wrongful act committed by the party or parties who engaged in the fraud.  *Rooker – Feldman* therefore does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud.  . . . . Kougasian does not, in these causes of action, allege legal errors by the state courts; rather, she alleges wrongful acts by the defendants. . .

(Id. at 1141-1142) This case has the same distinction.  Plaintiffs sue defendant

wrongdoers, not to revisit and overturn the wrongdoers' "rulings".

In *Kougasian* the court swept aside the facial and shallow connection between wrongdoing defendants and the underlying case facts, stating: "[T]he issues in Kougasian's four cases of action are not 'inextricably intertwined' within the meaning of *Rooker – Feldman*.  In an ordinary language sense, the issues in Kougasian's claims are indeed 'inextricably intertwined' with the issues in *Kougasian* I and II."   There is a connection between judicial officer wrongdoing and the wrongdoing's products-orders, rulings, et al.  However, Plaintiffs challenge the base wrongdoing.  They do not seek to undo the base wrongdoing products.

## IX. <u>ABSTENTION IS EXTRAORDINARY; ITS FACTORS NOT MET</u>

The Supreme Court declares a federal court's duty to adjudicate claims within its jurisdiction is "virtually unflagging."  *Colorado River Water Conserv. Dist. v. U.S.*, 424 U.S. 800, 813 (1976).  Moreover, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule". (Id.)  Abstention prevents federal courts from granting relief that interferes with pending state civil proceedings that implicate important state interests.

Moving parties urge dismissal "based upon the abstention doctrine" and an "important state interest" described as a dispute about "ownership of land within the state's boundaries."  (Memo. pg. 8, line 7)   A private party real property dispute does not involve an "important state interest."  The state has no interest in Palm Beach

Park.  This case is a private party civil rights, fiduciary, and real property dispute.

Abstention applies where state proceedings are ongoing.  *Chodosh* is on appeal. However, illegality overwhelms, such that there are and can be no significant "ongoing" state court proceedings.  Moving parties accuse Plaintiffs of trying to "restrain the appellate proceedings by issuing orders potentially conflicting with those made in the state Court of Appeal."  (Memo. pg. 8, lines 13-15)   Nothing is being restrained.  Appellate cases proceed.  This action does not stop them.

## X. <u>STATE NOT DEFENDANT; 11th AMENDMENT NOT APPLICABLE</u>

The Eleventh Amendment bars federal court action against a state or its agencies; they are not §1983 defendants.  *Wolfe v. Strankman*, <u>supra</u>, 392 F.3d at 364 Plaintiffs do not sue the State of California, its Superior Court, or any part of it. Plaintiffs sue individual judges and justices who hold judicial posts which, as the complaint alleges, they abused for their individual motives and purposes, in order to harm Plaintiffs by depriving them of their constitutional and federal statutory rights.

The Motion declares the state has been sued because the defendants are sued individually and in their "official" capacities.  (Memo. pg. 9, lines 25-28) An "official capacity" designation often refers to a claim against the state or one of its parts.  See, *Kentucky v. Graham*, 473 U. S. 167, 105 S. Ct. 3099, 3105 (1985). However, the nomenclature of "official" does not always signify suit against the state.  *Wolfe v. Strankman*, <u>supra</u>, 392 F.3d at 364-365, stated and explained:

The remaining State Defendants – Chief Justice George, Justice Strankman, and Ms. Silvan argue that because they are sued in their official capacities, Wolfe's action is in reality brought against the State of California. Therefore, they argue, they are entitled to sovereign immunity and are not 'persons' subject to suit under §1983.  We disagree.

[O]fficial-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent.  (citations omitted). However, under *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) "a state official in his or her official capacity, when sued for injunctive relief, [is] a person under §1983 because 'official-capacity actions for prospective relief are not treated as actions against the State (citations omitted). Wolfe has sued the defendants in their official capacities for prospective injunctive and declaratory relief.  He does not seek damages.  Thus, Wolfe's claims against Chief Justice George, Justice Strankman, and Ms. Silva fall within the Ex parte Young exception to sovereign immunity and are properly brought under §1983.

The Motion contends Plaintiffs sued the "judicial officers in their individual <u>and</u> official capacities".  (Memo. pg. 9, line 26) The caption does not use "official."   The complaint refers to "official" capacity.  "The Eleventh Amendment bars a suit against state officials when the 'state is the real, substantial party in interest.' (internal citations omitted) *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 100, 104 S.Ct. 900, 908 (1984).   In this case, regardless of use of "official," the state is not a party.  Moreover, "The Court has recognized . . .  a suit challenging the constitutionality of a state official's action is not one against the State."  (Id. at 909). The case concerns judges' wrongful actions.  There is no 11th Amendment issue.

## XI. <u>SECOND CAUSE OF ACTION – JUDGE MARGINES</u>

The Opposition barely mentions the Second Cause of Action, "Denial of Due

Process by Extreme Facts that Indicate Intolerable Probability of Lack of Judicial

Impartiality."  Defendants do not dispute the overpowering facts of impropriety.

Orange County based JAMS, Inc., the world's largest ADR services vendor, and its

co-founder and first presiding justice of Div. 3 Justice Trotter, make the appearance of

having effused the judicial officer defendants with personal and financial influence

and motive. The JAMS influence backdrop created a scenario of unacceptable

impropriety that of its own weight sinks due process.  The array of outrageous facts

runs afoul of *Caperton v. A. T. Massey Coal Co.,* 556 U.S. 868 (2009)(Comp. pg. 64).

Judge Margines is sued not for judicial action, but for his administrative failure.

*Forrester v. White*, 484 U.S. 219 (1988).  He did not take action against Judge Moss

in the face of undeniable evidence that Judge Moss had engaged in willful judicial

misconduct.  His inaction is an important and further outrageous fact needed for the

second cause of action, which fact implicates him as a defendant.

## XII. <u>CASE STATED; MUCH MORE FACTUAL DETAIL AVAILABLE</u>

The Motion (pg. 10) makes frontal attack that the complaint is insufficient,

quoting *Bell Atlantic Corp. v.  Twomby*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d

929 (2007) [ dismissal where] "insufficient facts under a cognizable legal theory" and

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009)("[O]nly a complaint that

states a plausible claim for relief survives a motion to dismiss."   Quoting *Twombly*,

*Iqbal* states: "The pleading standard Rule 8 announces does not require a 'detailed

factual allegations,' but it demands more than an unadorned, the defendant-unlawfully harmed-me accusation." *Iqbal*, Id. at 1949.  The complaint states ample facts.  It declares and alleges facts and evidence, and includes or refers to many documents.

All evidence points to the defendants' agreement and conspiracy to deprive Plaintiffs of their rights.[9]   The underlying core wrong is the taking of real property from elderly people by use of fiduciary fraud, enabled by wrongdoer judicial officers.  The evidence of fiduciary wrongdoing, allowed, supported and upheld by the judicial officer defendants, as alleged in the complaint, is overwhelming.

## XIII. CONCLUSION

The Motion should be denied.  If granted, Plaintiffs request leave to amend.

DATED: March 13, 2017                    Respectfully Submitted,

                                LAW OFFICE OF PATRICK J. EVANS

                                    /s/ Patrick J. Evans

                                By: _____
                                    PATRICK J. EVANS
                                Counsel to all Plaintiffs, Sue Eicherly, et al.

---

[9]   An implied agreement can arise by conduct.  Civil Code sec. 1621 states: "An implied contract is one, the existence and terms of which are manifested by conduct." See, e.g.  *Del E. Webb Corp. v. Structural Materials Co.*, (1981) 123 Cal.App.3d 593, 611 ("Whether or not an implied contract has been created is determined by the acts and conduct of the parties and all the surrounding circumstances involved and is a question of fact." Citation omitted).

Similarly, a conspiracy can arise without formal agreement with a pattern of communication, action, and a common objective.  See, *Holder v. Home Savings & Loan Assn. of Los Angeles* (1968) 267 Cal.App.2d 91, 108, internal citations omitted, "It is a legal commonplace that the existence of a conspiracy may be inferred from circumstances, and that the conspiracy need not be the result of an express agreement but may rest upon tacit assent and acquiescence."

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California; I am over the age of 18 years and am not a party to the within action.  I am employed by the law firm of The Law Office of Patrick J. Evans, located at 16897 Algonquin St., Suite F, Huntington Beach, California 92649, Telephone: (714) 594-5722, Facsimile: (714) 840-6861.

On March 13, 2017, I served the document described as **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT JUDICIAL OFFICERS' MOTION TO DISMISS THE COMPLAINT** as follows:

SEE ATTACHED SERVICE LIST

☒ **BY E-MAIL OR ELECTRONIC TRANSMISSION THROUGH THE CM/ECF SYSTEM:**  Upon filing, which occurred this date, in the court's CM/ECF system, which caused and made for electronic service by and as shown by Notice of Electronic Filing ("NEF") generated automatically upon the filing of the document and transmitted to the email addresses of counsel of record who have consented to electronic service.  Under court rules service of the documents is deemed complete upon the transmission of the NEF.

☒ **BY REGULAR EMAIL:**  As to parties that have not appeared and are therefore not in the Court's CM/ECF system, service was made by e-mail or electronic transmission to the email addresses of said defendants, if available, I caused the document to be sent to the persons at the e-mail addresses on the attached service list. I did not receive, within a reasonable time after the transmission, any message or indication that the transmission was unsuccessful.

☒ **BY MAIL:**  To the extent defendants could not be served by NEF or regular email, I enclosed the document in sealed envelope addressed to the person(s) stated at the addresses on the attached service list and placed the envelope for collection and mailing at a post office in Huntington Beach, CA with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed March 13, 2017 at Huntington Beach, California.

/s/ Patrick J. Evans

Patrick J. Evans

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **SERVICE LIST**

### ***EICHERLY, et al. vs. JUDGE MOSS, et al.* 8:16-cv-02233-CJC (KESx)**

### ***SERVICE THROUGH COURT SYSTEM "NEF":***

| Counsel to Judicial Officer Defendants: ALL HON. JUDGES AND HON. JUSTICES: | Counsel to Defendant: FIDELITY NATIONAL TITLE COMPANY |
| --- | --- |
| Sarah L. Overton<br>Cummings McClorey<br>Davis Acho & Associates<br>3801 University Ave., Suite 560<br>Riverside, CA 92501<br>Email: soverton@cmda-law.com<br>Ph. (951) 276-4420; Fax: (951) 276-4405 | FIDELITY NATIONAL LAW GROUP<br>KEVIN R. BROERSMA (SBN 252748)<br>915 Wilshire Boulevard, Suite 2100<br>Los Angeles, California 90017<br>Email: Kevin.Broersma@fnf.com<br>Ph.: (213) 438-7207; Fax: (213) 438-4417 |

### -**COURTESY SERVICE TO DEFENDANTS NOT YET APPEARED** -

### ***By Email:***

*COUNSEL TO DEFENDANT*
*PALM BEACH PARK ASSOCIATION -*        ("PBPA")

Allen L. Thomas, Sivi G. Pederson
Allan B. Weiss
Allan B. Weiss & Associates
5001 Airport Plaza Drive, Suite 240
Long Beach, California 90815
thomaslawfirm@aol.com
sivi@weisslawassociates.com
allan@weisslawassociates.com
Ph: (562) 421-6333; Fax: (562) 421-6903

Cary L. Wood and Domineh Fazel
Lewis, Brisbois, Bisgaard & Smith, LLP.
633 West Fifth Street, Suite 4000
Los Angeles, California 90071
Cary.wood@lewisbrisbois.com
domineh.fazel@lewisbrisbois.com
Ph. (213) 250-1800; Fax: (213) 250-7900

Jeffry Miller
Arezoo Jamshidi
Lewis, Brisbois, Bisgaard & Smith, LLP
701 B Street, Suite 1900
San Diego, CA 92101
Jeff.Miller@lewisbrisbois.com
Arezoo.Jamshidi@lewisbrisbois.com
Ph.: 619.233.1006; Fax: 619.233.8627

SERVICE LIST (Continued)

Service by Email or regular mail as indicated:

| DEFENDANT | ADDRESS / CONTACT |
|---|---|
| ICC 35902 LLC, a Delaware limited liability company | c/o Saunders Property Company<br>4040 MacArthur Blvd., Suite 300<br>Newport Beach, CA 92660<br>Regular Mail |
| 3187 REDHILL LLC, a Delaware limited liability company | Same as above |
| JOHN SAUNDERS,<br>an individual | Same as above |
| ROBERT COLDREN,<br>an individual | Coldren Law Offices, APLC<br>3 Hutton Centre Dr. Ste 900<br>Santa Ana, CA 92707<br>Email: rcoldren@coldrenlawoffices.com |
| LISA SALISBURY, an individual | Salisbury Law Group, APLC<br>3720 S Susan St Ste 110<br>Santa Ana, CA 92704   Email: lsalisbury@salisburygroupinc.com |
| JEFFERIES LOANCORE LLC, a Delaware limited liability company | c/o Loancare Capital<br>55 Railroad Ave., Suite 100<br>Greenwich, CT 06830<br>Regular Mail |
| PHILIP ANSHUTZ,<br>an individual | 1133 Laguna Canyon Rd., Lot 27<br>Laguna Beach, CA 92651<br>Regular Mail |
| DIANA MANTELLI,<br>an individual | By email c/o PBPA Counsel , see above |
| GEORGE FIORI,<br>an individual | Same as above |
| DAN SMITH,<br>an individual | Same as above |